GALLIAN WELKER & ASSOCIATES, L.C.
Nathan E. Lawrence, NBN 15060
Travis N. Barrick, NBN 9257
Joseph P. Lawrence, NBN 16726
730 Las Vegas Blvd. S., Ste. 104
Las Vegas, Nevada 89101
Telephone: 702-892-3500
Facsimile: 702-386-1946
nlawrence@vegascase.com
tbarrick@vegascase.com
jlawrence@vegascase.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HANNAH HALE HOEKSTRA, an individual, | Case No.: 3:24-cv-00392 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| PERSHING COUNTY (Nevada) SHERIFF'S OFFICE; DONNA ROBINSON, an individual; DEPUTY BOYER,[1] an individual; and P. ZOLTOVETZ, an individual;[2] collectively, | **JURY DEMAND** |
| Defendants. | |

Plaintiff HANNAH HALE HOEKSTRA, by and through her attorneys of the law firm of GALLIAN WELKER & ASSOCIATES, L.C., and in support of her claims against Defendants, hereby avers and alleges as follows:

---

[1] Officer Boyer's first name is unknown, but, at all times relevant hereto, Officer Boyer was dressed in Pershing County (Nevada) Sheriff's regalia and uniform and otherwise held himself out as an officer, deputy, or agent of the Pershing County (Nevada) Sheriff's Office.

[2] P. Zoltovetz' first name is unknown, but, at all times relevant hereto, P. Zoltovetz was a ranger or law enforcement officer employed by the United States Department of the Interior, Bureau of Land Management and/or otherwise acting on behalf of the Pershing County Sheriff, directly participating in the actions described herein, detaining and arresting Plaintiff in violation of each of the Fourth Amendment to the Constitution of the United States of America and Article 1, Section 18 of the Constitution of the State of Nevada.

**PARTIES, JURISDICTION, AND VENUE**

1. At all times relevant hereto, Plaintiff HANNAH HALE HOEKSTRA ("Plaintiff" or "Ms. Hoekstra") is and was a resident of Sonoma County, California.

2. Defendant PERSHING COUNTY (Nevada) SHERIFF'S OFFICE ("Pershing County Sheriff") is a legal entity and political subdivision of the State of Nevada.

3. Upon information and belief, Defendant DONNA ROBINSON ("Deputy Robinson"), at all times relevant hereto, is and was a resident of Pershing County and/or the State of Nevada and, at all times relevant hereto, was employed by or otherwise acting as an agent of the Pershing County Sherrif as a law enforcement officer and was acting under color of law within the course and scope of said employment or agency by the Pershing County Sheriff.

4. Upon information and belief, Defendant OFFICER BOYER ("Deputy Boyer"), at all times relevant hereto, is and was a resident of Pershing County and/or the State of Nevada and, at all times relevant hereto, was employed by or otherwise acting as an agent of the Pershing County Sherrif as a law enforcement officer and was acting under color of law within the course and scope of said employment or agency by the Pershing County Sheriff.

5. Upon information and belief, Defendant P. ZOLTOVETZ ("Ranger Zoltovetz"), at all times relevant hereto, is and was a resident of Pershing County and/or the State of Nevada and, at all times relevant hereto, was employed by or otherwise acting as an agent of the United States Department of the Interior, Bureau of Land Management (the "BLM"), as a law enforcement officer or agent and was acting under color of law and the authority of the federal government within the course and scope of said employment or agency by the BLM and/or otherwise also acting as a *de facto* agent for the Pershing County Sheriff.

6. The acts and omissions complained of herein by Plaintiff occurred in Pershing County, State of Nevada, and, as a direct and proximate result of such acts and omissions, Plaintiff suffered injuries and damages inside Pershing County, State of Nevada, arising from Defendants' violations of her constitutional right against unreasonable search and seizure afforded by each of the Fourth Amendment to the Constitution of the United States of America and Article 1, Section 18 of the Constitution of the State of Nevada.

