1  JASON FRIERSON
   United States Attorney
2  District of Nevada
   Nevada Bar No. 7709
3
   R. THOMAS COLONNA
4  Assistant United States Attorney
   501 Las Vegas Blvd. So., Suite 1100
5  Las Vegas, Nevada 89101
   (702) 388-6336
6  Email: richard.colonna@usdoj.gov
7  *Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| HANNAH HALE HOEKSTRA,<br><br>        Plaintiff,<br><br>        v.<br><br>PERSHING COUNTY (Nevada) SHERIFF'S OFFICE; DONNA ROBINSON, an individual; DEPUTY BOYER, an individual; and P. ZOHOVETZ, an individual; collectively,<br><br>        Defendants. | Case No. 3:24-cv-00392-MMD-CSD<br><br>**Federal Defendant's Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment** |

Under Fed. R. Civ. P. 12(b)(1) and (6), Ranger Paul Zohovetz ("Federal Defendant" or "Zohovetz") respectfully requests that this Court dismiss Plaintiff Hannah Hale Hoekstra's ("Plaintiff") first cause of action (*Bivens* claim) due to Supreme Court precedent in *Abbasi* and *Egbert* demonstrating that there is no *Bivens* remedy available to Plaintiff. Additionally, Federal Defendant respectfully requests that this Court dismiss Plaintiff's second cause of action (state constitutional claim) on the basis that Ranger Zohovetz was a federal employee acting under federal law, and not a state actor, and therefore cannot be held liable for alleged violations of a state constitution.

Federal Defendant also respectfully requests that the Court dismiss Plaintiff's third and fourth causes of action for lack of subject matter jurisdiction against Bureau of Land Management ("BLM") Ranger Zohovetz and for failing to state a claim upon which relief

can be granted as Plaintiff failed to exhaust administrative remedies under the Federal Tort Claims Act ("FTCA"), prior to filing suit.

In the alternative, Federal Defendant moves for summary judgment under *Id.* R. 56Fed., as there is no genuine issue of material fact as to Plaintiff's third and fourth cause of action. Specifically, Plaintiff cannot prove a plausible claim for either false imprisonment or intentional infliction of emotional distress ("IIED"). Accordingly, if the entirety of Plaintiff's complaint is not otherwise dismissed, Federal Defendant is entitled to judgment as a matter of law on these claims.

This motion is supported by the attached memorandum of points and authorities.

Dated this 16th day of December 2024.

JASON FRIERSON
United States Attorney

 */s/ R. Thomas Colonna*
R. THOMAS COLONNA
Assistant United States Attorney

**Memorandum of Points and Authorities**

**I.    Introduction**

Plaintiff's First Amended Complaint ("FAC") seeks unspecified damages for constitutional violations under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as 42 U.S.C. § 198342, and state constitutional violations. Although her FAC does not specifically invoke the FTCA, it seeks monetary damages for claims of false imprisonment and IIED. In essence, Plaintiff alleges that she was wrongfully detained for a period of time by employees of the Pershing County Sheriff's Office ("PCSO") with the assistance of Ranger Zohovetz.

Plaintiff's first cause of action alleges a *Bivens* action against Ranger Zohovetz. As explained below, the Supreme Court has made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017); *see also Egbert v. Boule*, 596 U.S. 482, 1800 (2022). For that reason, Plaintiff does not have a *Bivens* claim as

it does not extend to the context of a BLM Ranger assisting with the loosening and/or tightening of handcuffs. However, if the Court were to find Plaintiff does have a *Bivens* claim, Ranger Zohovetz is entitled to qualified immunity. Plaintiff's second cause of action in her FAC asserts a claim for unreasonable search and seizure in violation of the Constitution of the State of Nevada. Federal employees acting under the color of federal law are insulated from state constitutionunder the legal principles of sovereign immunity and supremacy.

Because the FTCA is implicated in Plaintiff's third and fourth cause of action, the Court lacks subject matter jurisdiction. Plaintiff fails to plead that she exhausted administrative remedies before filing suit, because Plaintiff never did so. A requirement under the FTCA is that Plaintiff must exhaust her administrative remedies and file a SF-95 with the Agency involved. The declaration of Rebecca Pock, a paralegal specialist with the United States Department of the Interior ("DOI"), is attached demonstrating that Plaintiff did not exhaust her administrative remedies. *See* **Exhibit "A"** (Declaration of Rebecca Pock, dated and signed November 14, 2024).

Lastly, as an alternative, the facts are such that Federal Defendant should be granted partial summary judgment on Plaintiff's third and fourth causes of action because Plaintiff has failed to make out a *prima facie* case for either cause of action against Ranger Zohovetz.

