

LAWRENCE & LAWRENCE LAW, PLLC
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HANNAH HALE HOEKSTRA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PERSHING COUNTY (Nevada) SHERIFF'S OFFICE; DONNA ROBINSON, an individual; DEPUTY BOYER, an individual; and P. ZOHOVETZ, an individual; collectively,<br><br>Defendants. | Case No.:   3:24-cv-00392-MMD-CSD<br><br>**PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANT'S MOTION TO DISMISS [ECF No. 23]**<br>**or, in the alternative,**<br>**MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 24]**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff HANNAH HALE HOEKSTRA ("Plaintiff" or "Ms. Hoekstra"), by and through her attorneys of the law firm of LAWRENCE & LAWRENCE LAW, PLLC, hereby submits her Response to Defendant Ranger Paul Zohovetz' ("Zohovetz" or the "Federal Defendant") Motion to Dismiss [ECF No. 23] or, in the alternative, Motion for Partial Summary Judgment [ECF No. 24], as collectively filed on December 16, 2024. This Response is based on the papers and pleadings on file in this matter, the following Memorandum of Points and Authorities, attached exhibits (if any), and any arguments from counsel the Court may choose to hear on this matter.

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Federal Defendant's dual motion is through and comprehensive, but it does not satisfy the requisite legal standards for either a motion to dismiss or a motion for summary judgment. Though the issue of applicability of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) is both nuanced and complicated, Federal Defendant seeks to swing the pendulum too far from reasonableness and the "well-settled law" which *Bivens* continues to be. Ms. Hoekstra's first cause of action, arising from still-operative law under *Bivens*, is well supported.

The First Amended Complaint [ECF No. 6] herein adequately pleads agency by Federal Defendant on behalf of Defendant Pershing County in performance of actions under the color of state law. Accordingly, the cause of action for violation of the Nevada Constitution adheres to Federal Defendant as well as the obvious state actors. As further explicated below, these same allegations, supported by facts in Federal Defendant's motions demonstrate the inapplicability of the Federal Tort Claim Act, mooting any arguments for administrative exhaustion and lack of subject matter jurisdiction. Jurisdiction is proper here over the pendent state tort claims.

Unsurprisingly at this early stage of the proceeding, numerous material facts related to Federal Defendant's actions remain in dispute. Accordingly, the motion for partial summary judgment is premature, and both of Federal Defendant's motions should be DENIED.

### II. STATEMENT OF UNDISPUTED FACTS

*See* Ms. Hoekstra's First Amended Complaint [ECF No. 6], which speaks for itself, and the allegations therein are acknowledged and noted by Federal Defendant in his motions. The facts alleged in ¶¶ 13, 14, 16, and 43, appear, from Federal Defendants' motions, to be undisputed by Federal Defendant. Plaintiff does not dispute that an administrative claim was filed pursuant to the Federal Tort Claims Act ("FTCA"), but, for the reasons detailed below, Plaintiff does dispute the applicability of the FTCA to any of the claims in this matter.

Federal Defendant's citations to https://burningman.org/about (the "Website") which may



well accurately represent the content of the referenced Website, are neither accepted as facts nor conceded as undisputed here. Equally, Federal Defendant's citations to an April 27, 2017, Memorandum of Understanding ("MOU") and a 2022 Burning Man Operations Plan (the "Plan"), absent appropriate rigor of the discovery process, are not accepted as undisputed. Neither cited document is provided as an exhibit to the motions, nor are the facts alleged authenticated in any fashion. Accordingly, the facts alleged by Federal Defendant are presently unverifiable and unacceptable. This is no less true for the manually filed body camera footage of Defendant Zohovetz, which is unvetted and unauthenticated, rendering it presently a wholly unsuitable basis for a motion for summary judgment.

### III.    LEGAL STANDARD

#### A. Motion to Dismiss pursuant to Fed. R. Civ. P. ("FRCP") 12(b)(1).

FRCP 12(b)(1) allows defendants to dismiss claims against them for lack of subject matter jurisdiction. "An attack on subject matter jurisdiction may be facial or factual… [I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction… In response to a factual attack, Plaintiffs must present affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). "In evaluating the evidence, the court need not presume the truthfulness of the plaintiffs' allegations. Any factual disputes, however, must be resolved in favor of Plaintiffs." *Id.* (internal citations omitted).

