SUE FAHAMI
Acting United States Attorney
District of Nevada
Nevada Bar No. 5634

R. THOMAS COLONNA
Assistant United States Attorney
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Email: richard.colonna@usdoj.gov

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| HANNAH HALE HOEKSTRA,<br><br>Plaintiff,<br><br>v.<br><br>PERSHING COUNTY (Nevada) SHERIFF'S OFFICE; DONNA ROBINSON, an individual; DEPUTY BOYER, an individual; and P. ZOHOVETZ, an individual; collectively,<br><br>Defendants. | Case No. 3:24-cv-00392-MMD-CSD<br><br>**Federal Defendant's Reply In Support of Defendant's Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment** |

Federal Defendant reasserts its arguments made in its Motion to Dismiss or, in the alternative, Motion for Partial Summary Judgment. *See* ECF No. 24. This Reply in Support of the Motion is based on the papers and pleadings on file in this matter, the following Memorandum and Points of Authorities, attached exhibits, and any arguments from counsel the Court may choose to hear on this matter.

Dated this 24th day of January 2025.

SUE FAHAMI
Acting United States Attorney

 */s/ R. Thomas Colonna*
R. THOMAS COLONNA
Assistant United States Attorney

**Memorandum of Points and Authorities**

## I. Introduction

Federal Defendant's Motion plainly met his burden under Fed. R. Civ. P. 12(b)(1) and (6) and, alternatively, met his burden under Fed. R. Civ. P 56.

Concerning Plaintiff's first cause of action, Plaintiff's Opposition erroneously suggests Federal Defendant is trying to "swing the pendulum too far" with respect to her *Bivens*[1] claim. But Supreme Court precedent from *Abbasi*[2] and *Egbert*[3] clearly provides that *Bivens* is to be narrowly applied to unreasonable searches and seizures. And the Ninth Circuit similarly declined to expand *Bivens* into other contexts. However, even if this precedent hypothetically did not preclude Plaintiff's *Bivens* action, Federal Defendant's Motion should still be granted because Ranger Zohovetz is entitled to qualified immunity. Ranger Zohovetz, a Bureau of Land Management ("BLM") officer who merely oversaw an arrest for which Pershing County, had probable cause, and only assisted in the tightening and loosening of handcuffs. The body worn camera ("BWC") footage clearly establishes the Federal Defendant committed no constitutional violation against Plaintiff. As such, there are no material facts in dispute as to the actions taken by Ranger Zohovetz on the date of the incident. Respectfully, this is not a context for which *Bivens* applies.

Concerning Plaintiff's second cause of action, Ranger Zohovetz acted under the color of federal law; therefore, he is insulated from state constitutional claims based on the legal principles of sovereign immunity and supremacy.

Concerning Plaintiff's third cause of action (false imprisonment) and fourth cause of action (IIED), Plaintiff failed to exhaust her administrative remedies under the Federal Tort Claims Act ("FTCA"). Despite Plaintiff's protestations, false imprisonment and IIED are tort claims that must be brought under the FTCA. Very simply, false imprisonment is a tort and with the FTCA, the claims are evaluated under the state law in which the incident occurred. *See Hernandez v. City of Reno*, 97 Nev. 429, 634 P.2d 668, 671 (1981) (quoting

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).
[2] *Ziglar v. Abbasi*, 582 U.S. 120 (2017).
[3] *Egbert v. Boule*, 596 U.S. 482 (2022).

2

*Marschall v. City of Carson*, 86 Nev. 107, 464 P.2d 494, 497 (1970)); *see also* Restatement (Second) of Torts § 35 (1965)). The same is true with IIED. *See Miller v. Jones*, 114 Nev. 1291, 1299-1300, 970 P.2d 571 (1998).

Plaintiff cannot circumvent the administrative phase of her claim, and her Opposition fails to establish otherwise. As such, the Court lacks subject-matter jurisdiction over Plaintiff's third and fourth causes of action under Rule 12(b)(1). In addition to Plaintiff's procedural shortcomings as to these claims, the Motion should substantively be granted under Rule 56. Plaintiff cannot establish the elements necessary to prove a false imprisonment or IIED case. Based on the foregoing, Federal Defendant's Motion should be granted in its entirety.

