UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HANNAH HALE HOEKSTRA,<br><br>                Plaintiff,<br>    v.<br><br>PERSHING COUNTY SHERIFF'S OFFICE, *et al.*<br><br>                Defendants. | Case No. 3:24-cv-00392-MMD-CSD<br><br>ORDER |

**I.   SUMMARY**

This action arises from an incident which occurred at the Burning Man event ("Burning Man") in the desert of northwestern Nevada in August 2022. (ECF No. 6 (First Amended Complaint or "FAC").) Plaintiff Hannah Hoekstra, who worked as a volunteer nurse for Burning Man's Emergency Services Department, brings federal and state claims based on allegations that she was illegally searched and detained by two Pershing County Sheriff's Office Deputies ("State Defendants"[1]) and Bureau of Land Management ("BLM") Ranger P. Zoltovetz ("Ranger Zoltovetz" or "Defendant")). Now, before the Court is Ranger Zoltovetz's motion to dismiss the claims against him or, in the alternative, for partial summary judgment. (ECF Nos. 23, 24 ("Motion").)[2] For the reasons discussed below, the Court grants Defendant's motion to dismiss in part and denies it in part. The Court denies Defendant's alternative request for summary judgment as moot.

///

///

---

[1] State Defendants include Pershing County and Pershing County Sheriff's Office Deputies Donna Robinson and Daniel Boyer.

[2] Plaintiff responded (ECF Nos. 37, 38), and Ranger Zoltovetz replied (ECF No. 41).

## II. BACKGROUND

The following facts are adapted from the FAC. Burning Man is a large-scale week-long cultural and art event held annually in the Black Rock Desert in northwestern Nevada. (ECF No. 6 at 3.) Between August 28, 2022 and September 5, 2022, approximately 75,000 people traveled to the temporarily erected "Black Rock City" to attend Burning Man. (*Id.*)

Burning Man has its own Emergency Services Department ("ESD"), which consists of volunteer licensed medical personnel "including, but not limited to, doctors, nurses, and medics,… firefighters, communications staff, licensed counselors, a dedicated Crisis Intervention Team ("CIT"), and logistics and planning support teams." (*Id.* at 4.) Plaintiff is a registered nurse who served as a volunteer member of ESD and the dedicated CIT in 2022. (*Id.*) State Defendants—Pershing County and Pershing County Sheriff's Office ("PCSO") Deputies Donna Robinson and Daniel Boyer—filed an answer to the FAC. (ECF No. 17.) Plaintiff also sues Ranger Zoltovetz," who she alleges was "at all times…. a ranger or law enforcement officer employed by the United States Department of the Interior, Bureau of Land Management and/or otherwise acting on behalf of the Pershing County Sheriff.[3]" (ECF No. 6 at 1 n. 1.) Hoekstra alleges the following.

On August 31, 2022, at approximately 6:00 p.m., while wearing a yellow shirt emblazoned "Emergency Services," Plaintiff "was paged to respond to a female Burning Man participant who requested assistance and emotional support regarding a discomforting encounter with a male Burning Man participant in the male participant's private tent." (*Id.* at 4.) As Hoekstra was speaking with the female participant in the private tent, Deputy Robinson—dressed in plain clothing and not in uniform—opened the tent

---

[3]Plaintiff alleges, in full, that, "Upon information and belief, Defendant P. Zoltovetz ("Ranger Zoltovetz"), at all times relevant hereto, is and was a resident of Pershing County and/or the State of Nevada and, at all times relevant hereto, was employed by or otherwise acting as an agent of the United States Department of the Interior, Bureau of Land Management (the "BLM"), as a law enforcement officer or agent and was acting under color of law and the authority of the federal government within the course and scope of said employment or agency by the BLM and/or otherwise also acting as a de facto agent for the Pershing County Sheriff." (ECF No. 6 at 2.)

