Katherine F. Parks, Esq.
Nevada Bar No. 6227
Thorndal Armstrong, PC
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Tel: (775) 786-2882
kfp@thorndal.com
Attorney for Defendants
PERSHING COUNTY, DONNA ROBINSON
and DANIEL E. BOYER

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HANNAH HALE HOEKSTRA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PERSHING COUNTY; DONNA ROBINSON, an individual; DANIEL E. BOYER, an individual; and P. ZOHOVETZ, an individual; collectively,<br><br>Defendants. | Case No. 3:24-cv-00392-MMD-CSD<br><br>**PERSHING COUNTY, DONNA ROBINSON, AND DANIEL BOYER'S MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants, PERSHING COUNTY, DONNA ROBINSON and DANIEL E. BOYER, by and through their attorneys Thorndal Armstrong, PC, and pursuant to FRCP 56, hereby move the Court for its order granting summary judgment in their favor as there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law.

This motion is made and based upon the memorandum of points and authorities filed herewith, the exhibits attached hereto, and all pleadings and papers on file herein.

DATED this 14th day of October, 2026.

THORNDAL ARMSTRONG, PC

By: *\/s/ Katherine Parks*
KATHERINE F. PARKS, ESQ.
Attorney for Defendants
PERSHING COUNTY, DONNA ROBINSON and DANIEL E. BOYER

Katherine F. Parks, Esq.
Nevada Bar No. 6227
Thorndal Armstrong, PC
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Tel: (775) 786-2882
kfp@thorndal.com
Attorney for Defendants
PERSHING COUNTY, DONNA ROBINSON
and DANIEL E. BOYER

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HANNAH HALE HOEKSTRA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PERSHING COUNTY; DONNA ROBINSON, an individual; DANIEL E. BOYER, an individual; and P. ZOHOVETZ, an individual; collectively,<br><br>Defendants. | Case No. 3:24-cv-00392-MMD-CSD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PERSHING COUNTY, DONNA ROBINSON, AND DANIEL BOYER'S MOTION FOR SUMMARY JUDGMENT** |

**I**

**INTRODUCTION**

This case arises out of an incident that occurred on August 31, 2022, at the Burning Man Festival held annually on federal land located in Pershing County, Nevada. In 2022, approximately 75,000 individuals attended the event from August 28, 2022, to September 5, 2022. *See,* Second Amended Complaint, ¶12 [ECF 6]. In connection with the event, the participants erect a temporary city called Black Rock City in the Black Rock desert located approximately 100 miles north-northeast of Reno. *Id.* Donna Robinson and Daniel Boyer were performing law enforcement duties at the festival for the Pershing County Sheriff's Office. Hannah Hoekstra is a registered nurse and volunteer at the event with what is called the "Burning Man Emergency Services Department ("ESD")." *Id.* at ¶14. On August 31, 2022, Hoekstra was

detained in handcuffs for approximately fourteen minutes based on her actions in hindering and delaying Deputy Robinson's investigation of a report of sexual assault in violation of Nevada Revised Statute 197.190. Hoekstra's Second Amended Complaint contains the following four causes of action: (1) a claim brought under 42 U.S.C. §1983 for alleged wrongful seizure based on the Fourth Amendment of the United States Constitution; (2) a claim brought under Article I, §18 of the Nevada Constitution for alleged wrongful seizure; (3) a state tort claim for false imprisonment; and (4) a state tort claim for intentional infliction of emotional distress.[1]

The material facts in this case are not in dispute, as all of the events in question were recorded on body worn camera video of Deputy Robinson and Deputy Boyer. The relevant portion of the body worn camera video of Donna Robinson is submitted as Exhibit 1 to the instant motion and the body worn camera video of Daniel Boyer is submitted as Exhibit 2 to the instant motion.[2] Based upon the undisputed evidence in the case, the Defendants respectfully submit that they are entitled to summary judgment under FRCP 56 on substantive grounds, as well as under the doctrines of qualified immunity and discretionary act immunity.

