LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

LAWRENCE & LAWRENCE LAW, PLLC
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| HANNAH HALE HOEKSTRA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PERSHING COUNTY; DONNA ROBINSON, an individual; DANIEL E. BOYER, an individual; and PAUL ZOHOVETZ, an individual; collectively,<br><br>Defendants. | Case No.: 3:24-cv-00392-MMD-CSD<br><br>**PLAINTIFF'S RESPONSE TO PERSHING COUNTY, DONNA ROBINSON, AND DANIEL BOYER'S MOTION FOR SUMMARY JUDGMENT [ECF No. 68]**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff HANNAH HALE HOEKSTRA ("Plaintiff" or "Ms. Hoekstra"), by and through her attorneys of the law firm of LAWRENCE & LAWRENCE LAW, PLLC, hereby submits her Response to Pershing County, Donna Robinson, and Daniel Boyer's Motion for Summary Judgment [ECF No. 68] (the "Motion"). This Response is based on the papers and pleadings on file in this matter, the following Memorandum of Points and Authorities, and any arguments from counsel the Court may choose to entertain on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendants' Motion is predicated solely on the treatment of Ms. Hoekstra's requests, on

L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

behalf and at the direction of a distraught third party for whom Ms. Hoekstra was providing trauma-informed counsel, to Defendant DONNA ROBINSON ("Ms. Robinson") as criminal obstruction, which disputed conclusion merely reflects Defendants' opinion and preferred interpretation. The totality of the body worn camera footage (ECF Nos. 68-1 and 68-2, manually filed herein) and Defendants' own deposition testimony bely that conclusion as a matter of fact and law or, minimally, create a dispute that forecloses summary judgment.

As detailed below, a frustrated Ms. Robinson, dissatisfied with the actions of other people on the relevant date and in prior years at the Burning Man event, ordered and participated in the arrest of an entirely compliant Ms. Hoekstra, strictly because Ms. Hoekstra asked her to discuss the alleged victim out of the range of her hearing, so as not to cause additional trauma. The factual record sufficiently demonstrates that there was no interference, there was no obstruction, and there was no probable cause for arrest… and that an arrest did, in fact, occur.

On the available evidence, a jury could easily find that Ms. Hoekstra complied with each of Ms. Robinson's instruction, did not physically or practically interfere with Ms. Robinson's investigation of the alleged victim, did not otherwise delay or obstruct, and was only arrested because she politely requested a trauma-informed approach for a victim. These disputed facts govern probable cause, qualified immunity, false imprisonment, intentional infliction of emotional distress, and discretionary-act immunity. Summary judgment should be DENIED.

## II. STATEMENT OF RELEVANT AND UNDISPUTED FACTS

The crucial facts are simple and visually before the Court: On August 31, 2022, Plaintiff was working as a volunteer registered nurse with Burning Man's Emergency Services Department and Crisis Intervention Team. ECF No. 68 at 4:2-4. Ms. Hoekstra was inside a tent counseling a female participant seeking emotional support after an uncomfortable encounter. *Id.*

Upon first presenting herself to Ms. Hoekstra as a Pershing County Sheriff's Office ("PCSO") Deputy (she was in "plain clothes") [ECF No. 68-1 at 17:56], Ms. Robinson instructed Ms. Hoekstra to leave the private tent (*Id.* at 18:13) where she was providing counseling to a third-party who had expressly stated she did not wish to speak to law enforcement. Ms. Hoekstra

LAW L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

immediately complied with Ms. Robinson's instructions to exit the tent (*Id.* at 18:23) while requesting the involvement of Ms. Hoekstra's supervisor (*Id.* at 18:32), further articulating that the alleged victim had asked Ms. Hoekstra to speak on her behalf. Ms. Hoekstra politely cajoled Ms. Robinson to move away from the tent so they could discuss the victim's needs without further distressing her ("All I'm asking to do is step out of earshot of the person that's traumatized…;" *Id.* at 19:06). During her entire conversation with Ms. Hoekstra, Ms. Robinson stood by the door of the alleged victim's tent, between Ms. Hoekstra and the tent. Ms. Hoekstra never made physical contact with Ms. Robinson nor attempted to restrain her from entering the tent or speaking with the alleged victim. *See Id.*