7. This action seeks damages pursuant to violations by each of the Defendants of the Fourth Amendment to the Constitution of the United States of America, including, without limitation, violation of same by Ranger Zoltovetz acting under color of law and the authority of the federal government; accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 42 U.S.C. § 1983, and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

8. Additionally, as Plaintiff (California) and all Defendants (Nevada) named herein are citizens of different states, and Plaintiff alleges an amount in controversy in excess of $75,000, exclusive of interests and cost, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

9. This action further seeks damages pursuant to violations of Article 1, Section 18, of the Constitution of the State of Nevada and certain related state tort claims arising under Nev. Rev. Stat. § 41.031, for which additional causes of action this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

10. This Court has personal jurisdiction over each Defendant, because Defendants are each residents or political subdivisions of the State of Nevada domiciled in the District of Nevada and committed the alleged violations in the District of Nevada; accordingly, venue is proper under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

**GENERAL FACTUAL ALLEGATIONS**

11. Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 10 of this Complaint and, by this reference, incorporates them herein as if set forth in full.

12. "Burning Man is a week-long large-scale desert event focused on community, art, self-expression, and self-reliance, held annually… at Black Rock City in northwestern Nevada, a temporary city erected in the Black Rock Desert about 100 miles (160 km) north-northeast of Reno." https://en.wikipedia.org/wiki/Burning_Man. In 2022, approximately 75,000 individuals attended the Burning Man event from August 28, 2022, to September 5, 2022.

13. Ms. Hoekstra is a registered nurse and, at all times relevant hereto, was also a forensic nurse,[3] with training as an expert witness and a long history of collaboration with law enforcement, including with the Pershing County Sheriff and the Federal Bureau of Investigation.

14. Ms. Hoekstra also had and continues a long history as a volunteer member of the Burning Man Emergency Services Department ("ESD"), which consists of licensed medical personnel like herself (including, but not limited to, doctors, nurses, and medics, all educated in Nevada's mandatory reporting statutes), firefighters, communications staff, licensed counselors, a dedicated Crisis Intervention Team ("CIT"), and logistics and planning support teams. The ESD typically includes a medical vendor providing an on-site hospital with off-site transport, fire service and fire suppression engines, and communication vendors providing radio and paging infrastructure and Computer Aided Dispatch.

15. Burning Man security and participant health and safety are facilitated through the ESD and High Rock Security, with available recourse to onsite assistance for escalated incidents or emergencies from Pershing County Sheriff (for person-on-person crimes) and BLM (for crimes against or injury to the Black Rock Desert land under BLM control).

16. Burning Man 2022 marked Ms. Hoekstra's fifth year as a volunteer registered nurse with the ESD and as a CIT member, and, during the events described below, she was wearing a Burning Man issued ESD hat and yellow shirt clearly emblazoned with "EMERGENCY SERVICES."

17. On August 31, 2022, at approximately 6:00 p.m., Ms. Hoekstra was paged to respond to a female Burning Man participant who requested assistance and emotional support regarding a discomforting encounter with a male Burning Man participant in the male participant's private tent.[4]

---

[3] "A forensic nurse works at the intersection of nursing and the criminal justice system to provide nursing care to victims. Forensic nurses also provide emotional and psychological support, collect evidence, and may perform evaluations of alleged perpetrators when necessary." https://www.nursingworld.org/content-hub/resources/nursing-resources/how-to-become-a-forensic-nurse/#:~:text=A%20forensic%20nurse%20works%20at,of%20alleged%20perpetrators%20when%20necessary.

[4] Upon initial interaction with Ms. Hoekstra, the female patient informed Ms. Hoekstra that she had discussed and consented to "snuggle" with the male acquaintance in his air-conditioned tent but objected

18. As Ms. Hoekstra proceeded to speak with the female patient in the same private tent, Deputy Robinson, dressed in plain clothing (not a Pershing County Sheriff's uniform), opened the tent without invitation and said, "My name is Donna. Can I come in?"

19. Ms. Hoekstra asked Deputy Robinson to identify herself, at which time Deputy Robinson identified herself as a Pershing County Sheriff Deputy but did not provide her full name.