## II. Statement of Undisputed Material Facts

Plaintiff's allegations stem from an event that occurred at the Burning Man festival. "Burning Man" is a large-scale cultural festival that is hosted annually in the desert of Black Rock, Nevada. *See What is Burning Man?* BURNING MAN PROJECT, https://burningman.org/about/ (last visited Dec. 11, 2024). Burning Man's website provides the following about law enforcement at the festival:

> Law enforcement "consists of BLM Rangers, who enforce federal laws, and the Pershing County Sheriff's Office, which enforces state and local laws. The Black Rock Rangers are a group of Burning Man volunteers who act as non-

confrontational mediators in Black Rock City. They wear khaki and carry no weapons. Law enforcement officers wear uniforms and carry guns."

*See Id.*

Burning Man also has its own Emergency Services Department ("ESD"), including a Crisis Intervention Team and Supervisor Advocacy Team, staffed by volunteers.[1] In addition to law enforcement and ESD, Burning Man partners with a nonprofit organization called Zendo Project that provides "psychedelic peer support" to Burning Man festivalgoers.[2]

Plaintiff, a registered nurse, volunteered as a member of the 2022 Burning Man Festival's ESD. FAC ¶¶ 13-14, 16. On August 31, 2022, at approximately 6 p.m., Plaintiff responded to a call for assistance to provide support to a female festivalgoer who had an uncomfortable encounter with a male festivalgoer. *Id.* ¶ 17. Plaintiff alleges that while she was in a ESD tent with a female festivalgoer, Deputy Donna Robinson was not wearing a uniform and entered the tent uninvited. *Id.* ¶ 18. Plaintiff alleges that Deputy Robinson only gave her first name and that the female festivalgoer did not want to speak with her. Id. at ¶¶ 19-- 20. Plaintiff alleges that Deputy Robinson stated that Plaintiff was obstructing an investigation and was handcuffed by another member of the PCSO, Deputy Boyer. *Id.* ¶¶ 21–26. Plaintiff alleges that she was threatened to be tased and taken to the ground if she failed to comply. *Id.* ¶ 27. Plaintiff alleges Deputy Robinson informed Plaintiff that she was not under arrest, but temporarily detained. *Id.* ¶ 28.

Plaintiff alleges that while Deputy Boyer was removing Plaintiff to a PCSO pickup truck, Ranger Zohovetz, of BLM, pulled her left arm. *Id.* ¶¶ 29, 32. Among other things,

---

[1] *See* https://esd.burningman.org/; https://esd.burningman.org/brcesdhome/volunteering/mental-health/.
[2] *See* https://maps.org/news/bulletin/zendo/.

Plaintiff alleges that the handcuffs were too tight; that her belt and belongings needed to be removed; Ranger Zohovetz "pressured" a man to stop filming the encounter with his phone[3]; and that she would face a charge for failing to provide her home address. *Id.* ¶¶ 36-39. The FAC contains no further allegations about Ranger Zohovetz's involvement in this incident. After a 40-minute detention for PCSO to conduct their interviews and investigation, Plaintiff was released without charge. *Id.* ¶ 43.

Plaintiff alleges that the incident caused pain to her right shoulder, arm, and wrist, as well as bruising and numbness, due to her time in handcuffs, thereby requiring medical treatment. *Id.* She further alleges that she suffered emotional distress resulting in post-traumatic stress disorder, necessitating mental health treatment and therapy. *Id.* ¶ 44. Plaintiff raises the following claims as to all defendants: (1) unreasonable search and seizure in violation of the Fourth Amendment to the U.S. Constitution; (2) unreasonable search and seizure in violation of the Nevada Constitution; (3) civil false imprisonment; and (4) IIED. *Id.* at ¶ 47-75. The FAC does not assert a specific monetary amount, but rather seeks general and specific damages, punitive damages, pre- and post-judgment interest, attorneys' fees, and costs. *Id.* at ¶¶ 13-14.[4]

**A. Memorandum of Understanding**

On April 27, 2017, the BLM and PCSO entered a Memorandum of Understanding ("MOU") providing that PCSO has the authority to enforce State and local laws for Nevada on BLM-administered public lands within Pershing County, without reimbursement from

---

[3] For the Court's awareness, the entire incident is captured on Ranger Zohovetz's body worn camera ("BWC") footage. *See* **Exhibit "B"** (BLM Ranger Zohovetz's full BWC footage).

[4] Plaintiff in her FAC includes a jury demand and both punitive damages and prejudgment interest. The FTCA does not permit a jury or either type of damages. *See* 28 U.S.C. §§ 2402, 2674See.

the BLM. MOU ¶¶ IV(A), IV(B)(1). The MOU further provides that the BLM and PCSO "mutually agree to coordinate, cooperate, and provide assistance during special events occurring on public lands within Pershing County." *Id.* ¶ IV(B)(4). The MOU expired after five years from execution, *id.* ¶ V(K), April 2022; hence, the MOU was not in effect at the time of the incident, August 2022.