#### B. Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

FRCP 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive dismissal, the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1159 (9th Cir. 2012), citing to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. In conducting the relevant

analysis, the Court will accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id*.

### C. Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The party requesting summary judgment has the initial burden to show that there are no genuine issues of material fact." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record… or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. FRCP 56(c)(1)(A, B).

### IV.   ARGUMENT

#### A. *Bivens* supports Plaintiff's first cause of action.

The core principles and holding of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) are clear and unequivocal, despite subsequent, even numerous, efforts by the United States Supreme Court to distance itself from the justifiable judicial protection and preservation of constitutional rights clearly violated by federal actors. The rightful holding in *Bivens*, which remains *"*well-settled law," *Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017), is that the "Fourth Amendment operates as a limitation upon the exercise of federal power […  and] [i]t guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Bivens*, 403 U.S. at 392. Further, "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Those same principles and

analogous facts govern here and support Ms. Hoekstra's cause of action and mandate denial of Federal Defendant's pending motion to dismiss.

Minutiae notwithstanding, *Bivens* is directly on point with the cause of action articulated by Ms. Hoekstra, since, without reasonable suspicion and without probable cause, Defendant Zohovetz, an individual federal officer, seized,[1] handcuffed,[2] arrested (as a matter of law),[3] and searched[4] Ms. Hoekstra in violation of the Fourth Amendment. *Bivens* "has its origin in an arrest and search carried out on the morning of November 26, 1965," at which time Bivens was seized and arrested in his apartment, further to which he was handcuffed in front of numerous witnesses and later subjected to a search of his person (and surroundings). *Id.* at 389. Further, Bivens "asserted that the arrest and search were effected without a warrant… fairly read, [Bivens' petition] alleges as well that the arrest was made without probable cause." *Id.* Like Ms. Hoekstra, Bivens "suffered great humiliation, embarrassment, and mental suffering as a result of the [federal] agents' unlawful conduct, and sought [monetary] damages." *Id.* at 389-90.

As in *Bivens*, similar causes of action were also recognized under the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment, though the Supreme Court has recently trended away from such outcomes. *See*, respectively, *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). In departing from this arguably "*ancien regime*," *Abbasi*, 582 U.S. at 131, the Supreme Court references a changing landscape of statutory interpretation, while conceding that, "[w]ith respect to the Constitution, however, there is no single, specific congressional action to consider and interpret." *Id.* at 133.

---

[1] "En route to the locked truck, Ranger Zoltovetz [sic] took hold of Ms. Hoekstra's left arm and pulled her along to the Pershing County Sheriff's truck." ECF No. 6 at ¶ 32.

[2] "During her detention near the Pershing County Sheriff's truck, Ms. Hoekstra asked Deputy Boyer if the handcuffs could be loosened because they were cutting into her wrists. Deputy Boyer ostensibly attempted to loosen the handcuffs but, after consulting with Ranger Zoltovetz [sic], who physically examined the handcuffs, the handcuffs were retightened (and later removed and repositioned so that Ms. Hoekstra was handcuffed with her arms in front of her)." ECF No. 6 at ¶¶ 34, 35.

[3] *See United States v. Chamberlin,* 644 F.2d 1262, 1266–67 (9th Cir.1980) (holding that a twenty-minute detention in the back seat of a patrol car constituted an arrest). *See also* ECF No. 6 at ¶ 52.

[4] "While Ms. Hoekstra was detained, Ranger Zoltovetz [sic] unbuckled and removed her belt and belongings from around her waist and gave them into Deputy Boyer's possession." ECF No. 6 at ¶ 36.



1  Federal Defendant's motion to dismiss focuses largely on this newfound reluctance to
2  expand on the *Bivens* holding, citing to recent United States Supreme Court cases where
3  equivalent constitutional protections were not recognized in variant legal and factual
4  circumstances. Although the Supreme Court's resistance to follow *stare decisis* and
5  disinclination to expand on *Bivens*, *Davis*, and *Carlson* is of record, it is inapposite here.