## II. Argument

### A. Federal Defendant's Motion Should Be Granted as to Plaintiff's *Bivens* Claim Because *Bivens* does not support Plaintiff's first cause of action

Plaintiff rightfully states that the Supreme Court has only upheld *Bivens* claims three times: (1) in *Bivens*; (2) in *Davis v. Passman*, 442 U.S. 228 (1979); and in *Carlson v. Green*, 446 U.S. 14 (1980). Plaintiff then tries to incorrectly avoid unfavorable precedent by saying "minutiae notwithstanding," *Bivens* is "directly on point with the cause of action articulated by Plaintiff." *See* Mot. Opp. (ECF No. 37) at pg. 5. As Plaintiff is aware, *Bivens* involved agents from the Federal Bureau of Narcotics (FBN) who searched plaintiff's home and conducted a warrantless arrest. *See Bivens*, 409 F.2d at 718. But Plaintiff's situation was far different from the *Bivens* plaintiff.

In the instant case, the Pershing County Sheriff's Office ("PCSO"), a local state actor, investigated a complaint of sexual assault at the Burning Man Festival. PCSO had probable cause to temporarily detain Plaintiff because she was interfering and/or obstructing that investigation. Notably, Ranger Zohovetz, a federal actor, was excluded from PCSO's decision to temporarily detain Plaintiff; moreover, Ranger Zohovetz did not

effectuate any "arrest." Additionally, the federal officials in *Bivens* were operating under a statutory mandate distinct from that of BLM assisting with local law enforcement at the Burning Man festival and this difference alone renders the context meaningfully different under the Supreme Court's *Abbasi* standard. *Abbasi*, 137 S. Ct. at 1860. *See* **Exhibit "A" (MOU)**; *see* **Exhibit "B" (Parnell Declaration)**; *see also* **Exhibit "C" (Select Pages from 2022 Burning Man Operations Plan).**

Respectfully, it cannot be argued in good faith that Ranger Zohovetz used excessive force during Plaintiff's arrest and/or temporary detention – as clearly seen in the BWC footage – not with holding Plaintiff's left arm, nor with respect to the handcuffs, nor with respect to unbuckling a seat belt and providing belongings to Deputy Boyer. *See* ECF No. 6 at ¶¶ 32, 34, 35, and 36. Ranger Zohovetz's actions do not amount to any constitutional violations against Plaintiff.

While Plaintiff may be unhappy with the decisions in *Abbasi* and *Egbert*, that is the appliable law. Further, Plaintiff's disagreements with that case law, and with the Ninth Circuit's decisions refusing to expand *Bivens*, is not to be perversely twisted against Federal Defendant. Plaintiff erroneously states Federal Defendant is asking the Court to engage in an "unduly trepidatious course of action." Respectfully, Plaintiff's language is hyperbolic and attempts to avoid clearly established law.

Additionally, Plaintiff's reliance on *United States v. Chamberlin*, 644 F.2d 1262 (9th Cir. 1979), is misplaced. *Chamberlain* analyzed the justification for a "*Terry* stop"[4] but found that the circumstances in that case did not warrant further detention after the reasonableness of the initial stop. *Id. Chamberlain* makes no mention of *Bivens* and predates both *Abbasi* and

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

4

*Egbert*. Thus, *Chamberlain* does not apply special factors to determine whether *Bivens* applied to Plaintiff's claims of "excessive force" in this matter.

### i. *Mejia v. Miller* rejected a *Bivens* claim against BLM officers

As provided in the Motion, since *Egbert v. Boule*, 596 U.S. 482 (2022), the Ninth Circuit has consistently declined to recognize a *Bivens* remedy.[5] In *Mejia v. Miller*, for example, the Ninth Circuit emphasized that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." 61 F.4th 663, 669 (9th Cir. 2023) (quoting *Egbert*, 596 U.S. at 486). In *Mejia*, the Ninth Circuit rejected a *Bivens* claim against BLM officers, with the court noting that *Egbert* "identifie[d] the legal mandate under which the officer was operating as an example of a new context" and that plaintiff did "not point to any reason to believe . . . that BLM has the same mandate as agencies enforcing federal anti-narcotics law [as in *Bivens*]" (internal quotation marks omitted). In *Harper v. Nedd*, the Ninth Circuit plainly stated that, "future extensions of *Bivens* are dead on arrival." 71 F.4th 1181, 1187 (9th Cir. 2023).