uninvited and asked to come in. (*Id.* at 5.) Plaintiff asked Deputy Robinson to identify herself; Deputy Robinson identified herself as a PCSO Deputy but did not provide her full name. (*Id.*) In response to Deputy Robinson's identification, the female patient visibly indicated that she did not wish to speak with her. (*Id.*) Plaintiff "exited the private tent and offered to debrief and explain the events to Deputy Robinson." (*Id.*) Deputy Robinson continued to stand in the private tent's entryway near the female patient. Plaintiff told Deputy Robinson that she was facilitating trauma-informed care and would make all reasonable efforts to connect the female patient with Deputy Robinson if necessary. (*Id.*) Deputy Robinson replied that the female patient would have to "tell me that herself on [her body] camera." (*Id.*) Plaintiff offered to discuss the incident further, away from the female patient, but Deputy Robinson interjected that she "had been doing her own job for twenty-eight years" and threatened to arrest Hoekstra "for obstruction of [her] investigation." (*Id.* at 5-6.)

After Hoekstra requested to speak with her own supervisor, Deputy Robinson instructed Deputy Daniel Boyer to detain and handcuff Plaintiff. (*Id.*) Deputy Boyer handcuffed Plaintiff "with her arms behind her back" and informed her that she was under arrest for "obstruction of an investigation," further remonstrating her that he would "take [her] to the ground and tase [her] if she did not comply." (*Id.* at 6.) Deputies Robinson and Boyer both stated that Plaintiff was not under arrest but was being temporarily detained. (*Id.* at 6-7.) Deputy Boyer then pulled Plaintiff by her right arm approximately 50 feet to a locked Pershing County Sheriff's Department pickup truck. (*Id.*)

On the way to the truck, Ranger Zoltovetz began to pull Hoekstra by her left arm. (*Id.*) Deputy Boyer detained Plaintiff beside the truck, as he was unable to unlock it. Plaintiff alleges that as she was being pulled away, the female patient exited the tent and said, "What are you doing? That woman was helping me!" (*Id.*) She further alleges that Deputy Robinson responded, "My name is Donna, and I was raped too," to which the female patient began screaming to the gathered crowd, "I wasn't raped, I wasn't raped!"

(*Id.*) While speaking to a bystander using a camera phone to film the incident, Deputy Boyer stated, "I'll need [that video] for the prosecution [of Plaintiff]." (*Id.*)

While she was detained at the truck, Plaintiff asked Deputy Boyer if the handcuffs could be loosened because they were cutting into her wrists. (*Id.*) Deputy Boyer "ostensibly attempted to loosen the handcuffs" but, after Ranger Zoltovetz examined the handcuffs, they were retightened. (*Id.* at 7.) The handcuffs were later repositioned to handcuff Plaintiff's arms in front of her. Ranger Zoltovetz removed Plaintiff's belongings, which were buckled around her waist and warned her that if she did not provide her home address, she would face additional charges. (*Id.*) Ranger Zoltovetz also approached a bystander and "pressured him to discontinue filming," despite Plaintiff's request that he continue to film the arrest. (*Id.*)

While Plaintiff was detained, the ESD Administrative Chief arrived at the scene; Deputy Robinson told them that Hoekstra had been arrested for "obstruction of their investigation." (*Id.*) When asked why Sheriff's deputies were present when no request or call had been made, Deputy Robinson responded that she "did not know how she had been informed of the events and only wanted to give the female patient a victim's rights packet." (*Id.*) However, Deputy Robinson did not have a victim's rights packet. (*Id.*)

Hoekstra was detained for approximately 40 minutes before being released without criminal charges or citations. (*Id.* at 7-8.) She alleges that, as a result of the incident, she experienced pain in her right shoulder, arm, and wrist, along with bruising and numbness, for which she sought medical treatment. (*Id.* at 8.) She also alleges that she has suffered mental and emotional distress and was subsequently diagnosed with post-traumatic stress disorder, for which she has received treatment and therapy. (*Id.*)

Plaintiff brings four claims against all Defendants: (1) unreasonable search and seizure in violation of the Fourth Amendment to the U.S. Constitution; (2) unreasonable search and seizure in violation of the Nevada Constitution; (3) civil false imprisonment; and (4) intentional infliction of emotional distress. (*Id.* at 8-14.) She seeks general and specific damages, as well as punitive damages and fees and costs. (*Id.*)

## III. DISCUSSION

Ranger Zoltovetz now moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6), arguing that (1) Plaintiff's first claim fails because there is no *Bivens* remedy available; (2) Plaintiff's second claim fails because, as a federal agent, Zoltovetz cannot be held liable for a state constitutional violation; and (3) Plaintiff's third and fourth claims fail because she did not exhaust her administrative remedies under the Federal Tort Claims Act ("FTCA") before filing suit.[4] (ECF No. 23 at 1-2.) The Court addresses these arguments in turn.