## II

## UNDERLYING FACTS

On August 31, 2022, at approximately 8:25 p.m., Deputy Robinson was dispatched to an area of the Black Rock City called "Zendo" in response to a call regarding two potential sexual assaults. *See,* Exhibit 3, Pershing County Sheriff's Office Incident Report; *see also,* Exhibit 4, deposition of Daniel Boyer, pp. 31-32, 39; *see also,* Exhibit 5, deposition of Donna Robinson, pp. 72-73, 110. Upon her arrival at Zendo, Deputy Robinson met with Deputy Boyer, who was first on scene, at which time he informed her that Burning Man staff were preventing him from making contact with the victims. *See,* Exhibit 3, p. 4; *see also,* Exhibit 1, body worn camera video of Donna Robinson. As she approached the front of Zendo, Deputy Robinson made

---

[1] The Second Amended Complaint does not contain a *Monell* claim against Pershing County nor an excessive force claim under either federal or state law.

[2] The identity of the woman who was the subject of Deputy Robinson's investigation has been redacted from Exhibit 1 and personal information, including Ms. Hoekstra's date of birth, social security number and address, as well as the date of birth of a witness have been redacted from Exhibit 2.

contact with several Burning Man volunteers who informed her that there were two sexual assault "CIT" Teams (Critical Intervention Teams) who were with the victims inside two different tents.[3] *See,* Exhibit 3, p. 4; *see also,* Exhibit 1. Hoekstra was a volunteer on one of the CIT teams at the time of the incident at issue. *See,* Second Amended Complaint, ¶16 [ECF 6]. Deputy Robinson informed one of the volunteers that she needed to speak with the victims to determine whether they wished to make a report. *See,* Exhibit 3, p. 4*; see also,* Exhibit 1. Deputy Robinson then walked towards the smaller of the two tents with one of the Burning Man volunteers who entered the tent in which one of the victims was located. *Id.* The volunteer exited the tent and informed Deputy Robinson that the CITs wanted to finish their interview of the victim. *Id.* Again, these "CITs" were volunteers who had no authority over criminal matters and Hoekstra acknowledged during her deposition that, as a Burning Man volunteer, she was obligated to contact law enforcement regarding potential crimes of which she became aware. *See,* Exhibit 6, deposition of Hannah Hoekstra, p. 62. Deputy Robinson then inquired about the location of the other victim. *See,* Exhibit 3, p. 4 and Exhibit 1. Deputy Robinson was ultimately informed that the other of the two victims was in another tent sleeping and that a volunteer was attempting to wake her up. *Id.* After acquiescing for another few minutes, Deputy Robinson stuck her head inside the first tent and introduced herself as Donna and, in response to a question by Hoekstra, as a member of the Pershing County Sheriff's Office. *Id.* Deputy Robinson attempted to make contact with the victim and, at that point, asked if she could enter the tent to speak with her, to which Hoekstra responded that they were going to "pass on that." *Id.; see also,* Exhibit 1. Deputy Robinson informed Hoekstra that she needed to hear from the victim that she did not wish to speak with her to which Hoekstra responded that she had been asked to speak on behalf of the victim. *Id.* Hoekstra was instructed by Deputy Robinson to step out of the tent. *Id.* While Hoekstra complied with Deputy Robinson's instructions to exit the tent, she argued with Deputy Robinson, rather than step aside so that Deputy Robinson could contact the victim, stated her belief that her supervisor needed to be involved at the scene, and attempted to lead Deputy Robinson away from the entrance to the tent. *See,* Exhibit 1. Deputy Robinson

---

[3] The "CIT" teams are also made up of volunteers associated with Burning Man. They have no law enforcement jurisdiction or association.

attempted to keep her voice down so as not to upset the victim during this time period while Hoekstra kept insisting that Deputy Robinson step away from the tent and away from the victim. *Id.* At that point, Deputy Robinson motioned for Deputy Boyer, who was standing outside of Zendo and was acting as her cover officer, to come to her location. *Id.* Deputy Boyer entered Zendo, placed Hoekstra in handcuffs, and walked her approximately 50 feet to a location where several law enforcement vehicles were parked. *See,* Exhibit 2, body worn camera video of Daniel Boyer; *see also,* Exhibit 4, p. 121. As Deputy Boyer was attempting to place Hoekstra in handcuffs, she pulled away from him requiring Deputy Robinson to briefly assist with the application of same. *See,* Exhibit 5, p. 169. Deputy Robinson then spoke to the victim who informed her that she did not wish to make a police report at that time. *See,* Exhibit 1. However, the victim took Deputy Robinson's information and told her she might wish to make a report later. *Id.*