Defendant DANIEL E. BOYER ("Deputy. Boyer") confirmed that he did not ever observe Ms. Hoekstra obstruct Ms. Robinson's access to the tent. (Deposition of Daniel E. Boyer at 111:6-8, a true and correct copy of which is attached hereto as **Exhibit 1;** "Boyer Dep."). Ms. Hoekstra was never instructed to stay by the tent or near Ms. Robinson, yet, as she started to walk away from Ms. Robinson to speak with her supervisor, Deputy Boyer intervened, summoned by Ms. Robinson and following his prior conversation with her, in which Deputy Boyer asked her, "Which one needs to go to jail? I'll put one of them in cuffs. I don't care." ECF No. 68-1 at 12:24. As Ms. Hoekstra walked towards her supervisor, Deputy Boyer contacted Ms. Hoekstra and said "Ma'am, no, no, no, it's too late. Turn around and place your hands behind your back. Place your hands behind your back… I will drop you on the ground and tase you… " *Id.* at 19:20.

Ms. Robinson concedes that she only spoke with Ms. Hoekstra briefly (Deposition of Donna Robinson at 96:2-20, a true and correct copy of which is attached hereto as **Exhibit 2;** "Robinson Dep."), yet, despite this very brief interaction, she determined to arrest Ms. Hoekstra strictly and simply for requesting that Ms. Robinson move away from the tent to continue the conversation. *Id.* at 96:7-10. Ms. Robinson further admitted that, before Deputy Boyer handcuffed Ms. Hoekstra, Ms. Robinson had not specifically told him that Plaintiff was obstructing her. *Id.* at 101:18–102:23; Boyer Dep. 111:12–21. Ms. Robinson nevertheless summoned Boyer and used a hand-over-wrist gesture directing him to restrain Plaintiff. *Id.* at 101:18–102:2. Ms. Robinson then physically grabbed Ms. Hoekstra's left arm to prevent her from moving it and to assist

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

Deputy Boyer in applying the handcuffs. *Id.* at 65:7–21; *see also* ECF No. 68-1 at 19:22. Most notably in defeating this premise of "interference" or "obstruction" is that, in this brief interchange, the victim to whom Ms. Robinson was ostensibly obstructed from contacting had emerged from the tent as was standing immediately behind Ms. Robinson. ECF No. 68-1 at 19:32. In fact, Ms. Robinson first spoke with the alleged victim almost exactly two minutes after first speaking with Ms. Hoekstra. *Id.* at 19:44 In all of the above action, not once did Ms. Robinson make any overture towards obstructing Ms. Robinson's actions or ever actually do so. Even so, and without probable cause for doing so, Ms. Robinson arrested Ms. Hoekstra.

In effecting that arrest, Ms. Robinson restrained Ms. Hoekstra while Deputy Boyer handcuffed her, then walked her away to his vehicle. *See* ECF No. 68-2. Deputy Boyer instructed Ms. Hoekstra to walk to his vehicle while he maintained "control" over her. Id. at 19:46-20:20. During the march to Deputy Boyer's vehicle, Defendant Bureau of Land Management Ranger PAUL ZOHOVETZ ("Ranger Zohovetz") joined, taking control of Ms. Hoekstra's left arm, further instructing her to proceed to the vehicle. *Id.* at 20:33. Upon arriving at the vehicle, Deputy Boyer advised Ms. Hoekstra that the events were being recorded and would be in her "arrest report." *Id.* at 20:58. Ms. Hoekstra responded that she thought she was "detained, not arrested," to which Deputy Boyer responded, "Ah, we'll see." *Id.* at 21:00.