20. In response to Deputy Robinson's intrusion and identification, the female patient repeatedly shook her head "no," indicating that she did not wish to speak with Donna or any Pershing County Sheriff Deputy.

21. Following the female patient's implicit instruction, Ms. Hoekstra exited the private tent and offered to debrief and explain the events to Deputy Robinson.

22. Deputy Robinson stood in the private tent's entryway and near to the female patient, even after Ms. Hoekstra reiterated that the patient had indicated that she did not wish to speak to Deputy Robinson or any law enforcement at that time.[5]

23. Ms. Hoekstra further informed Deputy Robinson that she was endeavoring to facilitate trauma-informed care for the female patient and, as needed, would make all reasonable efforts to further facilitate connecting the female patient to Deputy Robinson for additional communication, as warranted.

24. Deputy Robinson replied that the female patient would have to "tell me that herself on my [body] camera."

25. Ms. Hoekstra acquiesced to Deputy Robinson's assertion and offered to explain the incident further away from the female patient in order to avoid undue traumatization, at which

---

to and was emotionally distraught by his intentional contact with her thigh. The female patient did not, at any time, allege that she was sexually assaulted.

[5] Consistent with the Violence Against Women Act of 1994 (and subsequent reauthorizations thereof, collectively "VAWA"), in general terms, a victim or survivor of actual sexual violence and/or assault has multiple years to report any such assault, and VAWA further allows for delayed reporting, private non-reported exams for evidence collection, and the right to have the victim's selected advocate present for any such reporting. Here, as described above, the female patient was not a victim of and did not even allege any sexual violence and/or sexual assault. Had the female patient been a victim, Deputy Robinson's actions as described herein were contraindicated by VAWA, contrary to applicable law and Deputy Robinson's necessary legal actions, and generally counterproductive to the physical and mental health and wellbeing of the purported victim.

point Deputy Robinson interrupted and interjected that she "had been doing her own job for twenty-eight years," further demanding that Ms. Hoekstra and the female patient tell her what was "going on right now" or Ms. Hoekstra would be "arrested for obstruction of my investigation."

26. Upon the threat of potential arrest, Ms. Hoekstra requested to speak with her own supervisor, at which time Deputy Robinson directly instructed Deputy Boyer to detain and handcuff Ms. Hoekstra.

27. Deputy Boyer handcuffed Ms. Hoekstra with her arms behind her back and informed her that she was under arrest for "obstruction of an investigation," further remonstrating her that he would "take [her] to the ground and tase [her]" if she did not comply.

28. Deputy Robinson initially stated, "She is not under arrest; she is only detained for now," following which Deputy Boyer, on several occasions, reiterated, "Ma'am, you're being detained."

29. Deputy Boyer then pulled and marched the handcuffed Ms. Hoekstra by her right arm approximately fifty feet to a locked Pershing County Sheriff's pickup truck and detained here there by the truck (because he was unable to open the truck door).

30. Upon information and belief, as Ms. Hoekstra was being dragged away, the female patient exited the tent and exclaim, "What are you doing? That woman was helping me!"

31. Upon information and belief, Deputy Robinson responded, "My name is Donna, and I was raped too," to which statement the female patient began screaming to the gathered crowd, "I wasn't raped, I wasn't raped!"

32. En route to the locked truck, Ranger Zoltovetz took hold of Ms. Hoekstra's left arm and pulled her along to the Pershing County Sheriff's truck.

33. While speaking to a bystander filming these events on a camera phone, Deputy Boyer stated, "I'll need [that video] for the prosecution [of Ms. Hoekstra]."

34. During her detention near the Pershing County Sheriff's truck, Ms. Hoekstra asked Deputy Boyer if the handcuffs could be loosened because they were cutting into her wrists.

35. Deputy Boyer ostensibly attempted to loosen the handcuffs but, after consulting with Ranger Zoltovetz, who physically examined the handcuffs, the handcuffs were retightened (and later removed and repositioned so that Ms. Hoekstra was handcuffed with her arms in front of her).