**B. Law Enforcement Operations Plan**

The BLM and PCSO conducted their law enforcement activities at Burning Man in 2022 pursuant to the 2022 Burning Man Operations Plan (the "Plan"). According to the Plan,

> "[PCSO] and BLM law enforcement will be operating under an integrated command structure during the 2022 event. During law enforcement incidents at the event, the agency with primary jurisdiction over the incident will assume the role of the lead agency. The other agency will provide necessary support until the incident is resolved."

Plan at 5.

The Plan explains that PCSO is responsible for enforcing "Nevada State laws, statutes, and county ordinances on BLM administered lands," while the BLM is responsible for enforcing "federal laws, regulations, event closure orders, and permit stipulations." *See id.* Ranger Zohovetz was part of an integrated patrol unit consisting of one PCSO deputy and one BLM ranger. As noted in the Plan, "the primary mission of the Integrated Patrol Units is to provide a deterrent to criminal activity and a rapid response to person-on-person crimes within Black Rock City. *Id.* Additionally, the Integrated Patrol Units will ensure public safety and resource protection through the enforcement of federal laws, state laws, regulations, event closure orders, and permit stipulations in their assigned patrol sector." *Id.* at 18.

### III. Legal Standards

**A. Motion to Dismiss Under 12(b)(1)**

**1. Lack of Subject Matter Jurisdiction**

Fed. R. Civ. P. 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction may take one of two forms: either a "facial" or "factual" challenge. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, *59*4 F.2d 730, 733 (9th Cir. 1979). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Alternatively, "[a] factual challenge relies on affidavits or any other evidence properly before the court to contest the truth of the complaint's allegations." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). When a factual challenge is asserted, the court need not presume the truthfulness of the allegations in the complaint. *See Safe Air For Everyone*, 373 F.3d at 1039; *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 (9th Cir. 2003).

**B. Motion to Dismiss Under 12(b)(6)**

**1. Failure to State a Claim**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true,

legal conclusions couched as factual allegations are insufficient. *Id.* Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

**C. Motion for Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. USDA*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and

8

disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, though affidavits or admissible discovery material, to show that the dispute exists[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

## IV. <u>Argument</u>

### A. *Bivens* – Plaintiff's First Cause of Action

Plaintiff alleges a *Bivens* violation against Ranger Zohovetz for his conduct during her detention; however, *Bivens* is inapplicable to this case because the Ninth Circuit has refused to extend *Bivens* to this context. The Constitution does not ordinarily provide a private right of action against federal officers for constitutional violations. However, in 1971, the Supreme Court first recognized an "*implied* private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (emphasis added) (citing *Bivens v. Six Unknown Named Agents*

*of Fed. Bureau of Narcotics*, 403 U.S. 388, 391 (1971)). In doing so, the Supreme Court established that "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violations of their constitutional rights." *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (citations omitted).

In *Bivens*, the Supreme Court recognized that an implied private cause of action arises when law enforcement officials violate a plaintiff's Fourth Amendment right by executing a warrantless search of a plaintiff's home. *Bivens*, 403 U.S. at 391. Since *Bivens,* the Supreme Court "ha[s] recognized two more non-statutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, . . . and the second for an Eighth Amendment violation by prison officials[.]" Wilkie v. Robbins, 551 U.S. 537, 549 -- 50 (2007) (internal citations omitted); *accord Davis v. Passman*, 442 U.S. 228, 245-48 (1979) (allowing a Bivens claim for a congressional staff member who was wrongfully terminated on the basis of her sex); *accord Carlson v. Green*, 446 U.S. 14, 17 -- 18 (1980) (allowing a *Bivens* claim under the Eighth Amendment for a deceased federal prisoner against prison official for failing to provide proper medical attention).

The Supreme Court has "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 695 (2004). Thus, the Supreme Court "ha[s] consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp.*, 534 U.S. at 68; *see also Iqbal*, 556 U.S. at 675 (holding that the Supreme Court disfavors implied causes of action like *Bivens* and therefore limits their availability).

Nevertheless, courts may extend *Bivens* in rare circumstances in order "to provide an otherwise nonexistent cause of action against individual officers alleged to have acted

unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct." *Malesko*, 534 U.S. at 70. The decision to recognize a new *Bivens* cause of action is a two-step analysis. First, courts can extend *Bivens* only if there does not exist an alternative remedy. *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012). Second, if an alternative remedy does not exist, courts must consider whether special factors counsel against creating a new *Bivens* claim. *Id.*

### i.    New *Bivens* Context

The question the court must answer is whether the facts and allegations presented in this case constitute a new *Bivens* context and whether the *Bivens* remedy should be extended. The Supreme Court has instructed that a *Bivens* context is new if it is "different in a meaningful way from previous *Bivens* cases." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017). The *Ziglar* court offered a non-exhaustive list of meaningful differences, including, *inter alia*, "the rank of the officers involved; the constitutional right at issue . . . [or] the statutory or other legal mandate under which the officer was operating." *Id.* at 1860. The Court further clarified that "even a modest [*Bivens*] extension is still an extension." *Id.* at 1864.