6  Although not expanded by recent caselaw, miniscule variations from *Bivens* do not
7  reasonably foreclose causes of action arising under factually similar situations. *Abbasi*, which,
8  as noted above, acknowledged the continuing "well-settled" nature of *Bivens*, declined to extend
9  *Bivens* to "claims challenging the confinement conditions imposed on respondents pursuant to
10 the formal policy adopted by the Executive Officials in the wake of the September 11 attacks."
11 *Abbasi*, 582 U.S. at 122. Similarly, as cited in *Abbasi*, the Supreme Court declined to extend
12 *Bivens* in other matters related to the First Amendment, the Eighth Amendment, and for other
13 claims alleging racial discrimination as well as substantive and procedural due process. *See*
14 *Abbasi* at 135. Notwithstanding any disagreement Plaintiff may have with these holdings, they
15 are clearly distinct in both facts and circumstance from *Bivens*, and Federal Defendant's urging
16 that this Court pursue an unduly trepidatious course of action is misplaced. This <u>is</u> a *Bivens* case,
17 and no "extension" is required to apply *Bivens* to these facts.

18 "The proper test for determining whether a claim arises in a new *Bivens* context is as
19 follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this
20 Court, then the context is new. Meaningful differences may include, *e.g.,* the rank of the officers
21 involved; the constitutional right at issue; the extent of judicial guidance for the official conduct;
22 the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the
23 presence of potential special factors not considered in previous *Bivens* cases." *Id.* at 122. There
24 are no meaningful differences here. Without equivocation, the constitutional right at issue is
25 identical, stemming entirely from the Fourth Amendment, and, more narrowly, the execution of
26 an arrest and search without probable cause. In this, both cases are the same, where "street level"
27 law enforcement officers were both effecting a search and arrest of an accused individual. This
28 is in stark contrast to *Abbasi*, where plaintiffs sought alteration of government policy and

1 additionally alleged violations against officials in the Executive Branch based on the individual
2 acts of their subordinates. *Id.* *Abbasi* also implicated national security, which is not a "special
3 factor" here. *Id.*

4     *Egbert* instructs that the focus of these inquiries "is whether the Government has put in
5 place safeguards to 'preven[t]' constitutional violations 'from recurring.'"
6 *Egbert v. Boule*, 596 U.S. 482, 498 (2022). Federal Defendant's desired dismissal would work
7 entirely contrary to this focus and completely disregard the violation of Ms. Hoekstra's
8 constitutional rights and certainly make no steps to avoid recurrence of same. In reliance on
9 *Egbert* and progeny within this Circuit (which has missed the crucial focus of *Egbert*), Federal
10 Defendant urges that an ostensibly varying "legal mandate" deprives this Court of any oversight
11 over his constitutionally violative actions, but this nitpicking creates a mockery of "well-settled
12 law" and constitutional protections. The legal mandate under which Federal Defendant acted in
13 arresting Ms. Hoekstra is not so distinct and is not, substantively, the required focus of this
14 inquiry. The factual basis or the underlying specifics of the legal mandate for executing a search
15 and arrest has absolutely no bearing on whether such a search and arrest is compliant with the
16 Fourth Amendment, which is the necessary and only <u>meaningful</u> question for applicability of
17 *Bivens*. The consistent legal mandate, here and in *Bivens*, is to effect a constitutionally compliant
18 arrest of an individual citizen following articulation of probable cause for a violation of law. Such
19 inane diversions from this singular principle render an absurd result, where *Bivens* ("well-settled
20 law") would be entirely unsettled if there were such minor deviations as there only being five
21 unnamed officers, or if there were variations in amount and type of the illegal drug, or if the
22 unconstitutional search and arrest occurred on the curtilage of the Bivens' home. Such analysis
23 as proffered by Federal Defendant elevates meaningless differences beyond their place in light of
24 the claims and facts before the Court and subverts Ms. Hoekstra's rights.

25     There is voluminous "judicial guidance for the official conduct" (related to reasonable
26 search and seizure) at question here, of which the Court may take judicial notice, including,
27 without limitation, *United States v. Chamberlin,* 644 F.2d 1262 (9th Cir.1980), as cited herein,
28 which is directly on point in addressing the legally determined arrest following a twenty-minute



detention. Given that *Bivens* is so factually on point and already held by the Supreme Court to support a private right of action, there is no reasonable "risk of disruptive intrusion by the Judiciary into the functioning of other branches." This cause of action has already been found to exist, without disruptive judiciary intrusion.