---

[5] Notably, since *Egbert*, the Ninth Circuit has considered *Bivens* claims in over 20 different circumstances and, with limited exception, declined to recognize any *Bivens* actions. *See, e.g.*, *Firdos Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 930 (9th Cir. 2024) (Fourth and Fifth Amendment fabrication of evidence); *Marquez v. Rodriguez*, 81 F. 4th 1027, 1033 (9th Cir. 2023) (Fifth Amendment failure-to-protect pretrial detainee); *Chambers v. Herrera*, 78 F.4th 1100, 1109 (9th Cir. 2023) (First Amendment retaliation and Eighth Amendment failure to protect); *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) (Fifth Amendment procedural due process); *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) (Fourth Amendment excessive force and unlawful seizure); *Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) (Fourth Amendment unlawful arrest and excessive force); *but see Standard v. Dy*, 88 F.4th 811, 816-17 (9th Cir. 2023) (holding that an inmate's Eighth Amendment deliberate indifference to medical needs claim fell within the existing context of *Carlson*).

### ii. While the facts do not support a *Bivens* extension, qualified immunity still applies

As argued previously, if the Court finds a *Bivens* remedy is available to Plaintiff, BLM Ranger Zohovetz should still be entitled to qualified immunity. Plaintiff's Opposition fails to address the two-step analysis under *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The facts at issue neither show that Ranger Zohovetz violated a constitutional right, nor that this right was clearly established by Plaintiff. *Id.* Further, with respect, Federal Defendant does not understand Plaintiff's argument that the probable cause was an "unknown limitation" or regarding prohibitions being axiomatic. Plaintiff's confusing thesaurus use aside, the facts do not support that her constitutional rights were violated.

The United States Supreme Court has "made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [would] be resolved prior to discovery." *Id.; Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."). The doctrine of qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson*, 555 U.S. at 231). "[I]mmunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12.

Ranger Zohovetz did not personally handcuff Plaintiff or confine her to a prescribed location. Ranger Zohovetz assisted a state law enforcement officer. *See* **Exhibit "B."** Plaintiff was already handcuffed when Ranger Zohovetz encountered her. FAC ¶ 32. The only allegation in the FAC regarding Ranger Zohovetz and confinement is contained in Paragraph 35: "Deputy Boyer ostensibly attempted to loosen the handcuffs but, after

6

consulting with Ranger Zoltovetz (sic), who physically examined the handcuffs, the handcuffs were retightened (and later removed and repositioned so that Ms. Hoekstra was handcuffed with her arms in front of her)." *See id.* at ¶ 35. As previously argued, there is no liability attached to physically examining handcuffs. Plaintiff has not met her burden of showing "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (citation omitted). Therefore, Ranger Zohovetz has qualified immunity.

For the reasons stated above, Plaintiff's first count should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted as Plaintiff does not make out a *Bivens* claim.

**B. Federal Defendant's Motion Should Be Granted as to Plaintiff's 1983 Claim Because Ranger Zohovetz was Acting Under Color of Federal Law**

The MOU "provid[es] that PCSO has the authority to enforce State and local law for Nevada on BLM-administered public lands within Pershing County." *See* **Exhibit "A."** And, the "Plan explains that PCSO is responsible for enforcing 'Nevada state laws, statutes, and county ordinances on BLM administered lands,' while the BLM is responsible for enforcing, 'federal laws…'" *See* **Exhibit "B"**; *see also* **Exhibit "C."** Both the MOU and the Plan clearly delineate that *Ranger Zohovetz is responsible for federal law on federal land*. (emphasis added). As previously argued, Ranger Zohovetz is a federal employee who was acting under the color of federal law and, therefore, insulated from state constitutional claims based on the legal principles of sovereign immunity and supremacy.

*Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992) does not assist Plaintiff. As explained below, Plaintiff has failed to file a Section 1983 claim against Ranger Zohovetz. (emphasis added). Federal officials do not become "state actors" unless "[t]he State has so far insinuated itself into a position of interdependence with . . . [the federal officials] that it must be recognized as a joint participant in the challenged activity." *Kletschka*, 411 F. 2d at 449 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). To transform a

federal official into a state actor, the appellees must show that there is a " 'symbiotic relationship' between the [federal defendants] and the state such that the challenged action can 'fairly be attributed to the state'." *Johnson v. Orr,* 780 F.2d 386, 390 (3rd Cir. 1986) (citing *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 99 (3rd Cir. 1984)). *See also Gibson*, 781 F.2d at 1343 ("Federal officers acting under federal authority are immune from suit unless the state or its agents significantly participated in the challenged activity."). This application of identifying whether there was a symbiotic relationship would only apply if Plaintiff had alleged a Section 1983 action, but she did not. Further, both the MOU and the Plan establish that Ranger Zohovetz remained a federal agent responsible for the enforcement of federal law.