### A. Extrinsic Sources

Defendant cites several sources extrinsic to the FAC throughout his Motion, both in requesting dismissal under Rule 12 and in requesting partial summary judgment as to claims 3 and 4. These sources include (1) a Memorandum of Understanding ("MOU") between BLM and PCSO[5]; (2) a BLM and PCSO law enforcement operations plan ("Plan")

---

[4] Because the Court grants dismissal of the third and fourth claims, it denies as moot Defendant's motion for summary judgment as to the merits of these—that there is no genuine dispute of material fact suggesting that Plaintiff could be entitled to relief for false imprisonment or intentional infliction of emotional distress.

[5] Defendant cites the MOU's provisions stating, among other things, that PCSO has authority to enforce state and local laws on BLM-administered public lands and that PCSO and BLM "mutually agree to coordinate, cooperate, and provide assistance during special events occurring on public lands within Pershing County." (ECF No. 26 at 5-6.) Defendant also states that the MOU was entered on April 27, 2017 and expired in April 2022—five years after its execution—and thus was not in effect at the time of the incident. (*Id.*)

for the 2022 Burning Man event[6]; (3) the Burning Man organization website[7]; and (4) body camera footage of the incident. (ECF No. 23.)

On a motion to dismiss, the Court may consider materials "incorporated by reference" into the complaint and may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). If the Court otherwise considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Here, none of the extrinsic sources cited by Zoltovetz appear to be expressly incorporated by reference into the FAC, and Defendant makes no argument as to why they are the proper subjects of judicial notice, even after Plaintiff raises the issue in her opposition. Thus, for purposes of Defendant's Rule 12 dismissal arguments, the Court finds it inappropriate to consider these extrinsic documents and videos.

### B. Claim 1 – *Bivens* Claim for Unreasonable Search and Seizure in Violation of the Fourth Amendment

Defendant first argues that he cannot be held liable for unreasonable search and seizure in violation of the Fourth Amendment, as alleged in the first claim, because no implied cause of action exists under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ECF No. 23 at 9-15.)  In particular, Defendant asserts that *Bivens* does not extend to claims against a BLM officer "who assisted local deputies enforcing state laws on federal property." (*Id.* at 13.) For the reasons explained below, the Court agrees

---

[6]Defendant cites to the section of the Plan providing that "[PCSO] and BLM law enforcement will be operating under an integrated command structure during the 2022 [Burning Man] event," and that, "During law enforcement incidents at the event, the agency with primary jurisdiction over the incident will assume the role of the lead agency" with the other agency providing support. (ECF No. 23 at 6.) Defendant further points to the Plan's provisions explaining that PCSO is responsible for enforcing Nevada state laws on BLM lands, while BLM is responsible for enforcing federal laws. (*Id.*) Defendant goes on to assert that Ranger Zoltovetz was part of an integrated patrol unit consisting of one PCSO deputy and one BLM ranger. (*Id.*)

[7]Defendant cites as "undisputed" the Burning Man website's statement that law enforcement at Burning Man "consists of [Bureau of Land Management ("BLM")] Rangers, who enforce federal laws, and the Pershing County Sheriff's Office, which enforces state and local laws." (ECF No. 23 at 3-4.)

with Zoltovetz that Plaintiff fails to state a *Bivens* claim given the specific context of the incident alleged.[8]