Deputy Boyer was joined by Paul Zohovetz, a ranger with the Bureau of Land Management, as he was walking Hoekstra away from the tent in which the victim was located. *See,* Exhibit 2. While standing near the police vehicles, Deputy Boyer twice loosened Hoekstra's handcuffs after she complained that they were too tight and the handcuffs were repositioned to be secured in front of her body for comfort. *Id.* Deputy Boyer obtained contact information from Hoekstra and, after slightly less than fourteen minutes, he removed the handcuffs and returned Hoekstra to the interior of the Zendo area. *Id.* Hoekstra was not ultimately charged with, or prosecuted for, a violation of NRS 197.190. *See,* Exhibit 6, p. 83.

Although it is irrelevant to the legal issues presented in this case, and those relevant to the Defendants' motion, the incident itself resulted in more than an hours' worth of arguments raised by Burning Man volunteers about the rights of sexual assault victims to refuse to speak with law enforcement altogether.[4] It was clearly Hoekstra's position at the time of the events in question

---

[4]Because the issues in the case must be analyzed based on the totality of the circumstances presented to Deputy Robinson and Deputy Boyer at the time Hoekstra was detained, the body worn camera video of Deputy Robinson submitted by the Defendants herewith has been shortened and does not include more than thirty minutes worth of footage of the back and forth between Burning Man volunteers and Deputy Robinson on the subject which occurred after Hoekstra was walked away from the area and after she was released. *See, Dist. of Columbia v.*

that she had every right to speak for the victim, rather than to allow Deputy Robinson access to her, and numerous of the volunteers made statements to the effect that there was "no crime" until such a victim said there was a crime. These volunteers referenced laws such as the Violence Against Women's Act of 1994 and Nevada's Sexual Assault Survivors' Bill of Rights in support of this position and debated the applicability of these laws to the circumstances at issue with Donna Robinson long after the detention of Hoekstra had ended. While the Defendants did not, and do not, agree with the Burning Man volunteers' legal interpretation, these laws do not shield Hoekstra from her actions in hindering Deputy Robinson's investigation. During her deposition, Hoekstra testified as to her understanding that she is a "mandatory reporter" of criminal conduct in her capacity as a volunteer at Burning Man. *See,* Exhibit 6, p. 49. Although a Burning Man volunteer (Anna Duffy, described by Hoekstra during her depositions as the person in charge of the CIT Teams) acknowledged after the incident at there was a sexual assault victim in Zendo at the time of the events in question, Hoekstra testified as to her belief that there was no crime which justified law enforcement response. *See,* Exhibit 4, pp. 64-65; *see also,* Exhibit 6, pp. 57 and 73. According to Hoekstra, the victim relayed to her that she was "upset and dehydrated" and that she had encountered obstacles in finding her friends after she arrived at Burning Man. *Id.* at p. 57. She further informed Hoekstra that she met a young man at a camp who she "liked and was attracted to and with whom she agreed to "consensual cuddling in his tent." *Id.* The victim then informed Hoekstra that the man touched the inside of her knee or thigh which Hoekstra then qualified as "not even [her] upper thigh." *Id.* The victim asked the man not to touch her thigh but, as time passed, he did so again which was beyond her "consent." *Id.* at p. 58. The victim would not volunteer additional details to Hoekstra but was offered "Crisis Intervention Team" support. *Id.* Hoekstra took it upon herself to decide that the information provided to her by the victim was not of the type she was mandated to report. *Id.* at p. 59. In

---

*Wesby,* 583 U.S. 48, 57, 138 S. Ct. 577 (2018)(to determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest and decide whether the historical facts, viewed from the standpoint of an objectively reasonable officer, amount to probable cause). Hoekstra does not appear in any of this additional body camera video footage not included as part of Exhibit 1.

fact, Hoekstra took it upon herself to decide that there was no "crime or potential crime" that had been reported to her in terms of sexual assault and this victim. *Id.* at p. 62.