Immediately thereafter, Ranger Zohovetz continued to speak to Ms. Hoekstra for some time "educating" her regarding the arrest and control. *Id.* at 21:29-22:00.

> Ranger Zohovetz: "It's a detention, right?"
> Ms. Hoekstra: "Well, he [Boyer] said I was arrested."
> Ranger Zohovetz: "Well, there you are."

A portion of these events were recorded by a bystander with whom Ms. Hoekstra spoke, further to which she requested a copy of the video recording. *Id.* at 22:10-23:05. Deputy Boyer additionally requested a copy of the recording, affirming that he would need a copy "for the prosecution." *Id.* at 23:05. Ms. Hoekstra repeatedly indicated that she was in pain, requesting the handcuffs be loosened. *Id.* at 23:20. Deputy Boyer and Ranger Zohovetz each examined the handcuffs, with Ranger Zohovetz ultimately removing Ms. Hoekstra's personal belongings and Deputy Boyer affixing the handcuffs in front of Ms. Hoekstra pursuant to Ranger Zohovetz'

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW L² LAWRENCE
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

direction. Id. at 23:20-26:06. After about ten more minutes, following instruction by Ms. Robinson to release her, Ms. Hoekstra was released from handcuffs and escorted by Deputy Boyer to speak with a PCSO sergeant. *Id.* at 34:30. Ms. Hoekstra's personal property was returned to her by the sergeant off camera some time thereafter. Ms. Hoekstra was never prosecuted for any criminal offense or violation of Nev. Rev. Stat. ("NRS") § 197.190.

Ms. Robinson's motivations throughout this matter are, at a minimum, muddled, and, consequently, have a substantial impact on interpreting the recorded events. Ms. Robinson insists "that she needed to hear from the victim that she did not wish to speak" to Ms. Robinson, ECF No. 68 at 4:21-23, but she concedes there is no such legal requirement under the law, rending this statement or demand an entirely unlawful order. Robinson Dep. at 78:4-7 and 80:4-81:15. Contrary to any altruism, Ms. Robinson indicated she wanted to speak to the victim to potentially avoid being named in a legal suit. *Id.* at 78:11-84:14. Ms. Robinson was also possessed of an evident bias against Burning Man personnel, based on second-hand reports of obstruction, entirely independent of and unrelated to Ms. Hoekstra. *See*, *e.g.*, *Id.* at 84:15-87:4. Equally, Ms. Robinson was frustrated with other persons and their actions, *Id.* at 130:12-24, leading to an unwarranted targeting of Ms. Hoekstra.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("FRCP") 56(a). A material fact "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). The summary judgment "standard mirrors the standard for a directed verdict… which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250 (emphasis added).

L² LAWRENCE LAW TO THE HIGHER POWER

**B. Arrest**

The Fourth Amendment applies whenever an officer restrains a person's freedom to walk away. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968). A person is seized when, considering all the circumstances, police conduct would communicate to a reasonable person that she was not free to ignore the police and continue with her business. *Kaupp v. Texas*, 538 U.S. 626, 629, 123 S. Ct. 1843, 1845 (2003) Although not every seizure constitutes an arrest, an arrest occurs when, under the totality of the circumstances, a reasonable person would conclude that she was not free to leave after brief questioning. *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990).

A seizure occurs when police use physical force or a show of authority to restrict a person's liberty such that a reasonable person would not feel free to disregard the police and go about her business. *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009). Whether that seizure constitutes an arrest depends on the totality of the circumstances, including the restriction of movement and the force or authority employed. *Del Vizo*, 918 F.2d at 825 (9th Cir. 1990). Handcuffing is a substantial factor and may provide the clearest indication that the person is no longer free to leave. *United States v. Bravo*, 295 F.3d 1002, 1010 (9th Cir. 2002). The use of handcuffs and other especially intrusive methods ordinarily requires circumstances suggesting danger, flight, weapons, or a violent crime. *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996).