36. While Ms. Hoekstra was detained, Ranger Zoltovetz unbuckled and removed her belt and belongings from around her waist and gave them into Deputy Boyer's possession.

37. Ranger Zoltovetz subsequently approached a bystander and pressured him to discontinue filming the events described herein, disingenuously alleging it was harmful to Ms. Hoekstra's privacy, even though Ms. Hoekstra requested the bystander continue to film the arrest.

38. During the detention and arrest near the Pershing County Sheriff's Office truck, Ranger Zoltovetz told Ms. Hoekstra that, if she did not provide her home address, there would be additional charges prosecuted against her.

39. Upon information and belief, while Ms. Hoekstra was detained and arrested by Deputy Boyer, the Administrative Chief for the ESD arrived and queried Deputy Robinson as to why Ms. Hoekstra was arrested; Deputy Robinson responded, "for obstruction of their investigation."

40. Upon information and belief, when further queried regarding their presence for which no request or call was made to the Pershing County Sheriff, Deputy Robinson responded that she did not know how she had been informed of the events and only wanted to give the female patient a victim's rights packet; unfortunately, Deputy Robinson did not actually have a victim's rights packet to provide to the female patient.

41. Upon information and belief, Deputy Boyer was relieved from duty at Burning Man immediately following these events.

42. Upon information and belief, no criminal charges were made with respect to the female patient or the male participant.

43. Without legal justification, reasonable suspicion, or probable cause for any criminal activity, Ms. Hoekstra was handcuffed, detained, and arrested for approximately forty minutes before being released without any criminal charges or citations, during which time she

suffered pain and suffering to her right shoulder and upper arm, her right wrist, bruising to her wrists, and tenderness and numbness throughout her arm to the tip of her right thumb, for which bodily injuries she sought medical treatment following these events.

44. Ms. Hoekstra additionally suffered public humiliation, great mental anguish, and emotional distress, as a direct result of which she was subsequently diagnosed with posttraumatic stress disorder related to these events and received mental health treatment and therapy, including, without limitation, Eye Movement Desensitization and Reprocessing (EMDR) and stellate ganglion block.

45. Ms. Hoekstra's mental anguish and emotional distress associated with these events compelled her to change the scope of her nursing position and to eliminate forensic nursing from her practice, which exclusion has detrimentally affected her career trajectory.

46. The above acts and omissions by Defendants, and each of them, either directly or via the doctrine of *respondeat superior*, constitute violation of Ms. Hoekstra's constitutional rights, namely the right to be free from unreasonable search and seizure, under the Fourth Amendment to the United States Constitution, as well as the Nevada Constitution, Article 1, Section 18.

**FIRST CLAIM FOR RELIEF**
*As to All Defendants;*
*Unreasonable Search and Seizure in Violation of the*
*Fourth Amendment to the Constitution of the United States of America*

47. Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 46 of this Complaint and, by this reference, incorporates them herein as if set forth in full.

48. The Fourth Amendment to the Constitution of the United States of America protects "[t]he right of the people to be secure in their persons… and effects, against unreasonable searches and seizures."

49. The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest, and requires that such seizures be, at a minimum, "reasonable." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir.

2000). In order to satisfy the Fourth Amendment, an investigatory stop by the police may be made only upon a reasonable suspicion supported by articulable facts that criminal activity may be afoot, exceeding an inchoate and unparticularized suspicion or hunch of criminal activity. *See Id.*

50. As detailed above, Defendants, and each of them, respectively acting under color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLM, did not have and did not articulate either reasonable suspicion nor probable cause regarding any underlying crime or criminal act involving the female patient.

51. Further and manifestly, Defendants, and each of them, respectively acting under color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLM, did not have and did not articulate either reasonable suspicion nor probable cause regarding Ms. Hoekstra's alleged obstruction of the purported investigation of the nonexistent underlying crime or criminal act, particularly in spite of her cooperative efforts throughout the entire sequence of events.