Here, Plaintiff may argue that her claim is like *Bivens*; however, BLM Ranger Zohovetz was not involved in the initial engagement with Plaintiff, nor did BLM Ranger Zohovetz place Plaintiff under arrest. *See* **Exhibit "B."** Looking at the footage, it is difficult to comprehend how Ranger Zohovetz's conduct implicated the Fourth Amendment or engaged in any incidents of misconduct directed at Plaintiff. In *Bivens*, the search at issue in that case occurred at a private residence as part of a traditional law-enforcement criminal investigation, and without a warrant. *Bivens*, 409 F.2d at 718. Here, the challenged conduct occurred during what was a detention made by state officials for a claim of interfering with

an investigation during the Burning Man festival. Ranger Zohovetz was there in an assistance capacity and, as stated above, Plaintiff's allegations against Zohovetz are very limited in scope.

Moreover, the federal officials in *Bivens* were operating under a statutory mandate distinct from that of BLM assisting with local law enforcement at the Burning Man festival. This difference alone renders the context meaningfully different under the Supreme Court's *Ziglar* standard. *Ziglar*, 137 S. Ct. at 1860.

### ii.    Special factors do not exist in this context

In June 2022, the Supreme Court decided *Egbert v. Boule*, declining to extend *Bivens* recovery to either a Fourth Amendment excessive force claim or a First Amendment retaliation claim against a border patrol officer. *Egbert*, 596 U.S. 482. Although the Court applied the two-step approach identified above, it clarified that the relevant inquiry under the second step is whether "the Judiciary is *at least arguably less equipped than Congress* to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492 (internal quotation marks omitted) (emphasis added). Going even further, the Court explained that the two-step process "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 492. Reinforcing that sentiment later in its decision, the Court once again stated: "A court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 496, (quoting *Abbasi*, 582 U.S. at 136).

12

Since *Egbert*, the Ninth Circuit has consistently declined to recognize a *Bivens* remedy.[5] In *Mejia v. Miller*, for example, the Ninth Circuit emphasized that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Mejia*, 61 F.4th at 669 (quoting *Egbert v. Boule*, 596 U.S. 482, 486 (2022)). In *Mejia*, the Ninth Circuit rejected a *Bivens* claim against BLM officers, with the court noting that *Egbert* "identifie[d] the legal mandate under which the officer was operating as an example of a new context" and that plaintiff did "not point to any reason to believe . . . that BLM has the same mandate as agencies enforcing federal anti-narcotics law [as in *Bivens*]" (internal quotation marks omitted). In *Harper v. Need*, the Ninth Circuit was blunt about the impact of *Egbert*, stating: "Essentially . . . , future extensions of *Bivens* are dead on arrival." *Harper*, 71 F.4th at 1187.

### iii.    The facts here do not justify a *Bivens* extension

As stated above, Federal Defendant moves to dismiss the Plaintiff's first cause of action (*Bivens* claim) on the basis that there is no remedy under *Bivens* for Plaintiff. The Fourth Amendment claim in *Bivens* was against Federal Bureau of Narcotics Agents. The Plaintiff here brings her claim against a BLM officer who assisted local deputies enforcing state laws on federal property. This is not an area to which a *Bivens* remedy should apply.

---

[5] Notably, since *Egbert*, the Ninth Circuit has considered *Bivens* claims in over 20 different circumstances and, with limited exception, declined to recognize any *Bivens* actions. *See, e.g.*, *Firdos Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 930 (9th Cir. 2024) (Fourth and Fifth Amendment fabrication of evidence); *Marquez v. Rodriguez*, 81 F.4th 1027, 1033 (9th Cir. 2023) (Fifth Amendment failure-to-protect pretrial detainee); *Chambers v. Herrera*, 78 F.4th 1100, 1109 (9th Cir. 2023) (First Amendment retaliation and Eighth Amendment failure to protect); *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) (Fifth Amendment procedural due process); *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) (Fourth Amendment excessive force and unlawful seizure); *Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) (Fourth Amendment unlawful arrest and excessive force); *but see Stanard v. Dy*, 88 F.4th 811, 816-17 (9th Cir. 2023) (holding that an inmate's Eighth Amendment deliberate indifference to medical needs claim fell within the existing context of Carlson).

Under *Egbert*, rarely if ever are the courts equally suited as Congress to extend the *Bivens* remedy. *Meija v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) (discussing Egbert, 596 U.S. at 492).