The "special factors" analysis is already begun above. National security is not implicated here, as in *Abbasi*. Foreign affairs are also not implicated, as in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). There are no evident actions of private corporations, as in *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). The instant matter is not brought under the First Amendment, nor does it impact or affect border security, as in *Egbert v. Boule*, 596 U.S. 482 (2022). There is no claim of excessive use of force, beyond the scope of *Bivens*, as in *Mejia v. Miller*, 61 F.4th 663, (9th Cir. 2023).

Federal Defendant argues for qualified immunity, asserting, ostensibly, that the necessity for probable cause prior to an arrest was an unknown limitation. This is facially unsound, and this district is replete with caselaw supportive of Plaintiff's claim and contradictory to such a defense. Federal Defendant, in this context, only points to marginal involvement, which is a factual question, but, even so, his involvement, including application of handcuffs, search of Plaintiff's person and personal belongings, and mandatory confinement to a prescribed location, constitutes legally definitional search and arrest without probable cause. The clear establishment of such prohibitions on any law enforcement officer is axiomatic.

The United States Supreme Court maintains that *Bivens* is "well-settled law," and has explicitly refused to overturn it, despite numerous opportunities to do so. Even with the Supreme Court's reluctance to expand upon *Bivens* and others, a holding by this or any other court to limit the applicability of *Bivens* merely to the <u>exact</u> facts within the four corners of the Supreme Court's order renders the Supreme Court's statement frivolous and superfluous and precludes any precedential imprimatur for *Bivens*. This absurd result is facially contradictory to the Supreme Court's own statement and the plain meaning of "well-settled law," and an absurd result should not be countenanced here. In all relevant and meaningful aspects, the instant matter consistently reflects the *Bivens*' issues and holding, and Federal Defendant's motion to dismiss should be

denied.

**B. Federal Defendant is an alleged agent of Pershing County, subject to a claim for violation of the Nevada Constitution.**

Federal Defendant moves to dismiss the Nevada Constitution claim alleged against him, citing to various non-binding authority regarding state constitutional claims made against "federal employees acting under federal law." By way of the First Amended Complaint ("FAC") [ECF No. 6], Ms. Hoekstra expressly alleges that Federal Defendant was "acting on behalf of the Pershing County Sheriff" [ECF No. 6, FN. 1] and/or "otherwise also acting as a *de facto* agent for the Pershing County Sheriff," [ECF No. 6 at ¶ 5], thereby acting, for at least some period of time relevant to the FAC, under color of state law. Whether or not Federal Defendant was acting under color of federal or state law (or some amalgam or concatenation of both) is a factual question, yet to be determined, which render his arguments and motion in error or, minimally, premature under FRCP 12 jurisprudence.

Federal Defendant's cited cases all specifically rely on a singular premise: immunity from state suit for a federal employee acting under federal law. In *Hightower*, "the allegations of the complaint expressly allege that the individual defendants were acting within the scope of their federal employment at all times relevant to the complaint." *Hightower v. United States*, 205 F. Supp. 2d 146, 148 (S.D.N.Y. 2002) (emphasis added). This is equally true for all other cited cases; however, this limitation or narrow application is not governing here, where Plaintiff has expressly alleged that Federal Defendant was acting, in a scope, time, and manner to be determined in discovery, under color of state law as an agent of Pershing County. In such a case, as may be supported by subsequently adduced facts, none of which facts are presently (or properly) before the Court, the cause of action for violation of the Nevada Constitution is both just and proper.