For the reasons stated above, Plaintiff's second count should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**C. Federal Defendant's Motion Should Be Granted as to the Plaintiff's False Imprisonment and IIED Claims Because She Failed to Exhaust Her Administrative Remedies Under FTCA**

**1. The Appliable Tort Law**

    **a. False Imprisonment**

"To establish false imprisonment of which false arrest is an integral part, it is necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." *Hernandez v. City of Reno*, 634 P. 2d 668, 671 (1981) (quoting *Marschall v. City of Carson*, 464 P. 2d 494, 497 (1970)). A defendant may be liable for false imprisonment where: (1) he intentionally confines the plaintiff within boundaries fixed by the defendant; (2) his act directly or indirectly results in a confinement of the plaintiff; and (3) the plaintiff is conscious of the confinement or is harmed by it. *Id.* (citing Restatement (Second) of Torts § 35 (1965)).

NRS § 171.123(1), however, states "[a] peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has

8

committed, is committing or is about to commit a crime." Officers are also allowed to protect themselves and **detain those who fail to comply with police orders**. *Cortes v. State*, 260 P.3d 184, 189 (2011); *see also Redeker v. State*, 238 P. 3d 848, 2008 WL 6102007, at *3 (Nev. 2008) (unpublished opinion) (emphasis added).

### b. Intentional Infliction of Emotional Distress ("IIED")

The elements of IIED are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (2000) (quoting *Star v. Rabello*, 625 P.2d 90, 91-92 (1981)). "The plaintiff's complaint must also specifically allege intent." *Bolz v. City of N. Las Vegas*, No. 2:12-cv-00288-RFB-PAL, 2015 U.S. Distr. LEXIS 101906, at *29 (D. Nev. Aug. 3, 2015). Accordingly, IIED is an intentional tort. *See, e.g., Lee v. Diet Ctr.*, No. 2:19-cv-00628-GMN-EJY, 2020 U.S. Dist. LEXIS 58008, at *23 (D. Nev. Mar. 31, 2020); *Russo v. Shac*, 2021 Nev. App. Unpub. LEXIS 652, at *23 (Nov. 17, 2021).

The Nevada Supreme Court has looked to California law to define extreme and outrageous conduct as "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P. 2d 24, 26 (1998) (internal quotation marks and citation omitted). "Liability for emotional distress generally does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (internal quotation marks omitted).

2. Analysis

    a. The FTCA Applies Because Ranger Zohovetz Was Acting in the Scope of Federal Employment During the Incident

Federal Defendant's Motion established that the FTCA applied, and the Opposition failed to prove otherwise. It is unclear what Plaintiff is arguing by claiming that there is a question of whether Ranger Zohovetz was acting in his official capacity as a federal actor. Plaintiff alleges that Ranger Zohovetz committed the intentional torts of false imprisonment and IIED "within the course and scope of [his] individual employment by . . . the BLM." FAC ¶¶ 67, 72. Plaintiff asserts that when this incident happened, Ranger Zohovetz was acting in the scope of his federal employment with the BLM. *Id.* Further, at no time was Ranger Zohovetz ever employed by the PCSO or by any other Agency other than the BLM. Ranger Zohovetz was not working the Burning Man Festival on his own volition or engaged in any kind of "independent venture" separate and apart of from his employment with BLM.

Further, Plaintiff fails under her own argument by trying to have it both ways – that is, Plaintiff conflates a *Bivens* claim with a Section 1983 claim, and there is no question that Plaintiff has not brought a Section 1983 claim in this case. There are generally two methods to bring actions to vindicate federal rights. One is under 42 U.S.C. § 1983 and the second is under *Bivens*, 403 U.S. 388, 390 (1971). Actions under § 1983 and *Bivens* are substantively identical, <u>but § 1983 applies when defendants are state actors whereas *Bivens* applies when the defendants are federal actors</u>. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred) (internal quotations omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and *Bivens* are identical save for the replacement of a state

actor under § 1983 by a federal actor under *Bivens*."). Here, Plaintiff has alleged that Ranger Zohovetz violated her constitutional rights and that he was a federal actor but only now alleges he was not acting under the course and scope of his employment with BLM.