As a preliminary matter, Plaintiff does not clearly delineate between State Defendants and Zoltovetz—a federal agency employee—in asserting her constitutional claims, alleging only that *all* Defendants acted "under color of law and within the course and scope of their individual employment by *or agency of* the Pershing County Sheriff *and* the BLM" to violate her Fourth Amendment rights. (ECF No. 6 at 9 (emphasis added).) Plaintiff also alleges in broad terms at the outset of the FAC that the Court has authority over this action under both *Bivens* and Section 1983 (*id.* at 3) but does not reference either basis directly in support of the first claim. This arguable ambiguity on the face of the FAC regarding the source of Zoltovetz's authority during the incident is significant: it is well established that, in general, only individual officers acting under color of federal law are liable under *Bivens*, while those acting under color of state law may instead be liable under 42 U.S.C. § 1983. *See, e.g.*, *Butz v. Economou*, 438 U.S. 478 (1978). In rare circumstances, however, courts may find that a *federal* officer has operated under authority of *state* law, and thus is liable under Section 1983 rather than under *Bivens*. *See, e.g.*, *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992) ("Although federal officials acting under federal authority are generally not considered to be state actors, they may be liable under § 1983 if they are found to have conspired with or acted in concert with state officials to some substantial degree"); *see also Lindke v. Freed*, 601 U.S. 187, 199-200 (2024) (quoting *United States v. Classic*, 313 U.S.,326 (1941)) ("[T]he '[m]isuse of power, possessed by virtue of state law,' constitutes state action."); *see also Farag v. United States*, 587 F. Supp. 2d 436, 450 (E.D.N.Y. 2008) (finding that "the Court may—and does—construe plaintiffs' § 1983 claims as *Bivens* claims" where a city police officer was deputized as a federal agent).

///

---

[8]The Court accordingly does not address Defendant's argument that he is entitled to qualified immunity even if a *Bivens* claim is allowed. (ECF No. 23 at 13.)

7

Defendant argues that Plaintiff has failed to state a *Bivens* claim, without considering that the FAC may also be read as an attempt to assert an alternative Section 1983 claim against him. Plaintiff does not appear to contest Defendant's reading of the first claim as limited to *Bivens* liability as it pertains to Zoltovetz, despite arguing at length elsewhere in her opposition that material issues of fact remain regarding whether Zoltovetz acted under color of state law and despite explicitly requesting the Court to treat Zoltovetz as an agent of Pershing County at the pleading stage for her state law claims. The Court will thus assume, for purposes of evaluating the FAC, that Plaintiff has not attempted to raise a Section 1983 claim against Zoltovetz in the first claim for relief.

In *Bivens*, the Supreme Court recognized an implied damages cause of action for plaintiffs injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures, despite the absence of any statute conferring this right. *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (finding that a complaint alleging that Federal Bureau of Narcotics agents, acting under color of federal authority, conducted a warrantless entry and search of petitioner's apartment without probable cause, stated federal cause of action under the Fourth Amendment for damages); *see also Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017); *Carlson v. Green*, 446 U.S. 14, 18 (1980); *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000).

"The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Following *Bivens*, the Supreme Court has recognized parallel non-statutory damages remedies in only limited additional circumstances. *See Wilkie v. Robbins*, 551 U.S. 537, 549-50 (2007) (citing *Davis v. Passman*, 442 U.S. 228 (1979) (permitting a *Bivens* claim where a congressional staff member alleged wrongful termination based on sex); *Carlson v. Green*, 446 U.S. 14 (1980) (permitting a *Bivens* claim against a prison official for failure to provide proper medical treatment in violation of the Eighth Amendment)); *see also Malesko*, 534 U.S. at 70. The Supreme Court "ha[s] consistently refused to extend *Bivens*

liability to any new context or new category of defendants" without sufficient reason. *Corr. Servs. Corp.*, 534 U.S. at 68. A *Bivens* context is new if it is "different in a meaningful way from previous *Bivens* cases." *Abbasi*, 582 U.S. at 139.

Courts apply a two-step process when considering whether a *Bivens* claim exists in a new arena: "First we must determine[ ] whether there is any alternative, existing process for protecting the plaintiffs' interests . . . If there is such an alternative remedy, our inquiry stops. If there is not, we proceed to the next step and ask[ ] whether there nevertheless are factors counseling hesitation before devising such an implied right of action." *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (internal citations and quotation marks omitted); *Mejia v. Miller*, 61 F.4th 663, 667 (9th Cir. 2023). In *Egbert v. Boule*, the Supreme Court clarified that the relevant question under the second step is whether "special factors indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." 596 U.S. 482, 483 (2022) (declining to extend *Bivens* recovery to a Fourth Amendment excessive force claim or First Amendment retaliation claim against a border patrol officer); *see also Mejia*, 61 F.4th at 667.