Lost in Hoekstra's argument, as well as the legal debates pressed by Burning Man volunteers on August 31, 2022, is the danger created to other festival-goers of possible interaction with a perpetrator of a sexual crime.[5] The Burning Man volunteers had no authority to investigate person-on-person crimes at the event, as such was and is exclusively the jurisdiction of the Pershing County Sheriff's Office.[6] *See,* Exhibit 4, pp. 44-45. Deputy Boyer and Deputy Robinson were dispatched to the Zendo area on reports of two potential sexual assaults and their duty to have investigated potential felonies cannot be brushed away so lightly.[7] While Hoekstra may have felt justified in her actions in terms of her belief that she had an absolute right to speak on behalf of the victim, her belief in this regard does not, and did not, justify her actions in delaying Deputy Robinson in her investigation of an alleged sexual assault. As can be seen on the body worn camera video submitted as Exhibit 1, Hoekstra made efforts to delay Donna Robinson from speaking with the victim. She did so by initially stating to Deputy Robinson that "they were passing" altogether on having Deputy Robinson speak with the victim. She then delayed the investigation by raising issues with Deputy Robinson's right to speak with the victim, including by stating that she needed to bring her supervisor into the situation and by

---

[5] Hoekstra herself testified that she participated in the investigation of an attempted murder of a woman at Burning Man in 2016 who was strangled by her assailant and that she was told by other Burning Man volunteers that there were known perpetrators of sexual assault who attended Burning Man "year after year." *See,* Exhibit 6, pp. 33-34, 89-90. The dangers to other festival-goers to potential exposure to a perpetrator of sexual assault constitutes a significant law enforcement interest and the Defendants here were duty bound to investigate the circumstances.

[6] At the 10:09 point of Deputy Robinson's body camera video, she expresses to one of the Burning Man volunteers the importance of trying to obtain sufficient information to possibly stop the perpetrator from engaging in wrongful conduct towards another person. *See,* Exhibit 1.

[7] During depositions in this case, there was much discussion about how, precisely, Robinson and Boyer were dispatched to Zendo on August 31, 2022, and whether their presence was requested by Burning Man volunteers. Any debate on this particular issue is irrelevant considering that ESD volunteer Anna Duffy acknowledged after the incident that there was a potential sexual assault victim at Zendo being spoken to by CIT team members when Deputy Robinson and Deputy Boyer arrived. *See,* Exhibit 4, pp. 64-65. There is simply no relevance at all to the manner in which Robinson and Boyer were dispatched to the Zendo area on the night in question.

attempting to draw Deputy Robinson away from the tent in which the victim was located. Again, while Hoekstra may have entertained the belief that she was justified in doing so, and as is discussed in detail below, Deputy Robinson and Deputy Boyer had probable cause sufficient to support the brief detention of Hoekstra for a violation of NRS 197.190.

**III**

**LEGAL ANALYSIS**

**A. STANDARD OF REVIEW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is always proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251, 106 S. Ct. 2505 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, *supra.* at 248. Further, the opposing party cannot rest on mere allegations of fact without "any significant probative evidence tending to support the complaint." *Id.* at 249. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in favor of that party. *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S., 253, 288-289, 88 S. Ct. 1575, 1592 (1968).

Plaintiffs' federal claim is brought under 42 U.S.C. §1983 which creates no substantive rights but which provides a remedy for violation of rights protected by the United States

Constitution or federal statutes by persons acting under color of state law. *See, Smith v. Barton,* 914 F.3d 1330, 1333 (9th Cir. 1990). To establish a violation of §1983, a plaintiff must demonstrate the following: (1) that the defendants have acted under color of state law and (2) that the defendants have deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *See, Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).

**B. ROBINSON AND BOYER ARE ENTITLED TO SUMMARY JUDGMENT OF HOEKSTRA'S FOURTH AMENDMENT CLAIM.**

"The Fourth Amendment to the United States Constitution protects individuals from 'unreasonable searches and seizures' by the government." *United States v. In*, 124 F.4th 790, 794 (9th Cir. 2024). "To state a §1983 claim for false arrest and detention, a plaintiff must allege true facts to show that there was no probable cause to arrest him." *Sykes v. City of Henderson,* 738 F.Supp.3d 1344, 1349 (D. Nev. 2024). Probable cause to arrest exists when the arresting officer has facts within his or her knowledge based on trustworthy information which would warrant a prudent officer to believe that the offense has been committed and that the suspect committed it. *Id.* "Probable cause requires only a 'fair probability' that a crime occurred." *Id.* at 1350. "Probable cause is not a high bar." *District of Columbia v. Wesby,* 583 U.S. 48, 57, 138 S. Ct. 577 (2018). Because all of the events leading to the detention of Hoekstra were recorded on body worn camera video, the material facts in the case are undisputed and the existence of probable cause is a question of law. *See, Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012).