**C. Obstruction**

NRS § 197.190 prohibits willfully hindering, delaying, or obstructing an officer; it does not criminalize a request to discuss a different approach. The First Amendment protects verbal criticism and challenges directed at police, including the freedom to oppose police action verbally without thereby risking arrest. *Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 2509 (1987). The Ninth Circuit similarly recognizes that words alone cannot establish obstruction unless they fall outside constitutional protection. *Gulliford v. Pierce Cty.*, 136 F.3d 1345, 1352 (9th Cir. 1998).

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW L² LAWRENCE
LAW TO THE HIGHER POWER

## IV. ARGUMENT

As the Pershing County Defendants note, many of the material facts are not disputed, having all been recorded on the various body-worn cameras of the multiple Defendants, however, the presence of body-worn camera recordings does not eliminate disputes concerning what conduct occurred, whether Ms. Hoekstra's conduct actually hindered Ms. Robinson's investigation, what Deputy Boyer knew before applying the handcuffs, and whether Defendants arrested Ms. Hoekstra because of her conduct, simply because she asked for a courtesy to a traumatized third-party, or because of Defendants internalized biases and anger towards other people present on that day and the Burning Man events in prior years. Thes disputed facts and the application thereof preclude summary judgment, and the Motion should be denied.

### A. A jury could find Defendants lacked probable cause for an arrest under NRS § 197.190.

NRS § 197.190 applies, in relevant part, when a person willfully hinders, delays, or obstructs a public officer in the discharge of official powers or duties. The evidence, properly viewed in Ms. Hoekstra's favor, does not establish any such prohibited conduct, precluding the existence of any probable cause for violation of the misdemeanor offense.

Rather, the evidence shows that Ms. Hoekstra promptly obeyed Ms. Robinson's instruction to leave the tent once she had identified herself as a PCSO investigator. Ms. Hoekstra never touched Ms. Robinson, closed or barred the entrance to the tent, stood between Ms. Robinson and the traumatized woman, or prevented Ms. Robinson from speaking with her. Upon exiting the tent, Ms. Hoekstra actually stepped away from the entry and explained that she had been asked to speak for the woman and simply requested that Ms. Robinson move away from the tent so they could discuss the situation without further distressing the traumatized woman. By moving away from the tent, Ms. Robinson had free access to pursue her investigation, yet she voluntarily did not, choosing, rather, to argue with Ms. Hoekstra.

The continued engagement with Ms. Hoekstra after she had left the tent further allows a jury to find that Ms. Robinson acted on her biases and frustration with other people, not because Ms. Hoekstra actually engaged in any interfering or obstruction action. As noted, Ms. Robinson



LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAW LAWRENCE
LAW TO THE HIGHER POWER

was already predisposed towards antagonism towards Burning Man personnel and was already frustrated with the actions of third parties. She and Deputy Boyer had already discussed arresting or jailing someone well before Ms. Robinson or Deputy Boyer ever even saw Ms. Hoekstra. Additionally, and contrary to performance of legal duty or altruism, Ms. Robinson indicated she wanted to speak to the victim to potentially avoid being named in a legal suit, further suggesting that her actions against Ms. Hoekstra were taken to further self-preservation and avoidance of liability.

Ms. Robinson's own testimony narrows the alleged basis for the arrest. Ms. Robinson testified that her personal interaction with Ms. Hoekstra lasted only a few minutes and that the discussion concerned Ms. Hoekstra's request that Ms. Robinson move away from the tent so the victim would not hear them talking. A jury could find that Plaintiff was simply requesting a private discussion and a different approach, not attempting to prevent Ms. Robinson from performing an official duty.