52. Defendants, and each of them, without reasonable suspicion or probable cause, seized, detained, and, ultimately, as a matter of law, arrested Ms. Hoekstra by placing her in handcuffs, by marching her fifty feet from the point of seizure, by removing articles of her clothing, by holding her for around forty minutes, and by, generally, causing her to believe that she was reasonably and explicitly not free to leave. See *United States v. Chamberlin,* 644 F.2d 1262, 1266–67 (9th Cir.1980) (holding that a twenty-minute detention in the back seat of a patrol car constituted an arrest).

53. As the foreseeable and direct result of every named Defendants' actions, in both detaining her without reasonable suspicion and arresting her without probable cause, Ms. Hoekstra's constitutional right to be free from unreasonable search and seizure under the Fourth Amendment to the United State Constitution was unequivocally violated, leading to bodily injury, physical pain and suffering, and great mental anguish and emotional distress.

54. The indicated acts and omissions by each of the Defendants are the direct and proximate cause of Ms. Hoekstra's injury and pain and suffering, for which Ms. Hoekstra is entitled to recover monetary damages, including exemplary and punitive damages, as further enumerated below.

**SECOND CLAIM FOR RELIEF**
*As to All Defendants;*
*Unreasonable Search and Seizure in Violation of*
*Article 1, Section 18 of the Constitution of the State of Nevada*

55. Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 54 of this Complaint and, by this reference, incorporates them herein as if set forth in full.

56. Article 1, Section 18 of the Constitution of the State of Nevada protects "[t]he right of the people to be secure in their persons… and effects, against unreasonable searches and seizures."

57. As with the federal analog, the Nevada Supreme Court recognizes that "detention has ripened into arrest… if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning." *State v. McKellips*, 118 Nev. 465, 469–70, 49 P.3d 655, 659 (2002).

58. If detention becomes unreasonable, then the detention will become an arrest for which probable cause is necessary. *Id.* at 660.

59. In *Mack v. Williams*, 138 Nev. Adv. Op. 86, 522 P.3d 434, 441 (2022), the Supreme Court of Nevada has recognized a private right of action for retrospective monetary relief under the Nevada Constitution, Article 1, Section 18.

60. As detailed above, Defendants, and each of them, respectively acting under color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLM, did not have and did not articulate either reasonable suspicion nor probable cause regarding any underlying crime or criminal act involving the female patient.

61. Further and manifestly, Defendants, and each of them, respectively acting under

color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLM, did not have and did not articulate either reasonable suspicion nor probable cause regarding Ms. Hoekstra's alleged obstruction of the purported investigation of the nonexistent underlying crime or criminal act, particularly in spite of her cooperative efforts throughout the entire sequence of events.

62. Defendants, and each of them, without reasonable suspicion or probable cause, seized, detained, and, ultimately, as a matter of law, arrested Ms. Hoekstra by placing her in handcuffs, by marching her fifty feet from the point of seizure, by removing articles of her clothing, by holding her for around forty minutes, and by, generally, causing her to believe that she was reasonably and explicitly not free to leave.

63. As the foreseeable and direct result of every named Defendants' actions, in both detaining her without reasonable suspicion and arresting her without probable cause, Ms. Hoekstra's constitutional right to be free from unreasonable search and seizure under Article 1, Section 18 of the Constitution of the State of Nevada was unequivocally violated, leading to bodily injury, physical pain and suffering, and great mental anguish and emotional distress.

64. The indicated acts and omissions by each of the Defendants are the direct and proximate cause of Ms. Hoekstra's injury and pain and suffering, for which Ms. Hoekstra is entitled to recover monetary damages, including exemplary and punitive damages, as further enumerated below.

### THIRD CLAIM FOR RELIEF
*As to All Defendants;*
*Civil False Imprisonment*

65. Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 64 of this Complaint and, by this reference, incorporates them herein as if set forth in full.

66. "To establish false imprisonment of which false arrest is an integral part, it is ... necessary to prove that the person be restrained of [her] liberty under the probable imminence of force without any legal cause or justification. As summarized by the American Law Institute, an actor is subject to liability to another for false imprisonment 'if (a) he acts intending to confine

the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it.'" *Hernandez v. City of Reno*, 97 Nev. 429, 433, 634 P.2d 668, 671 (1981), citing to Restatement (Second) of Torts s 35 (1965).