If the Court finds a *Bivens* remedy is available to Plaintiff, BLM Ranger Zohovetz should still be entitled to qualified immunity. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity inquiry is another two-step analysis: first, whether the facts alleged show that the defendant violated a constitutional right; and second, whether that right was clearly established. *Id.*

Taking all the facts in the FAC as true and interpreting them in the light most favorable to Plaintiff, Plaintiff has not made out a claim against BLM Zohovetz for a Fourth Amendment search and seizure violation. BLM Zohovetz did not personally handcuff Plaintiff or confine her to a boundary fixed by him. Plaintiff was already handcuffed when he encountered her. FAC ¶ 32. The only allegation in the FAC regarding Ranger Zohovetz and confinement is contained in Paragraph 35: "Deputy Boyer ostensibly attempted to loosen the handcuffs but, after consulting with Ranger Zohovetz (sic), who physically examined the handcuffs, the handcuffs were retightened (and later removed and repositioned so that Ms. Hoekstra was handcuffed with her arms in front of her)." Given these threadbare allegations, the Court is unlikely to hold that a private citizen, under like circumstances, would be liable for merely "physically examin[ing] the handcuffs." Ranger Zohovetz's conduct appears to have been objectively reasonable under the circumstances.

For the reasons stated above, Plaintiff's first count should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted as Plaintiff does not make out a *Bivens* claim.

### B. Nevada State Constitution – Plaintiff's Second Cause of Action

In the FAC, Plaintiff's second cause of action asserts a claim for unreasonable search and seizure in violation of the Nevada Constitution. Since Ranger Zohovetz was acting under the color of federal law and not state law, Plaintiff's claim fails. *See, e.g.,* H*ightower v. United States,* 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002) ("New York State Constitution only permits suits against state actors acting under color of state law, and not against the federal government or federal employees acting under federal law."); *see also Shoman v. U.S. Customs & Border Prot.,* C.A. No. 07-994, 2008 U.S. Dist. LEXIS 5106, 2008 WL 203384, at *5 (W.D. Pa. Jan. 24, 2008) ("[W]hile [plaintiff] may pursue a *Bivens* action against [government employees] in their individual capacities, he may not sue these Defendants in their individual capacities for alleged violations of the Pennsylvania Constitution"); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 405 (D. Md. 2003) ("It does not appear, however, that a plaintiff may sue a federal officer in his individual capacity for alleged violations of a state constitution."). Federal employees acting under color of federal law should be protected from a state constitutional claim under traditional principles of sovereign immunity and supremacy.

For the reasons stated above, Plaintiff's second count should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### C. The FTCA -- Plaintiff's Third (False Imprisonment) and Fourth (IIED) Causes of Action

#### 1. The Applicable Federal Statutory Law

### a. The FTCA

The liability of the United States under the FTCA is set forth in 28 U.S.C. § 267428. The FTCA waives sovereign immunity and makes the United States liable respecting tort claims "in the same manner and to the same extent as a private individual under like circumstance." The United States is liable for personal injuries caused by the negligent or wrongful acts or omissions of employees of the United States, acting within the scope of their employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1). "Even if the conduct entails uniquely governmental functions, the court is to examine the liability of a private person in analogous situations." *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007). The FTCA "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." *Id.* § 2679(b)(1).

### b. Law Enforcement Proviso

The FTCA's waiver of sovereign immunity is subject to thirteen statutory exceptions enumerated in 28 U.S.C. § 2680, including the intentional tort exception, which bars "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The intentional tort exception is subject to its own exception, the law enforcement proviso, which waives sovereign immunity for suits against United States, "arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" when such acts are committed by "investigative or federal law enforcement officers" acting within the scope of their employment." *Id.*

Under the law enforcement proviso, "investigative or law enforcement officer" is defined to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Millbrook v. United States*, 569 U.S. 50, 52 — 53 (2013) (citations omitted); *see also Leuthauser v. United States*, 71 F.4th 1189, 1194 -- 99 (9th Cir. 2023) (construing the definition of "investigative or law enforcement officer" in detail).

### c.  BLM Law Enforcement Authority

Pursuant to the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 170143 *et. seq.*, the Secretary of the Interior "shall issue regulations necessary to implement the provisions of this Act with respect to the management, use, and protection of the public lands, including the property located thereon." *Id.* § 1733(a). However, the Secretary of the Interior has not promulgated regulations regarding the BLM's authority to carry out law enforcement responsibilities on public lands. *See United States v. Pheasant*, No. 3:21-CR-00024-RCJ-CLB, 2023 U.S. Dist. LEXIS 72572, at *29 (D. Nev. Apr. 26, 2023), *appeal pending*, No. 23-991 (9th Cir. May 23, 2023).[6]

FLPMA authorizes the Secretary to contract with local law enforcement officials to enforce federal laws and regulations and to authorize federal personnel to "carry out his law enforcement responsibilities with respect to the public lands and their resources." 43 U.S.C. § 1733(c)(1)-(2). The Secretary may also "cooperate with the regulatory and law enforcement officials of any State or political subdivision thereof in the enforcement of the laws or ordinances of such State or subdivision." *Id.* § 1733(d).