The District of Maryland, cited by Federal Defendant, supports the above analysis. "[T]he Supreme Court has stated, 'The traditional definition of acting under color of state law requires that the defendant… have exercised power 'possessed by virtue of state law and made possible

only because the wrongdoer is clothed with the authority of state law.'" *Durham v. Rapp*, 64 F. Supp. 3d 740, 746 (D. Md. 2014), *citing to West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (citations omitted).  Similarly, the Sixth Circuit has noted that it has "joined a majority of circuits in recognizing that a federal official can act 'under color of state law' in certain circumstances." *Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997), *citing to Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992) *et al.* "[W]hether particular conduct constitutes action taken under the color of state law[] must focus on the actual nature and character of that action." *Id. Cabrera* amplifies that federal officials may be liable for actions under color of state law "if they are found to have conspired with or acted in concert with state officials to some substantial degree." *Cabrera*, 973 F.2d at 742.  In *Cabrera*, the Ninth Circuit affirmed "the federal defendants should be considered state actors because of their 'significant and substantial cooperation' with the [state actor]." *Id.*

As noted above, Federal Defendant cites to the MOU and the Plan to address and describe the scope of authority by Defendant Pershing County ("PCSO") and the Bureau of Land Management ("BLM").  To the extent that these unauthenticated and presently disputed documents may be relied upon for Federal Defendant's motions, they appear to work in favor of Plaintiff's arguments explicated herein.  As alleged in the FAC, Ms. Hoekstra believes and was informed by Defendant Robinson that she was arrested for "obstruction of their investigation," which accusation and charge is, fundamentally and unequivocally, an issue of state law, statute, or county ordinance.  ECF No. 6 at ¶ 39.  According to the Website, "BLM Rangers [] enforce federal laws, and the Pershing County Sheriff's Office [] enforces state and local laws." ECF No. 23 at 3:26-28.  The MOU, in effect or not, "provid[es] that PSCO has the authority to enforce State and local law for Nevada on BLM-administered public lands within Pershing County." *Id.* at 5:22-23.  And again, the "Plan explains that PSCO is responsible for enforcing 'Nevada State laws, statutes, and county ordinances on BLM administered lands,' while the BLM is responsible for enforcing, 'federal laws…'" *Id.* at 6:17-19.  The motion concedes that "Ranger Zohovetz assisted PCSO deputies who were enforcing state law on federal property, as permitted under FLPMA and the Plan."  Assuming, *arguendo*, that Federal Defendant's assertions are correct,

1  there can be little doubt that the allegations by Plaintiff describe his participation in enforcement
2  of state laws, leading to the inescapable conclusion that the Federal Defendant exercised power
3  possessed by virtue of state law and made possible only because he was clothed with the authority
4  of state law.  Accordingly, the Nevada Constitutional claim must stand.

### C. The Federal Tort Claim Act ("FTCA") does not govern Plaintiff's claims; no administrative exhaustion is required.

As already fully detailed above, genuine and material questions of fact exist as to whether or not Federal Defendant was acting under color of federal or state law when undertaking the actions described in the FAC, or, under the particular language of the FTCA, whether or not Federal Defendant was acting within the course of his office and federal employment.  This assertion by Federal Defendant is a disputed fact, rendering the motion to dismiss premature.

Under the FTCA (28 USCS § 2679(d)(2)), the Attorney General may provide certification that an individual is acting within the scope of his or her employment, which certification will create a rebuttable presumption, absent allegations or evidence to the contrary.  *See Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1997 U.S. App. LEXIS 8245 (4th Cir.), *cert. denied*, 522 U.S. 931, 118 S. Ct. 335, 139 L. Ed. 2d 260, 1997 U.S. LEXIS 6312 (1997).  Here, there is no such certification.  Further, Plaintiff has adequately alleged facts contrary to any such subsequently produced certification, the outcome of which would require further factual analysis and adjudication by this Court.  As an initial matter, Federal Defendant fails in providing the necessary factual predicate for his legal argument, requiring that his motion be denied.

Additionally, even if the FTCA were implicated, the "exception to the exception" does not reasonably apply.  As Federal Defendant notes, the FTCA (and associated administrative processes) does not generally apply to intentional torts, like civil false imprisonment and intentional infliction of emotional distress ("IIED"), both of which are alleged by Plaintiff in the FAC.  This exception has its own exception in 28 U.S.C. § 2680(h), under which, for "investigative or federal law enforcement officers," the FTCA does apply.  Federal Defendant accurately notes that, under relevant law, BLM agents, like himself, are not "investigative or law

enforcement officers" as they are not empowered "to execute searches, to seize evidence, or to make arrests for violations of Federal law." It follows that an FTCA claim against Federal Defendant, under this plain language of the FTCA, would be precluded, but inapplicability of the FTCA does not foreclose relevant tort claims against Federal Defendant individually. Hence, Plaintiff does not allege any such claim under the FTCA, asserting, rather, state tort claims against Federal Defendant (and not the United States).