Plaintiff completely misses the mark claiming that somehow Federal Defendant has not provided the legal predicate to establish Ranger Zohovetz was acting under the course and scope of his employment. In lieu of providing an Answer where Federal Defendant admits to this fact, Federal Defendant explained in its Motion that he was acting within the scope of federal employment. Plaintiff fails to realize that the certification provided by the Attorney General is delegated to the United States Attorney, which is done in cases where Plaintiff sues an individual rather than the Agency or the United States, and the United States provides what is called a *Westfall* substitution to the Court. Again, because Federal Defendant is moving to dismiss the action or, alternatively, for partial summary judgment, this *Westfall* substitution was not done, nor a certification provided. Further, the Court would likely not grant said substitution because Ranger Zohovetz has been sued as a federal actor in his individual capacity in Plaintiff's first cause of action.

Again, Plaintiff's argument remains unclear. Federal Defendant does not misstate the language of the FAC. In fact, the fullness of the quote from the FAC does not state or suggest that Ranger Zohovetz was not acting within the scope of his employment with BLM. Federal Defendant did not concede that Ranger Zohovetz was not authorized to assist in law enforcement at the event, and certainly did not concede Ranger Zohovetz did not have authority to enforce federal law on federal lands. *See* **Exhibit "B"**; *see also* **Exhibit "C."** It certainly is foreseeable that Ranger Zohovetz, given the MOU and the Plan, would execute a search, seize evidence, or make an "arrest" and/or assist PCSO in all those things. This incident alone demonstrates that it was reasonably foreseeable.

### b. Plaintiff's Claim Must Be Dismissed for Failure to Exhaust Administrative Remedies Under the FTCA.

Federal Defendant notes that the law is clear that both false imprisonment and IIED are tort claims and because Ranger Zohovetz was working in his official capacity as a federal agent for the BLM the day of the alleged incident, even if supporting the PCSO, via an MOU for this musical event, the FTCA still applies, and the fact remains Plaintiff has not exhausted her administrative remedies.

Here, Plaintiff's FTCA claims accrued on August 31, 2022. *See Gallardo v. United States*, 749 F.3d 771, 774 (9th Cir. 2014) (noting that "once a plaintiff becomes aware of her injury and its immediate cause, her claim accrues" for purposes of 28 U.S.C. § 2401(b)). However, she commenced the action on September 3, 2024, <u>three days outside</u> the two-year statute of limitations for filing an administrative claim. *See, e.g., Urata v. United States*, No. 12-cv-1277 WQH(WMC), 2012 U.S. Dist. LEXIS 178921, at *25 n.1 (S.D. Cal. Dec. 13, 2012). Thus, one reason Plaintiff may be fighting this requirement is because she may very well indeed have a statute of limitations problem.

For the reasons stated above, Plaintiff's claims for false imprisonment and IIED (Counts 3 and 4) should be dismissed under Rule 12(b)(1) for failing to exhaust administrative remedies.

### D. Alternatively, Motion for Summary Judgment, on the Third and Fourth Causes of Action

#### a. Federal Defendant's Motion for Summary Judgment is Not Premature

Federal Defendant's alternative motion for summary judgment should be granted because Plaintiff fails to establish any genuine issue as to the material facts concerning her false imprisonment and IIED claims. Rather, Plaintiff attempts to avoid the summary judgment standard by arguing the motion is premature and that an affidavit needs to be attached to the BWC footage that Federal Defendant has provided. And in doing so, she

fails to provide any law requiring an affidavit to be attached to BWC footage, nor has she disputed that the BWC footage fairly and accurately depicts the events as they occurred that day through the BWC of Ranger Zohovetz.

### i. No Genuine Issue of Material Fact Exists in Plaintiff's False Imprisonment Claim – Count 3

Plaintiff misstates Federal Defendant's position in her Opposition. Ranger Zohovetz did not claim to be at the scene of the initial detention, but Federal Defendant stated that he believed that Plaintiff was being detained for obstructing a law enforcement investigation, which is a misdemeanor in Nevada. Further, it is unclear what Plaintiff means by "unilateral interpretation" as the BWC footage is replete with evidence of Plaintiff resisting detention and/or arrest, deliberately making it difficult for the officers to remove her from the investigation, talking back to the officers, refusing to give information, goading another individual into continuing to videotape her detention, and otherwise baiting the officers involved. Her claims of psychological and physical injury in her FAC are belied by the BWC footage. Officers are also allowed to protect themselves and **detain those who fail to comply with police orders**. *Cortes v. State*, 260 P.3d 184, 189 (2011); *see also Redeker v. State*, 238 P. 3d 848, 2008 WL 6102007, at *3 (Nev. 2008) (unpublished opinion) (emphasis added). There was more than enough reason to believe by Ranger Zohovetz that based on what he witnessed that Plaintiff had been interfering in an investigation, a criminal act in Nevada, and exacerbated the situation with her conduct after the detention and/or arrest was initiated by Deputy Boyer.