Defendant argues that this case constitutes a "new context" and that the *Bivens* remedy should not be extended. *See Abbasi*, 582 U.S. at 139-40 (describing non-exhaustive circumstances, which may make a context "new" for purposes of applying *Bivens*, including but not limited to "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, [or] the statutory or other legal mandate under which the officer was operating"). The Court ultimately agrees that Plaintiff has not shown that *Bivens* extends to the circumstances alleged here.

It is true that, like in *Bivens*, itself, Plaintiff alleges that Ranger Zoltovetz—an individual officer operating under color of federal law—has violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403

9

U.S. at 392 ("[The] Fourth Amendment operates as a limitation upon the exercise of federal power [… and] [i]t guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority."); *see also Abbasi*, 582 U.S. at 121 (holding that the core applications of *Bivens* are "well-settled law"). But, the Court cannot avoid the meaningful differences here in the "statutory or [] legal mandate under which [Zoltovetz] was operating," especially given the Supreme Court's recent aversion to even minor extensions of *Bivens*. *See Abbasi*, 582 U.S. at 139-40; *see also Egbert*, 596 U.S. at 483. In this case, Ranger Zoltovetz's mandate as a BLM officer working jointly with state law enforcement in the unique context of the Burning Man event on public lands is different from the mandate of a federal narcotics officer conducting a search of a private home. *See Mejia*, 61 F.4th at 668-69 (finding the plaintiff did "not point to any reason to believe . . . that BLM has the same mandate as agencies enforcing federal anti-narcotics law [as in *Bivens*]").

Indeed, both the Supreme Court and the Ninth Circuit have explicitly declined to recognize a *Bivens* remedy in the context of agents of the Department of the Interior, including BLM officers. *See Wilkie*, 551 U.S. 537 (declining to recognize a *Bivens* remedy where a landowner brought Fifth Amendment due process claims against BLM employees, reasoning that allowing *Bivens* claims to proceed would inappropriately invite challenges to broad spheres of legitimate government action); *see also Mejia*, 61 F.4th at 668 (distinguishing Fourth Amendment excessive force claims involving a high-speed chase by BLM officers resulting in injury from *Bivens* claims on the basis that "[t]he entire incident occurred on public lands managed by the BLM and the National Park Service…where Mejia had no expectation of privacy"). In *Mejia*, the Ninth Circuit noted that special factors counseled against implying a cause of action because, "[f]or example, a Fourth Amendment excessive force claims against BLM officers would have systemwide consequences for BLM's mandate to maintain order on federal lands." *Id.* at

668-69 (internal citations omitted).[9] The court also found that Mejia had alternate remedies, some of which are also available to Plaintiff here. *Id.* (citing *Report Misconduct*, U.S. Dep't of the Interior, Bureau of Land Mgmt., https://www.blm.gov/programs/public-safety-and-fire/law-enforcement/report-misconduct (last visited Feb. 23, 2023); 43 C.F.R. § 20.103 (2025) (requiring BLM employees to "report directly or through appropriate channels to the Office of Inspector General or other appropriate authority matters coming to their attention which do or may involve violations of law or regulation by employees")).

In short, assuming that Ranger Zoltovetz was acting under the color of federal law and given the narrowness of the *Bivens* remedy and the caution required of the Court in extending it, the Court finds Plaintiff has not stated a valid *Bivens* claim. The Court thus dismisses the first claim for relief against Zoltovetz.

### C.     Claim 2 – Unreasonable Search and Seizure Under the Nevada Constitution

Defendant next argues that federal employees acting under the color of federal law are insulated from state constitutional claims, and because "Ranger Zohovetz is a federal employee who was acting under the color of federal law," he is "therefore [] insulated from state constitutional claims based on the legal principles of sovereign immunity and supremacy." (ECF No. 41 at 7.) Here, Plaintiff argues that she has plausibly alleged that Defendant was, in fact, acting under color of state law as a "*de facto* agent for the Pershing County Sheriff." (ECF No. 6 at 2; ECF No. 37 at 9-11.) She argues that whether or not Defendant was acting under color of federal or state law "is a factual question, yet to be determined," rendering a Rule 12 motion premature. (ECF No. 37 at 9.)