NRS 197.190 makes it unlawful to "willfully hinder, delay or obstruct any officer in the discharge of official powers or duties." *See,* NRS 197.190; *see also, Stubbs v. Las Vegas Metro. Police Dep't.,* 792 Fed. Appx. 441, 442 (9th Cir. 2019). An act, for purposes of the statute, is done "willfully" when it is done "intentionally, deliberately or designedly, as distinguished from an act done accidentally, inadvertently, or innocently." *Id.* Law enforcement officers may arrest a suspect without a warrant for a public offense committed or attempted in the officers' presence. *See,* NRS 171.124(1)(a).

In this case, the facts demonstrate that probable cause existed for the brief detention of Hoekstra based on her actions in hindering and delaying Deputy Robinson in her efforts to investigate the sexual assault calls to which she had been dispatched. While Hoekstra asserted at the time of the incident that she was entitled to speak on behalf of the victim, and would justify her actions in instructing Deputy Robinson that the victim was going to "pass" in terms of speaking with her, as well as in her actions in initially placing herself between Deputy Robinson and the entrance of the tent and in arguing with her in an effort to get Deputy Robinson to walk away from the tent, she clearly delayed Deputy Robinson in her investigation and diverted her attention away from her investigation. In *Stubbs, supra,* the plaintiff, Stephen Stubbs, an attorney, was arrested for violating NRS 197.190 during a traffic stop of his client. Stubbs claimed that the law enforcement officers involved, as well as LVMPD generally, had a policy of harassing motorcycle club members, including his client. *Id.* at 442. During the stop, the involved officer repeatedly ordered Stubbs to step away from his client while the officers completed the traffic stop and he did not comply and was arrested. *Id.* Stubbs argued that he did not "willfully" hinder or interfere with the officer's investigation because he was acting in the capacity of his client's attorney. *Id.* at 443. The Ninth Circuit rejected this argument, recognizing that "the State had a legitimate interest in enforcing its traffic laws and that its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction." *Id.* at 442.

The same is true here in that Hoekstra's claim that she had some third-party interest in the circumstances by virtue of her status as a Burning Man volunteer or advocate for the victim such that she was justified in delaying Deputy Robinson's investigation is without merit. Deputy Robinson clearly had a legitimate interest in attempting to investigate whether one or more perpetrators of sexual assaults were in attendance at the Burning Man event. Her efforts to access the victim to determine whether or not the victim wished to make a report were in furtherance of that important public and law enforcement interest. Hoekstra's actions delayed Deputy Robinson in her investigation and she acted willfully in this regard (as opposed to accidentally or inadvertently). Accordingly, there was probable cause for the detention of

Hoekstra under the circumstances for a violation of NRS 197.190, a misdemeanor, which was committed in the presence of Deputy Robinson and Deputy Boyer. The question is not whether the evidence demonstrates that Hoekstra *did* commit a violation of NRS 197.190. Rather, the question is whether the evidence demonstrates that there was a *fair probability* that she did so. *Sykes, supra.* at 1349. The evidence as captured on the body worn camera video of the event in question demonstrates the existence of probable cause that Hoekstra committed a violation of NRS 197.190 by hindering and delaying Donna Robinson's investigation (her access to the potential victim of sexual assault) regardless of the motive Hoekstra believes may have justified her actions.

In addition to the fact that probable cause existed for the detention of Hoekstra, Deputy Robinson and Deputy Boyer are also entitled to summary judgment of the Fourth Amendment claim under the doctrine of qualified immunity. A government official is entitled to qualified immunity from a claim of damages unless the plaintiff raises a genuine issue of material fact showing (1) a violation of a constitutional right and (2) that the right was clearly established at the time of the alleged misconduct. *See, Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021); citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808 (2009). The elements of qualified immunity may be addressed in either order. *Pearson, supra.* at 236. A government official violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he or she was doing violates that right. *Evans, supra.* at 1066. "Although the Supreme Court 'does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id; citing Kisela v. Hughes,* 138 S. Ct. 1148, 1152, 200 L.Ed.2d 3493 (2018). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Wesby, supra.* at 63.