Ms. Robinson also admitted that, before the handcuffing, she had not specifically informed Deputy Boyer that Ms. Hoekstra was obstructing her. Deputy Boyer acknowledged that Ms. Hoekstra did not appear to be blocking the tent entrance when Ms. Robinson summoned him. These admissions support a finding that Defendants lacked an objective basis to believe Ms. Hoekstra had physically or practically prevented Ms. Robinson from performing her duties. Nor did Ms. Hoekstra make it impossible for Ms. Robinson to proceed with her investigation. After Ms. Hoekstra was arrested and removed, Ms. Robinson spoke with the woman, who, exactly as Ms. Hoekstra had informed Ms. Robinson, declined to make a report at that time. A jury could well and properly conclude that Ms. Hoekstra's brief request for a private discussion caused, at most, the momentary interruption inherent in speaking with an officer, not a willful obstruction prohibited by NRS § 197.190.

Such request does not even reasonably rise to verbal criticism of Ms. Robinson, but, even if it did, the First Amendment protects a significant amount of verbal criticism and challenge directed at police. *Hill*, 482 U.S. at 453 (1987). It particularly protects the freedom to oppose or challenge police action verbally without thereby risking arrest, *Id.*, which principle is upheld in

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW TO THE HIGHER POWER

this Circuit. *Gulliford*, 136 F.3d at 1352 (9th Cir. 1998). Even profanity directed toward an officer remains protected unless it is likely to provoke an immediate violent response or create a serious substantive danger exceeding inconvenience, annoyance, or unrest. *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001).

Ms. Hoekstra's innocuous conduct falls well within those protections. She only requested a discussion away from the tent, explained the woman's stated wishes, and requested the presence of her supervisor in resolving any questions. Ms. Hoekstra did not threaten Ms. Robinson, physically intervene, or prevent Ms. Robinson from reaching the woman. A request that an officer consider a different approach cannot, without more, supply probable cause for obstruction. Absent probable cause, no arrest or detention should follow.

While the evidence does not reasonably support Defendants' contentions, at a minimum, reasonable jurors could differ over whether Ms. Hoekstra actually hindered Ms. Robinson in any fashion and whether a reasonable officer could interpret Ms. Hoekstra's requests and explanations as a willful violation of NRS § 197.190. That dispute precludes summary judgment.

**B. The evidence establishes a triable issue that Plaintiff was arrested, not merely detained.**

Defendants' description of the encounter as a "detention" does not control the constitutional analysis, and a reasonable jury may readily find that an arrest occurred, regardless of the duration of that arrest. The Fourth Amendment inquiry turns on the objective circumstances and the degree of coercion, not the terminology selected by the officers. A seizure occurs when police use physical force or a show of authority to restrict liberty such that a reasonable person would not feel free to ignore the officers and continue with her business. *Hopkins*, 573 F.3d at 774 (9th Cir. 2009). Whether that seizure constitutes an arrest depends on the totality of the circumstances, including the restriction of movement and the force or authority employed. *Del Vizo*, 918 F.2d at 825 (9th Cir. 1990). Handcuffing is a substantial factor and may provide the clearest indication that the person is no longer free to leave. *United States v. Bravo*, 295 F.3d 1002, 1010 (9th Cir. 2002).

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAW RENZINI LAWRENCE
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

Here, the evidence goes beyond an officer's request for brief questioning. Deputy Boyer handcuffed Plaintiff behind her back. Ms. Robinson grabbed and controlled Ms. Hoekstra's left arm to assist with the handcuffing. Deputy Boyer explicitly told Ms. Hoekstra she was under arrest, threatened to take her to the ground and tase her, and moved her approximately fifty feet toward a police vehicle. Deputy Boyer clearly referred to an arrest report and anticipated prosecution. Ms. Robinson's subsequent testimony reinforces the custodial nature of the seizure. She further testified that the victim asked her not to arrest Ms. Hoekstra and that she then chose among arresting, citing, submitting the matter, or releasing Ms. Hoekstra after a field interview. Robinson Dep. 103:18–104:4. A jury could find that Plaintiff had already been subjected to a *de facto* arrest while Ms. Robinson considered what formal disposition would follow.