67. As detailed above, Defendants, and each of them, respectively acting under color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLM, intentionally acted without legal cause or justification (*i.e.*, no reasonable suspicion or probable cause) to restrain (and actually did restrain) Ms. Hoekstra's liberty by placing her in handcuffs and confining her in a fixed boundary proximate to the Pershing County Sheriff's truck.

68. Ms. Hoekstra was conscious of the confinement and, as a direct result thereof, experienced bodily injury, physical pain and suffering, and great mental anguish and emotional distress.

69. The indicated acts and omissions by each of the Defendants are the direct and proximate cause of Ms. Hoekstra's injury and pain and suffering, for which Ms. Hoekstra is entitled to recover monetary damages, including exemplary and punitive damages, as further enumerated below.

### FOURTH CLAIM FOR RELIEF
*As to All Defendants;*
*Intentional Infliction of Emotional Distress ("IIED")*

70. Plaintiff reasserts and realleges the allegations contained in Paragraphs 1 through 69 of this Complaint and, by this reference, incorporates them herein as if set forth in full.

71. In Nevada, "[i]n order to prevail in an IIED claim, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 1299–300, 970 P.2d 571, 577 (1998).

72. As detailed above, Defendants, and each of them, respectively acting under color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLM, engaged in extreme and outrageous conduct by violating Ms. Hoekstra's constitutional rights and by falsely imprisoning her without legal justification, reasonable suspicion, or probable cause (particularly in the context of a recognizable Emergency Services provider and member of the event nursing staff), and, moreover, by threatening on multiple occasions to "tase her," "take her to the ground," and "prosecute" her for unarticulated and uncharged crimes.

73. All of the above-described outrageous conduct was undertaken intentionally or, at least, with obvious and reckless disregard for Ms. Hoekstra's emotional distress, which distress was evidenced by her tears shed during these events.

74. As a result of the arrest, confinement, and outrageous conduct, Ms. Hoekstra experienced great mental anguish and severe emotional distress and continues to suffer therefrom to present; as noted above, Ms. Hoekstra has been diagnosed with posttraumatic stress disorder related to the events described herein and has, of medical necessity, received mental health treatment and therapy, including, without limitation, Eye Movement Desensitization and Reprocessing (EMDR) and stellate ganglion block.

75. The indicated acts and omissions by each of the Defendants are the direct and proximate cause of Ms. Hoekstra's mental anguish and severe emotional distress, for which Ms. Hoekstra is entitled to recover monetary damages, including exemplary and punitive damages, as further enumerated below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hannah Hale Hoekstra hereby respectfully requests judgment in her favor and against Defendants, and each of them, as follows:

1. For the general damages against each Defendant that Ms. Hoekstra has suffered, including pain and suffering, emotional distress, and impairment and loss of

quality of life, in amounts to be proven at trial;

2. For all consequential, incidental, economic, and special damages against each Defendant that Ms. Hoekstra has suffered, in amounts to be proven at trial;

3. For punitive damages against each Defendant in amounts to be determined by a jury;

4. For pre-judgment interest from the date of Plaintiff's injuries and for post-judgment interest at the legal rate on the damages assessed by verdict until paid;

5. For attorney fees and costs accruing, available under 42 U.S.C. §1988;

6. For costs incurred and accruing; and

7. For such other and further relief as the Court deems just under the circumstances.

DATED this 31st day of August 2024.

**GALLIAN WELKER & ASSOCIATES, L.C.**

_____
Nathan E. Lawrence, NBN 15060
Travis N. Barrick, NBN 9257
Joseph P. Lawrence, NBN 16726
730 Las Vegas Blvd. S., Ste. 104
Las Vegas, Nevada 89101
Telephone: 702-892-3500
Facsimile: 702-386-1946
nlawrence@vegascase.com
tbarrick@vegascase.com
jlawrence@vegascase.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*