In *Pheasant*, Judge Jones noted in dicta that "Congress did not provide BLM officers with any authority to execute searches, seize evidence, or make arrests," and therefore,

---

[6] The case was argued and submitted for decision on October 10, 2024.

BLM officers did not qualify as an "investigative or law enforcement officer" for purposes of 28 U.S.C. § 2680(h).

### 2. The Applicable Nevada Law

#### a. *Respondeat superior*

"In Nevada, an employer is not liable for its employee's intentional conduct if the employee's conduct: (a) was a truly independent venture; (b) was not committed in the course of the very task assigned to the employee; and (c) was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his employment." Nev. Rev. Stat. § 41.745(1). An employee's conduct is reasonably foreseeable "if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury." *Id.* In Nevada, this standard applies in FTCA cases alleging intentional torts. *See, e.g., Grantham v. Durant,* 471 F. Supp. 2d 1069, 1074 (D. Nev. 2006); *Richardson v. United States*, No. 3:22-cv-00265-MMD-CSD, 2022 U.S. Dist. LEXIS 228575, at *10 n.10 (D. Nev. Dec. 20, 2022).

#### b. False Imprisonment

"False imprisonment is a restraint of one's liberty without any sufficient cause therefor." *Lerner Shops v. Marin*, 423 P.2d 398, 400 (1967). "[A]n actor is subject to liability to another for false imprisonment if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it." *Hernandez v. Reno*, 634 P.2d 668, 671 (Nev. 1981) (internal quotation marks omitted). False imprisonment is an intentional tort in Nevada. *See, e.g., McCall v. Las Vegas Metro. Police Dep't*, No. 2:18-cv-01319-APG-EJY, 2020 U.S. Dist. LEXIS 52264, at *53 (D. Nev. Mar. 23, 2020); *Angel v. Eldorado Casino, Inc.*, No. 59401, 2013 Nev. Unpub. LEXIS

398, at *3 (Mar. 15, 2013). "Under Nevada law, claims for . . . false imprisonment requires the plaintiff to show that the defendants lacked probable cause." *Engel v. United States*, 702 F. Supp. 3d 986, 1004 (D. Nev. 2023) (footnote omitted). Nevada has adopted the Restatement (Second) of Torts with respect to the "general doctrine of false imprisonment." *Schulz v. Lamb*, 591 F.2d 1268, 1271-72 (9th Cir. 1978).

### c.   Intentional Infliction of Emotional Distress ("IIED")

The elements of IIED are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (2000). "The plaintiff's complaint must also specifically allege intent." *Bolz v. City of N. Las Vegas*, No. 2:12-cv-00288-RFB-PAL, 2015 U.S. Distr. LEXIS 101906, at *29 (D. Nev. Aug. 3, 2015). Accordingly, IIED is an intentional tort. *See, e.g., Lee v. Diet Ctr.*, No. 2:19-cv-00628-GMN-EJY, 2020 U.S. Dist. LEXIS 58008, at *23 (D. Nev. Mar. 31, 2020); *Russo v. Shac*, 2021 Nev. App. Unpub. LEXIS 652, at *23 (Nov. 17, 2021).

"Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks omitted). "Liability for emotional distress generally does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (internal quotation marks omitted).

### 3.   Analysis

#### a.   The FTCA Applies Because Ranger Zohovetz Was Acting in the Scope of Federal Employment During the Incident

Although Plaintiff did not assert claims against the United States, she alleges that Ranger Zohovetz committed the intentional torts of false imprisonment and IIED "within

the course and scope of [his] individual employment by . . . the BLM." FAC ¶¶ 67, 72.

Plaintiff asserts that when this incident happened, Ranger Zohovetz was acting in the scope

of his federal employment.

Under Nevada law, *respondeat superior* would not apply to Ranger Zohovetz's actions

if they were "a truly independent venture," were "not committed in the course of the very

task assigned" to him and were "not reasonably foreseeable." Nev. Rev. Stat. § 41.745(1).

According to the position description ("PD") for Field Staff Law Enforcement Ranger, GS-

1801[7], the duties include:

> "Develops and maintains liaison with other Federal, State, and
> local law enforcement agencies to share in the resources in
> order to provide additional protection of people and property
> on public lands. Cooperates in the investigation and disposition
> of cases. Provides assistance, e.g., back-up, to other law
> enforcement officers, exchanges case information, and
> coordinates other law enforcement activities of mutual
> interest."

PD at 5.