Federal Defendant seeks to establish "scope of employment" via the applicable state law for *respondeat superior*, from which he then argues that the FTCA would govern. This argument is also in error. "The Court reviews FTCA scope of employment determinations according to the principles of *respondeat superior* of the state in which the alleged tort occurred… Under Nevada law, whether an employee was acting within the scope of his or her employment for the purposes of *respondeat superior* liability generally is a question of fact." *Grantham v. Durant*, 471 F. Supp. 2d 1069, 1074 (D. Nev. 2006). "In Nevada, an employer is not liable for its employee's intentional conduct if the employee's conduct: (a) Was a truly independent venture of the employee; (b) Was not committed in the course of the very task assigned to the employee; and (c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his employment." *Id.*, *citing to* Nev. Rev. Stat. § 41.745(1). "An employee's intentional act is reasonably foreseeable 'if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury.'" *Id.*

From this applicable law, Federal Defendant misstates the language of the FAC to conclude that he was acting within the scope of employment, thus implicating the FTCA. As already detailed above, neither the Plaintiff nor the FAC make any such concession. Rather, the FAC clearly notes that "Defendants, and each of them, respectively acting under color of law and within the course and scope of their individual employment by <u>or agency of the Pershing County Sheriff</u> and the BLM, intentionally acted without legal cause or justification." ECF No. 6 at ¶¶ 67, 72 (emphasis added). Federal Defendant's motion elides the emphasized language, which clearly allows for actions taken under color of state law and outside the scope of federal employment. As Federal Defendant already conceded, neither he nor any BLM agents are

authorized to execute searches, to seize evidence, or to make arrests, yet that is exactly what Federal Defendant did, while, ostensibly "[p]rovid[ing] assistance, *e.g.*, back-up" to PCSO. Federal Defendant's arguments that such actions, presumably outside the scope of employment and, reasonably, training, of a BLM agent who is not an "investigative or law enforcement officer," were foreseeable to an ordinary person, but this argument is not availing. If Federal Defendant is not empowered "to execute searches, to seize evidence, or to make arrests for violations of Federal law," he should never have done so, nor was it ever reasonably foreseeable that he would, even by way of providing "back-up." Under Nevada law, for the facts as described, the FTCA and its requirements for administrative exhaustion are not applicable.

The FTCA does not govern Plaintiff's state tort claims for civil false imprisonment or IIED. As such, there is no requirement for administrative exhaustion, and this Court is not deprived of subject matter jurisdiction. The Court properly has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

### D. Federal Defendant's Motion for Summary Judgment is, minimally, premature.

As already referenced above, the Federal Defendant's body camera footage [Exhibit B, ECF No. 23-2] is not authenticated or supported by affidavit from the Defendant or a custodian of records from either the PCSO or the BLM. As an initial matter, Federal Defendant fails to factually support the allegations in support of his motion for summary judgment.

Assuming, *arguendo*, the accuracy and authenticity of Exhibit B, Federal Defendant's conclusions of law based on the video are unfounded. Exhibit B clearly demonstrates Defendant Zohovetz' involvement and participation in Ms. Hoekstra's arrest, and, under *Cabrera*, supports the allegations that he *"*conspired with or acted in concert with state officials to some substantial degree" and evidenced "significant and substantial cooperation" with Defendant Boyer and the PCSO. At nearly the onset of the video, Federal Defendant is observed taking Ms. Hoekstra by her left arm and directing her to a prescribed area of confinement by a PCSO truck. Contrary to assertions in the motion, Exhibit B does not demonstrate that Federal Defendant personally