Federal Defendant leaves it to the Court's interpretation of the BWC footage to examine whether, at any time, Ranger Zohovetz was acting inappropriately, trying to hurt Plaintiff, was violating any of her rights, or was falsely imprisoning Plaintiff. The BWC footage clearly demonstrates that Plaintiff was in no distress, was very much looking for a conflict with law enforcement and, for some odd reason, would not provide law enforcement with her information. Federal Defendant made no such "derisive" comments

regarding Plaintiff's conduct. To the contrary, Ranger Zohovetz's comment of Plaintiff's "Oscar act"[6] is quite tame and his conduct measured and professional.

For the above stated reasons, the Court should grant summary judgment in favor of the Federal Defendant Ranger Zohovetz on the third cause of action.

### ii. No Genuine Issue of Material Fact Exists in Plaintiff's IIED Claim – Count 4

Plaintiff's IIED allegations are derivative of her questionable false imprisonment claim, as it focuses on her alleged false imprisonment and threats of tasing, taking her to the ground, and prosecuting her. (ECF No. 6). As noted above, Ranger Zohovetz did not falsely imprison Plaintiff. Moreover, the only comment she alleges Ranger Zohovetz made that constituted IIED was his alleged comment that if she did not provide her address, she could be prosecuted. *Id.* at ¶ 38. The Court should conclude, as a matter of law, that Ranger Zohovetz's conduct did not rise to the level of extreme and outrageous conduct that no reasonable person could be expected to endure.

It is worth citing again important case law. Notably, in her Opposition, Plaintiff does not even attempt to address the cases cited by Federal Defendant.

*See, e.g., LaFua v. L.V. Metro. Police Dep't*, No. 2:22-cv-02133-GMN-BNW, 2023 U.S. Dist. LEXIS 93564, at *8 (D. Nev. May 26, 2023) (dismissing IIED claim under Rule 12(b)(6) where the plaintiff alleged that the officers told him he was not free to leave, and he was held for two hours in violation of his constitutional rights and Nevada law);

*See, e.g., Cerros v. N. Las Vegas Police Dep't*, No. 2:06-cv-00647-LRH-PAL, 2007 U.S. Dist. LEXIS 59494, at *17 (D. Nev. Aug. 10, 2007) (dismissing IIED claim under Rule 12(b)(6) where the plaintiff merely alleged that the defendant "acted in concert" with police officers, who handcuffed him to perform an allegedly illegal search).

As previously argued, there is no evidence in the BWC that Ranger Zohovetz caused any "emotional distress."

---

[6] Oscar referring to The Academy Awards, commonly known as the Oscars, are awards for artistic and technical merit in the film industry. *See* https://en.wikipedia.org/wiki/Academy_Awards.

14

*See, e.g., Stegmaier v. City of Reno ex rel*, No. 3:13-cv-00461-MMD-VPC, 2015 U.S. Distr. LEXIS 106631, at *23 (D. Nev. Aug. 13, 2015) (dismissing IIED claim because the "Court cannot conclude from the factual allegations, including the allegation that Plaintiff saw counselors and was prescribed medication, that Plaintiff's emotion[al] distress was extreme or severe").

Plaintiff has presented no evidence that Ranger Zohovetz acted in a way "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953, P.2d 24 (1998) (internal quotations omitted).

Lastly, it remains difficult to follow how Plaintiff quantifies how "most citizens" would find Ranger Zohovetz's conduct was "extreme and outrageous" in the BWC footage.

For the above stated reasons, the Court should grant summary judgment in favor of the Federal Defendant Ranger Zohovetz on the fourth cause of action.

## II.  Conclusion

For the foregoing reasons, Federal Defendant respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint, specifically requesting dismissal of the first and second cause of action for failure to state a claim upon which relief can be granted. Further, Federal Defendant requests dismissal on the third and fourth causes of action for lack of subject matter jurisdiction as Plaintiff failed to exhaust her administrative remedies. Alternatively, Federal Defendant respectfully request that Summary Judgment be found in his favor on the third and fourth causes of action.

Respectfully submitted this 24th day of January 2025.

SUE FAHAMI
Acting United States Attorney

 /s/  R. Thomas Colonna
R. THOMAS COLONNA
Assistant United States Attorney