The FAC, itself, can be read to allege that Zoltovetz was acting under color of state "and/or" federal law. (ECF No. 6 at 1-2, 10.) Defendant points to the Plan and MOU to

---

[9]However, it is also true that an individual may have greater or distinct Fourth Amendment protections in a location where they have set up camp for an entire week in temporary "Black Rock City", as compared to other types of public spaces. In this sense, the Court recognizes that the facts alleged here may bear a closer resemblance to *Bivens* than to those at issue in *Mejia*.

1 argue that, at Burning Man, PCSO is responsible for enforcing state and local laws, while
2 BLM enforces federal laws. Based on these documents, Defendant concludes that
3 Ranger Zoltovetz thus necessarily acted as a federal employee under color of federal law.
4 But, even if the Court were to consider these extrinsic documents, Defendant's argument
5 is circular. The fact that a BLM officer is responsible for enforcing federal laws is not
6 illuminating as to whether they were in fact doing so. Moreover, Defendant also takes the
7 contradictory position that he was merely assisting the State Defendants in their state law
8 enforcement duties. Defendant also cites to case law which is consistent with the
9 proposition that a federal actor can be liable for state constitutional violations to the extent
10 they were acting under color of state law. *See Durham v. Rapp*, 64 F. Supp. 3d 740, 746
11 (D. Md. 2014). And Plaintiff alleges that she was detained for "obstruction of [PCSO's]
12 investigation," which makes it more plausible that Zoltovetz could have acted under state
13 authority.

14 The Court thus agrees with Plaintiff that, construing the allegations in the FAC in
15 the light most favorable to her and drawing all reasonable inferences in her favor, she has
16 sufficiently alleged that Zoltovetz was acting under the color of state law by substantially
17 collaborating with Pershing County officials to effectuate their state law responsibilities.[10]
18 Accordingly, the Court denies the Motion as to the second claim for relief.

### D. Claims 3 and 4 – False Imprisonment and Intentional Infliction of Emotional Distress

21 Defendant next argues that the FTCA applies to Plaintiff's third and fourth causes
22 of action for false imprisonment and intentional infliction of emotional distress, once again
23 insisting that Ranger Zoltovetz was acting in the scope of his federal employment during
24 the incident. (ECF No. 24 at 19-20.) Zoltovetz asserts that the Court lacks subject matter
25 jurisdiction because Plaintiff fails to plead that she exhausted her administrative
26 remedies, as required under the FTCA. (*Id.*) Notably, in her opposition, Plaintiff does not

---

[10]"[W]hether particular conduct constitutes action taken under the color of state law[] must focus on the actual nature and character of that action." *Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997).

dispute that no administrative claim was filed under the FTCA. (ECF No. 38 at 2.) She argues, however, that the FTCA's administrative exhaustion requirement does not apply here because she has alleged that Defendant was acting under color of state law, by the agency of Pershing County, or, at a minimum, that "genuine and material questions of fact" exist as to whether Zoltovetz was acting within the scope of his federal employment. (*Id.* at 2, 11). Plaintiff thus appears to concede that she brings claims 3 and 4 against Ranger Zoltovetz only to the extent his actions were taken under color of state law and outside the scope of his federal employment. Narrowing the claims accordingly, the Court finds that the FTCA does not apply; however, the Court also finds that Plaintiff fails to state sufficient facts to support these claims under state law.

The FTCA, 28 U.S.C. §§ 2671-2680, waives sovereign immunity for certain tort claims asserted against the United States. Under the FTCA, the United States is liable for personal injuries caused by the negligent or wrongful acts or omissions of employees of the United States, acting within the scope of their employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1); *see also Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) ("Even if the conduct entails uniquely governmental functions, the court is to examine the liability of a private person in analogous situations."). The FTCA "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." *Id.* § 2679(b)(1). Although intentional tort claims are generally subject to an exception from the FTCA's general waiver of sovereign immunity, the FTCA specifically extends to permit claims "arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" when such acts are committed by "investigative or federal law enforcement officers" acting "within the scope of their employment." *Id.* § 2680; *see also Millbrook v. United States*, 569 U.S. 50, 52-53 (2013) (citations omitted) (defining "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to

13

execute searches, to seize evidence, or to make arrests for violations of Federal law"). The Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1733, *et seq.*, authorizes the Secretary of the Interior to contract with local law enforcement officials to "carry out his law enforcement responsibilities with respect to the public lands and their resources," 43 U.S.C. § 1733(c)(1)-(2), and to "cooperate with the regulatory and law enforcement officials of any State or political subdivision thereof in the enforcement of the laws or ordinances of such State or subdivision," *id.* § 1733(d).