Qualified immunity operates to give government officials breathing room to make reasonable but mistaken judgments. *Evans, supra.* at 1067. The protection of qualified immunity applies regardless of whether the public official's error is a mistake of law, a mistake of fact, or a mistake based upon mixed questions of law or fact. *Pearson, supra.* at 231.

Whether the law was clearly established and whether an officer could have a reasonable, albeit mistaken belief that his conduct was lawful are questions of law for the Court to decide on summary judgment when the pertinent material facts are undisputed. *See, Balderas v. City of Porterville,* 801 F.Supp.2d 965, 980 (E.D. Cal. 2011). Qualified immunity is an immunity from suit, rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Scott v. Harris,* 550 U.S. 372, 376, 127 S. Ct. 1769 (2007).

Qualified immunity applies to preclude liability on a §1983 unlawful arrest claim when it was objectively reasonable for an officer to believe that he or she had probable cause to make the arrest at issue. *See, Hill v. City of Fountain Valley,* 70 F.4th 507, 516 (9th Cir. 2023). "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Id.*

Here, it would not have been clear to all reasonable officers that detaining Hoekstra in handcuffs no more than 50 feet from the area where the events at issue unfolded for less than fourteen minutes would have constituted a violation of the Fourth Amendment's prohibition against unlawful seizure. Even if Deputy Robinson were incorrect regarding the legal question of whether the victim needed to tell her directly that she did not wish to make a police report at that time (under VAWA or any other law), which the Defendants do not concede here, it was reasonable for Deputy Robinson to proceed in the manner she did under the circumstances. As noted by Hoekstra in her Second Amended Complaint, some 75,000 participants attended Burning Man in 2022. At the time of the incident, Deputy Robinson was responding to two potential sexual assault incidents. There was most certainly a real and legitimate interest on the part of the Defendant law enforcement officers in trying to determine whether one or more individuals was roaming Black Rock City who had been involved in a sexually-motivated crime. While Hoekstra took it upon herself, during her interview of one of the victims, to decide that no crime occurred which would have required her to have alerted law enforcement, she testified during her deposition that the victim told her that a young male had touched her without her consent. *See,* Exhibit 6, p. 58. Hoekstra was detained for less than fourteen minutes during

which time Deputy Robinson was able to speak with the victim and complete what investigation she could under the circumstances. Hoekstra was then released. It simply would not have been clear to all reasonable law enforcement officers under similar circumstances that probable cause was lacking. Accordingly, Deputy Robinson and Deputy Boyer are entitled to summary judgment under the doctrine of qualified immunity, as well.

Although Pershing County is named as a defendant in the case, there are no allegations in the Second Amended Complaint that Hoekstra's Fourth Amendment rights were violated pursuant to an unlawful custom, policy or practice in place in the County and the County cannot be held vicariously liable for the actions of its employees liable under §1983. *See, Board of County Com'rs of Bryant County, Okl. v. Brown,* 520 U.S. 397, 403, 117 S. Ct. 1382 (1997). Accordingly, Pershing County would be and is entitled to dismissal of Hoekstra's §1983 claim to the extent this claim was intended to apply to it.

**C. ROBINSON, BOYER AND PERSHING COUNTY ARE ENTITLED TO SUMMARY JUDGMENT OF HOEKSTRA'S WRONGFUL ARREST CLAIM PREMISED ON THE NEVADA CONSTITUTION.**

Hoekstra's second claim for relief is premised upon Article 1, §18 of the Nevada Constitution. As this Court has recognized, claims brought under the Fourth Amendment and Article 1, §18 are treated in the same manner given that the latter is "substantively identical" to the former. *See, Alexander v. Las Vegas Metro. Police Dep't.*, No. 2:24-CV-00074-APG-NJK, 2026 WL 579356, at *15. The existence of probable cause is a defense to false arrest claims brought under the Nevada Constitution. *See, Ramirez v. Las Vegas Metro. Police Dep't.*, 2:24-CV-02238-MMD-DJA, 2026 WL 2349960 at *6. Because probable cause existed for the arrest of Hoekstra for hindering and delaying Deputy Robinson's investigation in violation of NRS 197.190, her claim based on the Nevada Constitution is subject to dismiss for the identical reasons as are discussed above. In addition, Deputy Robinson and Deputy Boyer are entitled to dismissal of Hoekstra's state constitutional claim based on discretionary act immunity.

Nevada has waived its general state immunity under NRS 41.031. The state's waiver of immunity is not, however, absolute and the state has retained a discretionary function form of

immunity for officials exercising policy-related or discretionary acts.[8] *See,* NRS 41.032(2); *see also, Napouk v. Las Vegas Metro. Police Dep't.*, 669 F. Supp.3d 1031, 1046 (D. Nev. 2023). NRS 41.032(2) provides for immunity to both political subdivisions and its officers and employees, "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." "Whether to detain or arrest a suspect and how to do so are discretionary functions of the police department." *Napouk, supra.* at 1046. "A police officer's decision to arrest and detain is a discretionary act generally covered by NRS 41.032." *Scafidi v. Las Vegas Metro. Police Dep't.*, 966 F.3d 960, 965 (9th Cir. 2020). "It is only when officers act in bad faith or in disregard for a citizen's rights that they lose discretionary-function immunity." *Napouk, supra.* at 1047. "[W]here an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest but, instead because of hostility toward a suspect or a particular class of suspects . . . or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit." *Scafidi, supra.* at 965. "Bad faith" for purposes of the analysis of Nevada's discretionary-act immunity, "involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity." *Falline v. GNLV Corp.*, 107 Nev. 1004, 1009, fn. 3, 823 P.2d 888, 891 (Nev. 1991).

Here, Deputy Robinson is entitled to assert discretionary act immunity for her decision to have Hoekstra detained under the circumstances. There is no evidence that she acted in bad faith in connection with her actions. Rather, Deputy Robinson's actions were directly tied to her public duty to have made all efforts possible to investigate the sexual assault calls to which she was responding at the time. Hoekstra was detained for less than fourteen minutes and was released as soon as Deputy Robinson had completed her investigation of the sexual assault allegations involving the victim who had interacted with Hoekstra. Accordingly, the second claim for relief premised on the Nevada Constitution is subject to dismissal under NRS

---

[8] Nevada courts looks to federal precedent when determining the scope of discretionary-act immunity. *See, Paulos v. FCH1, LLC.,* 136 Nev. 18, 456 P.3d 589, 595 (Nev. 2020).

41.032(2).

Deputy Boyer also exercised discretion in the manner in which he detained Hoekstra on August 31, 2022. Hoekstra was detained in handcuffs for less than fourteen minutes. During that time period, and as can be seen on the body worn camera video, he loosened the handcuffs twice at Hoekstra's request and moved them such that they were secured in the front for greater comfort. Deputy Boyer did not subject Hoekstra to any questioning regarding her actions taken during the incident. Rather, after leading her a distance of no more than 50 feet, he obtained her name and personal identifying information, after which she was released. Accordingly, given the lack of any evidence that Deputy Boyer engaged in willful or deliberate disregard for Hoekstra's rights, he too is entitled to dismissal of Hoekstra's state constitutional claim based on the discretionary act immunity set forth at NRS 41.032(2).

There are no factual allegations in the Second Amended Complaint which suggest how Pershing County itself was involved in a violation of Hoekstra's rights under the Nevada Constitution. Assuming that the County is named by virtue of its status as the employer of Robinson and Boyer, it is entitled to dismissal of the state constitutional claim on the same grounds as are its employees.

**D. <u>ROBINSON, BOYER AND PERSHING COUNTY ARE ENTITLED TO SUMMARY JUDGMENT OF HOEKSTRA'S STATE TORT CLAIM FOR FALSE IMPRISONMENT</u>.**

Hoekstra's third claim for relief is for false imprisonment under state law. "To establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." *Marschall v. Carson City*, 86 Nev. 107, 464 P.2d 494, 497 (Nev. 1970). Probable cause is a defense to a false arrest claim brought under Nevada state law. *See, Grover v. Clark Cnty.,* 97 Nev. 104, 625 P.2d 85, 86 (Nev. 1981). Thus, as is the case with respect to the federal and state constitutional claims, Hoekstra's state tort claim for false imprisonment must be dismissed on summary judgment based on the existence of probable cause that she violated and/or was violating, NRS 197.190 in hindering and delaying Deputy Robinson's investigation of the sexual assault calls discussed herein. The discretionary act immunity set forth in NRS

41.032(2) also warrants dismissal of this state tort claim, as well, and there are no allegations in the Second Amended Complaint made against Pershing County as this claim other than that it is the employer of Robinson and Boyer. Thus, the County is entitled to summary judgment of Hoekstra's third claim for relief, as well.

**E. ROBINSON, BOYER AND PERSHING COUNTY ARE ENTITLED TO SUMMARY JUDGMENT OF HOEKSTRA'S STATE TORT CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Hoekstra's final claim for relief is one for intentional infliction of emotional distress under state law. In order to prevail under such a claim, Hoekstra must prove the following by a preponderance of the evidence: (1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation. *See, Blige v. Terry,* 139 Nev. 607, 540 P.3d 421, 432 (Nev. 2023). Extreme and outrageous conduct has been defined by the Nevada Supreme Court as "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car,* 114 Nev. 1, 953 P.2d 24, 26 (Nev. 1998).

Respectfully, the actions of the Defendants in detaining Hoekstra in handcuffs for a period of less than fourteen minutes while Deputy Robinson attempted to complete her sexual assault investigation on August 31, 2022, does not, as a matter of law, rise to the level of "extreme and outrageous conduct" so as to implicate this state tort theory of relief. Deputy Robinson and Deputy Boyer were carrying out the important law enforcement function of attempting to determine whether, and how many, potential perpetrators of sexually-motivated crimes were amongst the 75,000 Burning Man festival-goers on the night of August 31, 2022. There is no evidence that their actions were motivated by an intent to cause Hoekstra extreme or severe emotional distress or that their actions were taken recklessly. Nor were their actions "outside all possible bounds of decency" or "utterly intolerable in a civilized community." While the interaction with Hoekstra, all of which is documented on the body worn camera submitted by the Defendants herewith, was unpleasant, there is nothing captured on the video of

the incident which rises to the level of conduct required under this particular tort theory of relief. As such, the Defendants are entitled to dismissal of same on summary judgment.

## IV

## CONCLUSION

Based upon all of the foregoing, the Defendants respectfully request that the Plaintiff's Second Amended Complaint be dismissed in its entirety and that judgment be entered in their favor as a matter of law pursuant to FRCP 56.

DATED this 14th day of October, 2026.

THORNDAL ARMSTRONG, PC

By: *<u>/s/ Katherine Parks</u>*
KATHERINE F. PARKS, ESQ.
Nevada Bar No. 6227
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Attorney for Defendants
PERSHING COUNTY, DONNA ROBINSON and DANIEL E. BOYER

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Thorndal Armstrong, PC, and that on this date I caused the foregoing PERSHING COUNTY, DONNA ROBINSON, AND DANIEL BOYER'S MOTION FOR SUMMARY JUDGMENT to be served on all parties to this action by:

_____ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

_____ United States District Court CM/ECF system

_____ personal delivery/Reno Carson Messenger Service

_X___ electronic means (facsimile or electronic mail)

_____ Federal Express/UPS or other overnight delivery

fully addressed as follows:

Nathan E. Lawrence, Esq.
Joseph P. Lawrence, Esq.
Lawrence & Lawrence Law, PLLC
9480 S. Eastern Ave., Ste. 213
Las Vegas, NV 89123
*Attorneys for Plaintiff*

Todd Blanche, Esq.
Sigal Chattah, Esq.
James R. Sweetin, Esq.
United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101
*Attorneys for Defendant*
*Paul Zohovetz*

DATED this 14th day of October, 2026.

/s/ Laura Bautista
An employee of Thorndal Armstrong, PC

# INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Body cam video of Donna Robinson |
| 2 | Body cam video of Daniel Boyer |
| 3 | Pershing County Sheriff's Office Incident Report |
| 4 | Deposition of Daniel Boyer |
| 5 | Deposition of Donna Robinson |
| 6 | Deposition of Hannah Hoekstra |