The record identifies no safety concern justifying the degree of restraint as part of a limited investigative stop. Especially intrusive techniques such as handcuffing ordinarily require circumstances involving danger, flight, weapons, or a violent crime. *Washington*, 98 F.3d at1189 (9th Cir. 1996). Ms. Robinson and Boyer identified no weapon, attempt to flee, threat, violent act, or physical interference by Ms. Hoekstra, further cementing the principle that the use of handcuffs established an arrest.

In light of the above, a jury could find that Ms. Hoekstra was arrested when Defendants physically restrained her, handcuffed her, threatened force, told her she was under arrest, and moved her toward a law-enforcement vehicle. Defendants cannot avoid the probable-cause requirement by relabeling that arrest as a temporary detention.

**C. Deputy Boyer's testimony creates an independent dispute concerning his basis for arresting Plaintiff.**

Deputy Boyer cannot establish probable cause merely by adopting Ms. Robinson's conclusion after the fact. Ms. Robinson admitted that she had not specifically informed Boyer, before the handcuffing, that Ms. Hoekstra was (allegedly) obstructing her. Robinson Dep. 101:18–102:23. Boyer testified that Robinson merely beckoned him and that she did not verbally explain the reason before he approached Ms. Hoekstra and handcuffed her. Boyer Dep. 111:12–21. Deputy Boyer personally observed no physical obstruction. He acknowledged that Ms.

LAW L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

Hoekstra did not appear to be standing in front of or blocking the tent entrance. Boyer Dep. 111:12–21. All that Deputy Boyer observed from a distance was Ms. Hoekstra speaking with Ms. Robinson, yet, when summoned by a hand gesture, he immediately handcuffed her and asserted that she was obstructing.

A jury could therefore find that Deputy Boyer handcuffed and arrested Ms. Hoekstra without knowing facts sufficient to establish obstruction. Deputy Boyer's subsequent actions support that inference: he told Ms. Hoekstra she was under arrest, threatened to take her to the ground and tase her, moved her toward a police vehicle, referred to an arrest report, and sought a bystander's recording for possible prosecution. Those facts permit a jury to determine that Deputy Boyer effectuated an arrest based on Ms. Hoekstra's conversation with Ms. Robinson, not any conduct that actually hindered Ms. Robinson.

**D. Robinson and Boyer are not entitled to qualified immunity.**

On Ms. Hoekstra's understanding and articulation of the disputed facts, Defendants arrested her without probable cause. Ms. Hoekstra complied with Ms. Robinson's direction to exit, did not touch Ms. Robinson or block the tent entrance, and continued only to explain the woman's wishes and request a discussion away from the tent. Ms. Robinson's testimony confirms that the interaction lasted only a few minutes and centered on Ms. Hoekstra's request that Ms. Robinson move away. An arrest on these facts clearly violates well established law in this country and Circuit.

The governing constitutional rule was established long before August 2022. Individuals possess a protected freedom to oppose or challenge police action verbally without thereby risking arrest. *See Hill*, 482 U.S. (1987). The Ninth Circuit has likewise held that words alone cannot support an obstruction arrest when the speech does not constitute unprotected fighting words. *See Gulliford*, 136 F.3d (9th Cir. 1998). The evidence permits a jury to find that this was an arrest rather than a limited investigative stop. The totality-of-the-circumstances inquiry examines the restriction of movement and the force or authority employed. *Washington*, 98 F.3d 1181 (9th Cir. 1996). Handcuffing is a substantial indicator of arrest, particularly when it is not tied to an identified safety concern. *Bravo*, 295 F.3d 1002 (9th Cir. 2002).

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

Ms. Hoekstra was handcuffed, physically controlled, threatened with a takedown and taser, told she was under arrest, and moved toward a police vehicle, all without evident probable cause. Defendants used those coercive measures despite the absence of physical interference, danger, flight, or any other conduct supporting probable cause. Caselaw precluding Defendants' course of actions against Ms. Hoekstra is well settled. Defendants therefore are not entitled to qualified immunity or to summary judgment under this strictly federal doctrine.

Federal qualified immunity is not a defense to a damages claim under Article 1, Section 18 of the Nevada Constitution. The Nevada Supreme Court has held that Nevada law contains no legislatively authorized equivalent of federal qualified immunity for that claim. *Mack v. Williams*, 138 Nev. 854, 872, 522 P.3d 434, 451 (2022).

**E. The Nevada constitutional claim must survive.**

Ms. Hoekstra's Nevada constitutional claim rests on the same disputed absence of probable cause, and the cause of action is well established under *Mack*, *supra*. A jury could find that Plaintiff complied with Robinson's instruction, did not block access to the woman, and was arrested because she continued explaining the woman's wishes and requesting a more humane and trauma-informed approach. As discussed, Defendants' characterization of the seizure as a detention does not resolve the issue. Ms. Hoekstra's liberty was restrained through handcuffing, physical control, threatened force, and movement toward a police vehicle. The circumstances here permit a finding that the seizure ripened into an arrest requiring probable cause. Because the existence of probable cause turns on disputed facts concerning Ms. Hoekstra's conduct and Defendants' knowledge, the Nevada constitutional claim cannot be resolved as a matter of law, and, as discussed, qualified immunity is not an available defense for this claim.

**F. Discretionary-Act Immunity does not support summary judgment.**

Discretionary-act immunity applies only when the disputed act involves judgment or choice and that judgment is based on social, economic, or political policy considerations. *Martinez v. Maruszczak*, 123 Nev. 433, 436, 168 P.3d 720, 722 (2007). An act does not become immune merely because it required an employee to exercise some judgment; the second, policy-based requirement remains essential. Id. at 435; *Butler v. Bayer*, 123 Nev. 450, 466 (2007).

LAW L² LAWRENCE
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

Nevada also construes its waiver of immunity broadly and limitations on that waiver strictly. *Echeverria v. State*, 137 Nev. 486, 492 (2021). Discretionary immunity is designed to prevent judicial second-guessing of legislative and executive decisions grounded in social, economic, or political policy—not to immunize intentional misconduct or bad-faith conduct. *Franchise Tax Bd. of Cal. v. Hyatt*, 133 Nev. 826, 834 (2017).

Defendants do not establish that arresting Ms. Hoekstra for her verbal disagreement reflected any social, economic, or political policy choice. The challenged acts were Ms. Robinson's on-the-spot decision to order Ms. Hoekstra arrested and Deputy Boyer's conduct in carrying out that arrest. Defendants describe those actions as connected to an investigation, but that description does not show that the decision to arrest Ms. Hoekstra for mere speech was grounded in protected governmental policy.

The evidence also, easily, permits a finding of bad faith against all Defendants. Ms. Robinson's testimony concerning her bias toward people serving in Plaintiff's role over the course of years, her frustration with other people on that day and Plaintiff's suggestions for a better course of action, and her stated concern with obtaining a recorded statement to protect herself from suit support an inference that the arrest was retaliatory rather than associated with a nominal investigation. Deputy Boyer's prior indication of his desire to jail anyone, his immediate taser threat to Ms. Hoekstra, and his later statement that a bystander's recording would be needed for Ms. Hoekstra's prosecution support the same inference. A jury could find that Defendants deliberately disregarded Ms. Hoekstra's rights because Ms. Robinson was angered by Ms. Hoekstra's advocacy. Discretionary-act immunity cannot be resolved in Defendants' favor on this disputed record.

**G. Plaintiff's False-Imprisonment claim presents triable issues.**

False imprisonment requires confinement under the probable imminence of force without legal cause or justification. Defendants' motion recognizes that probable cause is the asserted justification for Plaintiff's confinement. Because probable cause is disputed, the false-imprisonment claim cannot be resolved as a matter of law.

There is no genuine dispute that Defendants intentionally confined Ms. Hoekstra. Ms.

LAW L² LAWRENCE
LAW TO THE HIGHER POWER

Robinson directed that she be restrained, Deputy Boyer applied handcuffs behind her back, Ms. Robinson grabbed and controlled Ms. Hoekstra's left arm, and Deputy Boyer threatened force and moved Ms. Hoekstra approximately fifty feet toward a PCSO vehicle. Ms. Hoekstra was conscious of the confinement and understood that she was not free to leave.

The objective circumstances support that understanding. Police seize a person when their physical force or show of authority would communicate to a reasonable person that she was not free to ignore them and continue with her business. As discussed, handcuffing is a substantial indication of arrest and may be the clearest indication that the person is no longer free to leave.

The disputed issue is legal justification. If the jury finds that Ms. Hoekstra complied with Ms. Robinson's instruction and engaged only in protected verbal advocacy, it may also find that Defendants lacked probable cause and confined her without legal justification. The fact that Defendants later released Ms. Hoekstra without charges does not convert the preceding arrest into a consensual or noncustodial encounter.

**H. Plaintiff's Intentional Infliction of Emotional Distress claim should be evaluated by a jury.**

Intentional infliction of emotional distress requires extreme and outrageous conduct, intent or reckless disregard concerning emotional distress, severe or extreme distress, and causation. *Nelson v. Las Vegas*, 99 Nev. 548, 555 (1983). The proof required concerning the severity of distress varies with the extremity of the conduct; where conduct lies at the more extreme end of the scale, less additional proof of distress is required. *Blige v. Terry*, 139 Nev. 607, 619 (2023).

The cause of action does not rest on a routine, good-faith detention. Viewed favorably to Ms. Hoekstra, Ms. Robinson ordered a nurse and victim advocate arrested because she challenged Ms. Robinson's arguably self-serving and overly aggressive approach to a distressed woman. Deputy Boyer then handcuffed Ms. Hoekstra, threatened to take her to the ground and tase her, dragged or pulled her toward a police vehicle, and announced that a by-stander's recording would be needed to prosecute her. A jury could find that using arrest, physical restraint, and threatened force to punish protected advocacy, all without legal justification or probable cause, exceeded the bounds of a legitimate law-enforcement response and is, therefore, extreme and outrageous.

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW TO THE HIGHER POWER

There is also evidence of severe distress and causation. Plaintiff testified that her distress arose from being detained, handcuffed, threatened with a taser, and pulled around by Deputy Boyer. The operative allegations further identify physical injuries and post-traumatic-stress treatment following the incident. Defendants may dispute the degree, cause, and duration of those injuries, but those disputes concern credibility and weight. They do not establish the absence of a triable claim.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Hannah Hale Hoekstra respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

DATED this 25th day of November 2026.

**LAWRENCE & LAWRENCE LAW, PLLC**

______________________________

Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **PLAINTIFF'S RESPONSE TO PERSHING COUNTY, DONNA ROBINSON, AND DANIEL BOYER'S MOTION FOR SUMMARY JUDGMENT [ECF No. 68]** was made on this 25th day of November 2026, by electronic mail and/or submission to the electronic filing and service system (CM/ECF) of the United States District Court, District of Nevada, which will provide copies to all parties and counsel of record, including the following:

THORNDAL ARMSTRONG, PC
Katherine F. Parks, Esq.
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882 (phone)
(775) 786-8004 (fax)
KFP@thorndal.com
*Attorneys for Pershing County, Donna Robinson, and Daniel E. Boyer*

TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH,
First Assistant United States Attorney District of Nevada
Nevada Bar Number 8264
NATHAN M. CLAUS
Assistant United States Attorney
Nevada Bar No. 15889
501 S. Las Vegas Blvd., Ste. 1100
Las Vegas, Nevada 89101
(702) 388-6336
Nathan.Claus@usdoj.gov
*Attorneys for Federal Defendant*

DATED this 25th day of November 2026.

**LAWRENCE & LAWRENCE LAW, PLLC**

______________________________
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

LAW TO THE HIGHER POWER