Here, Ranger Zohovetz assisted PCSO deputies who were enforcing state law on

federal property, as permitted under FLPMA and the Plan. Ranger Zohovetz does not deny

that he was on duty at the time of the incident. Ranger Zohovetz's actions were not a "truly

independent venture," but explicitly part of the PD and thus committed during the very task

assigned to him. Furthermore, it was reasonably foreseeable to an ordinary person that a

BLM Ranger working at Burning Man might assist local police with a detention.

Accordingly, *respondeat superior* would apply to the intentional torts under Nevada law, and

Ranger Zohovetz would fall within the scope of the FTCA.

### b.  Plaintiff's Claim Must Be Dismissed for Failure to Exhaust Administrative Remedies Under the FTCA.

---

[7] According to Michael Wertz, an Employee Relations Specialist for BLM Nevada, this is
the PD that applied to Ranger Zohovetz in 2022.

Here, Plaintiff's FTCA claims against the United States should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff failed to fully exhaust her administrative remedies prior to filing this action. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Filing an administrative claim is a jurisdictional prerequisite under the FTCA. *See Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015) (citing 28 U.S.C. § 2675(a)). Here, Plaintiff never filed an administrative claim.

Under the FTCA, "an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted administrative remedies." *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting 28 U.S.C. § 2675(a)). In the Ninth Circuit, "the exhaustion requirement is jurisdictional in nature and must be interpreted strictly." *Id.* Exhaustion under the FTCA requires that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied* by the agency in writing and sent by certified or registered mail. *The failure of an agency to make final disposition of a claim within six months after it is filed shall*, at the option of the claimant any time, thereafter, *be deemed a final denial of the claim for purposes of this section.* The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2675(a) (emphasis added).

In short, "[t]he plaintiff is permitted to sue the United States only after the [administrative] claim is denied or six months have elapsed without final disposition by the agency." *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 778 (9th Cir. 1984).

It is well established that, for purposes of exhaustion under the FTCA, deficiencies in the timing of the initial complaint may not be cured by filing subsequent amended complaints. In *McNeill v. United States*, the Supreme Court held that "the command that an 'action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency'

. . . is unambiguous." *McNeil*, 508 U.S. at 111. Exhaustion of administrative remedies must occur "before invocation of the judicial process." *Id.* at 112. Accordingly, because Plaintiff's administrative remedies were not exhausted prior to the filing of this case, Plaintiff's FTCA claims against the United States are dismissed for lack of subject matter jurisdiction. *See, e.g.,* S*parrow v. U.S. Postal Serv.,* 825 F. Supp. 252, 255 (E.D. Cal. 1993) ("[b]ecause § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment, instead, plaintiff must file a new suit.")

Here, Plaintiff's FTCA claims accrued on August 31, 2022. *See Gallardo v. United States*, 749 F.3d 771, 774 (9th Cir. 2014) (noting that "once a plaintiff becomes aware of her injury and its immediate cause, her claim accrues" for purposes of 28 U.S.C. § 2401(b)). However, she commenced the action on September 3, 2024, three days outside the two-year statute of limitations for filing an administrative claim. *See, e.g., Urata v. United States*, No. 12-cv-1277 WQH(WMC), 2012 U.S. Dist. LEXIS 178921, at *25 n.1 (S.D. Cal. Dec. 13, 2012).

For the reasons stated above, Plaintiff's claims for false imprisonment and IIED (Counts 3 and 4) should be dismissed under Rule 12(b)(1) for failing to exhaust administrative remedies.

### D. Alternatively, Motion for Summary Judgment on Third and Fourth Causes of Action

#### a. The United States Should Prevail on the Merits

##### i. No Plausible Cause of Action for False Imprisonment – Count 3

Since the FAC lacks allegations that plausibly allege that Ranger Zohovetz falsely imprisoned Plaintiff, this claim should be dismissed. Here, Plaintiff alleges that Defendants falsely imprisoned her "by placing her in handcuffs and confining her in a fixed boundary proximate to the Pershing County Sheriff's truck." FAC ¶ 67. However, Ranger Zohovetz did not personally handcuff her or confine her to a boundary fixed by him. *See Hernandez v.*

*Reno*, 634 P.2d 668, 671 (1981) (internal quotation marks omitted). Plaintiff was already handcuffed when Ranger Zohovetz encountered her. FAC ¶ 32. Further, there was sufficient cause to assist in a temporary detention believing that Plaintiff had impeded an investigation by a local deputy. *See Lerner Shops v. Marin*, 423 P.2d 398, 400 (1967).

The only allegation in the FAC regarding Ranger Zohovetz is contained in Paragraph 35: "Deputy Boyer ostensibly attempted to loosen the handcuffs but, after consulting with Ranger Zohovetz[sic], who physically examined the handcuffs, the handcuffs were retightened (and later removed and repositioned so that Ms. Hoekstra was handcuffed with her arms in front of her)." There is no plausible cause of action as a private citizen, under like circumstances, would not be liable for false imprisonment for merely "physically examin[ing] the handcuffs."

To the extent Plaintiff argues that Ranger Zohovetz is liable for participating in false imprisonment, the privilege for a private citizen assisting a peace officer applies. Based on the body worn camera footage (*see* **Exhibit "B"**), Ranger Zohovetz believed that Plaintiff was being detained for obstructing a law enforcement investigation, which is a misdemeanor in Nevada. Although Plaintiff alleges that she was moved about 50 feet to the truck, FAC ¶ 29, this distance is likely not far enough to violate Nev. Rev. Stat. § 171.123(4). *See, e.g., Garcia v. Adams,* No. 2:22-cv-01960-MMD-MDC, 2024 U.S. Dist. LEXIS 132076, at *16, *16 (D. Nev. July 26, 2024) (holding that officers did not violate the statute by moving a detainee from inside a casino to the alley outside, where their vehicles were parked).

For the above stated reasons, the Court should grant summary judgment in favor of the Federal Defendant Ranger Zohovetz on third cause of action.

### ii.  No Plausible Cause of Action for IIED – Count 4

Plaintiff's IIED allegations are derivative of her questionable false imprisonment claim, as it focuses on her alleged false imprisonment and threats of tasing, taking her to the ground, and prosecuting her. (ECF No. 6). As noted above, Ranger Zohovetz did not falsely imprison Plaintiff. Moreover, the only comment she alleges Ranger Zohovetz made that

constituted IIED was his alleged comment that if she did not provide her address, she could be prosecuted. *Id.* at ¶ 38.

The Court should conclude, as a matter of law, that Ranger Zohovetz's conduct did not rise to the level of extreme and outrageous conduct that no reasonable person could be expected to endure. *See, e.g., LaFua v. L.V. Metro. Police Dep't*, No. 2:22-cv-02133-GMN-BNW, 2023 U.S. Dist. LEXIS 93564, at *8 (D. Nev. May 26, 2023) (dismissing IIED claim under Rule 12(b)(6) where the plaintiff alleged that the officers told him he was not free to leave, and he was held for two hours in violation of his constitutional rights and Nevada law); *Cerros v. N. Las Vegas Police Dep't*, No. 2:06-cv-00647-LRH-PAL, 2007 U.S. Dist. LEXIS 59494, at *17 (D. Nev. Aug. 10, 2007) (dismissing IIED claim under Rule 12(b)(6) where the plaintiff merely alleged that the defendant "acted in concert" with police officers, who handcuffed him to perform an allegedly illegal search).

Furthermore, the FAC does not plausibly allege that Ranger Zohovetz caused Plaintiff to suffer emotional distress. The conclusory allegation that Zohovetz's conduct "was undertaken intentionally or, at least, with obvious and reckless disregard" to her distress, may be insufficient as a matter of law. FAC ¶ 73.[8] *See, e.g., Doe v. Wynn Resorts, Ltd.*, No. 2:19-cv-1904 JCM (VCF), 2020 U.S. Distr. LEXIS 124813, at *17 (D. Nev. July 15, 2020); *Stegmaier v. City of Reno*, No. 3:13-cv-00461-MMD-VPC, 2015 U.S. Dist. LEXIS 106631, at *23 (D. Nev. Aug. 13, 2015) (dismissing IIED claim because the "Court cannot conclude from the factual allegations, including the allegation that Plaintiff saw counselors and was prescribed medication, that Plaintiff's emotion[al] distress was extreme or severe"). Plaintiff has presented no evidence that Ranger Zohovetz acted in a way "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953, P.2d 24 (Nev. 1998) (internal quotations omitted).

For the above stated reasons, the Court should grant summary judgment in favor of the Federal Defendant Ranger Zohovetz on the fourth cause of action.

---

[8] Plaintiff refers to the "tears shed during these events," which the United States did not notice or view in the entirety of Ranger Zohovetz's body worn camera footage.

### V. <u>Conclusion</u>

For the foregoing reasons, the Federal Defendant Ranger Zohovetz respectfully request that the Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety, specifically requesting dismissal of the first and second cause of action for failure to state a claim upon which relief can be granted. Further, Federal Defendant Ranger Zohovetz requests dismissal on the third and fourth causes of action for lack of subject matter jurisdiction as Plaintiff failed to exhaust her administrative remedies. Alternatively, Federal Defendant Ranger Zohovetz respectfully request that Summary Judgment be found in his favor on the third and fourth causes of action.

Respectfully submitted this 16th day of December 2024.

JASON M. FRIERSON
United States Attorney

*/s/  R. Thomas Colonna*
R. THOMAS COLONNA
Assistant United States Attorney