observed the origination of Ms. Hoekstra's arrest (though there are allegations by Burning Man officials of improper interception of communications by both PCSA and BLM), so Federal Defendant had no reasonable belief or basis for her arrest. The motion's reference to *Lerner Shops v. Marin*, 423 P.2d 398, 400 (1967) and the shopkeeper's privilege is misplaced, as NRS § 597.850(3) predicates a "reason to believe" a criminal act (of theft only) has been committed based on personal observation: "A merchant is presumed to have reason to believe that merchandise has been wrongfully taken by a person and that the merchant can recover the merchandise by taking the person into custody and detaining the person <u>if the merchant observed the person concealing merchandise while on the premises</u>" (emphasis added). Reference to NRS § 171.234 is equally inapposite, at best demonstrating genuine issues of material fact. NRS § 171.234 requires "reasonable" indication of commission of a crime, a detention time that is "reasonably necessary," and "must not extend beyond the place or the immediate vicinity of the place where the detention was first effected, unless the person is arrested." All of these considerations and determinations of reasonableness are factual issues, not dismissed by Federal Defendant's unilateral interpretation.

Quite contrary to being a passive participant or mere observer, Exhibit B shows that Federal Defendant largely took charge over the situation, Defendant Boyer, and Ms. Hoekstra. The video is replete with comments by Federal Defendant which illustrate that he actively participated in the confinement, containment, arrest, and handcuffing of Ms. Hoekstra and that he was overtly acting in the administration of state law:

- "She's in handcuffs, she's not coming out of them."
- "<u>My partner</u> [Defendant Boyer] can put your [uncuff you and recuff you] with your hands in front of you."
- "Because you have a pouch and objects that are readily accessible with your hands in the front, then <u>we will just remove this [pouch] from you</u>.
- Federal Defendant checked and decided the handcuffs were too loose.
- When Defendant Boyer physically removes Ms. Hoekstra's left hand from cuffs, Federal Defendant instructs her to keep left hand on truck; same with right hand.



- Federal Defendant demonstrates to Ms. Hoekstra how to place her hands to be cuffed by Defendant Boyer.
- Federal Defendant denies that Ms. Hoekstra ever cried as a result of her pain and arrest, but this allegation is unfounded; Federal Defendant did not maintain video contact with Ms. Hoekstra throughout the entire ordeal.
- Federal Defendant affirmatively states to Ms. Hoekstra that she has "committed a violation of [state] law."
- Federal Defendant informs Ms. Hoekstra that she may or will be transported to Pershing County Sheriff's Office.
- To Burning Man officials: "We got her to a point where she was handcuffed behind the back"
- To Burning Man officials: "We've now moved the handcuffs to the front."
- Deputy Boyer later states that, "Paul came in and gave me a hand," after which Federal Defendant again confirmed that he checked the cuffs and determined they were too loose.
- Later, Federal Defendant derisively stated that, "Once the Oscar act was over… [to Ms. Hoekstra] If you want to chill out, we'll cuff you up front."

Federal Defendant argues that he did not commit any extreme or outrageous conduct, but this simply reflects his viewpoint on constitutional violations, which assessment is disputed by Ms. Hoekstra and, most citizens. Federal Defendant's involvement and actions in committing the torts is manifest, but, even if disputed, such dispute precludes a grant of the motion for summary judgment, which must be denied.

/ / /

/ / /

### E. CONCLUSION

For the foregoing reasons, Ms. Ramos-Quirarte respectfully urges that each of Federal Defendants' pending Motion to Dismiss and Motion for Partial Summary Judgment must be DENIED.

DATED this 20th day of January 2025.

**LAWRENCE & LAWRENCE LAW, PLLC**

_____
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

# CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANT'S MOTION TO DISMISS [ECF No. 23] or, in the alternative, MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 24]** was made on this 20th day of January 2025, by electronic mail and/or submission to the electronic filing and service system (CM/ECF) of the United States District Court, District of Nevada, which will provide copies to all parties and counsel of record, including the following:

THORNDAL ARMSTRONG, PC
Katherine F. Parks, Esq.
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882 (phone)
(775) 786-8004 (fax)
KFP@thorndal.com
*Attorneys for Pershing County, Donna Robinson, and Daniel E. Boyer*

JASON FRIERSON
United States Attorney, District of Nevada
Nevada Bar No. 7709
R. THOMAS COLONNA
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
702-388-6336
Email: richard.colonna@usdoj.gov
*Attorneys for the United States*

DATED this 20th day of January 2025.

**LAWRENCE & LAWRENCE LAW, PLLC**

_____
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*