Defendant argues that he was acting within the scope of his employment by the BLM when he "assisted PCSO deputies who were enforcing state law on federal property, as permitted under FLPMA and the Plan." (ECF No. 23 at 20.) He further argues that his actions were not "a truly independent venture" outside the scope of his role as a BLM employee. The Court relies on "principles of respondeat superior of the state in which the alleged tort occurred," here in Nevada, to determine whether an employee acted within the scope of their employment. *McLachlan v. Bell,* 261 F.3d 908, 911 (9th Cir. 2001); *see also Grantham v. Durant*, 471 F. Supp. 2d 1069, 1074 (D. Nev. 2006) ("The Court reviews FTCA scope of employment determinations according to the principles of respondeat superior of the state in which the alleged tort occurred… Under Nevada law, whether an employee was acting within the scope of his or her employment for the purposes of respondeat superior liability generally is a question of fact."); NRS § 41.745(1) (providing that an employer is not liable for an employee's intentional actions if the individual's actions are "a truly independent venture" and "not committed in the course of the very task assigned" and were "not reasonably foreseeable").

Plaintiff counters that factual disputes exist as to whether Defendant was acting in his capacity as a federal or state employee, acknowledging that, with regard to claims 3 and 4, she is "asserting, …state tort claims against Federal Defendant (and not the United States)" where Defendants were acting under the "agency of the Pershing County Sheriff and the BLM." (ECF No. 37 at 12.) She appears to concede that, to the extent Defendant *was* in fact acting in his federal capacity, the provision of the FTCA that waives sovereign

14

immunity for intentional tort actions against federal law enforcement officers does not apply: "Federal Defendant accurately notes that, under relevant law, BLM agents, like himself, are not 'investigative or law enforcement officers' as they are not empowered 'to execute searches, to seize evidence, or to make arrests for violations of Federal law." (*Id.* at 11-12.) Thus, to the extent Plaintiff's false imprisonment and intentional infliction of emotional distress claims are based on Zoltovetz's actions as a federal employee, the FTCA's requirement for administrative exhaustion applies, and she is precluded from pursuing these claims because they have not been exhausted.

However, to the extent Plaintiff's claims are cabined to Zoltovetz's actions outside of his federal role, Plaintiff has not alleged how those actions—where Zoltovetz, though employed by the BLM, was purportedly acting as an agent of Pershing County Sheriff's Office—fell outside the scope of his role with the BLM in this particular context. As noted above, Plaintiff appears to concede that she asserts the tort claims against Ranger Zoltovetz only to the extent his actions were taken under color of state law. Indeed, as Defendant points out, the FAC alleges that each Defendant "respectively act[ed] under color of law and within the course and scope of their individual employment by or agency of the Pershing County Sheriff and the BLMA."  (ECF No. 6 at 12 (¶67), 13 (¶72.) Accordingly, the Court will dismiss claims 3 and 4 but will grant Plaintiff leave to amend to the extent Plaintiff can allege facts to state a plausible claim for relief based on Zoltovetz's conduct outside the scope of his federal employment.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 23) is granted in part and denied in part. The Motion is denied as to claim 2 and granted as to claims 1, 3 and 4. The Court dismisses claim 1 with prejudice. The Court dismisses claims 3 and 4

without prejudice to Plaintiff seeking to exhaust her administrative remedies under the FTCA but grants Plaintiff leave to amend to the extent she asserts these tort claims against Defendant outside the scope of his federal employment. Should Plaintiff choose to amend these claims, she must do so within 15 days.

It is further ordered that Defendants' motion for summary judgment (ECF No. 24) is denied as moot.

DATED THIS 3rd Day of September 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE