LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE LAW, PLLC
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| HANNAH HALE HOEKSTRA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PERSHING COUNTY; DONNA ROBINSON, an individual; DANIEL E. BOYER, an individual; and PAUL ZOHOVETZ, an individual; collectively,<br><br>Defendants. | Case No.: 3:24-cv-00392-MMD-CSD<br><br>**PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANT PAUL ZOHOVETZ'S MOTION FOR SUMMARY JUDGMENT [ECF No. 70]**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff HANNAH HALE HOEKSTRA ("Plaintiff" or "Ms. Hoekstra"), by and through her attorneys of the law firm of LAWRENCE & LAWRENCE LAW, PLLC, hereby submits her Response to Federal Defendant Paul Zohovetz's Motion for Summary Judgment [ECF No. 70] (the "Motion"). This Response is based on the papers and pleadings on file in this matter, the following Memorandum of Points and Authorities, and any arguments from counsel the Court may choose to entertain on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Bureau of Land Management Ranger Paul Zohovetz's ("Ranger Zohovetz") Motion rests

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

on a misleadingly simplified choice: either he remained solely a federal employee throughout the incident, or he acted under color of state law. The relevant inquiry is not who issued his paycheck or whose uniform Ranger Zohovetz wore. It is the actual nature of his participation in the challenged and constitutionally-defective arrest which, without equivocation or dispute, was predicated on Nevada state law.

This Court previously rejected Ranger Zohovetz's circular argument that his federal employment necessarily established that he acted under federal law. *See* ECF No. 45. The Court explained that responsibility for enforcing federal law does not establish that a BLM officer was, in fact, exercising federal authority during the challenged conduct. *Id.* at 10:8-13. The Court also noted the contradiction between Ranger Zohovetz's claim that he acted exclusively under federal law and his plain acknowledgment that he was assisting state officers in their state-law enforcement duties. *Id.* at 12:1-18.

Despite contrary assertions, discovery has <u>not</u> resolved that factual question in Ranger Zohovetz' favor. Rather, it has fully confirmed that Ms. Hoekstra's arrest was initiated, conducted, and maintained strictly as a Pershing County Sheriff's Office ("PCSO") state-law operation into which Ranger Zohovetz voluntarily inserted himself as a *de facto* PCSO agent. Discovery has also confirmed (as was evident from the outset) that Ranger Zohovetz immediately jumped in to assist Deputy Boyer, physically took hold of Ms. Hoekstra, accompanied her to the PCSO vehicle, participated in handling and repositioning her handcuffs, informed Ms. Hoekstra's associates that "She's in handcuffs, she's not coming out of them," removed her belt and possessions, instructed her regarding state law concerning the identifying information demanded during the state arrest, and attempted to control a bystander's recording of the encounter. *See* ECF Nos. 23-2, 37, and 38.

The 2022 Burning Man Operation Plan (the "Plan") [ECF No. 70-7] does not eliminate the resulting factual dispute. Quite the opposite, in fact. The Plan explicitly assigns enforcement of Nevada law to PCSO, provides that any state arrest will be conducted by PCSO, and confines BLM assistance in the context of a state arrest to assistance with transportation to jail. *Id.* at Pg. 28. For federal arrests, the Plan limits control of personal property to the BLM, cementing an

L² LAWRENCE LAW TO THE HIGHER POWER

inference that personal property in a state arrest is controlled by PCSO. *Id.* Ranger Zohovetz' conduct in removing Ms. Hoekstra's belt and belongings shows a voluntary intrusion into the parameters of PCSO function for a state arrest, and this, plus all the other described behavior, demonstrate furtherance of the same independent venture, establishing that Ranger Zohovetz' involvement in an unequivocal state arrest well exceeded mere assistance "with transport to the JOC jail or Pershing County Jail." There were no exigent circumstances that precipitated his integral involvement in the state arrest in excess of the imprimatur of his federal employment or the Plan. A jury could, therefore, easily find that Ranger Zohovetz crossed the line between federal safety or cover functions into active participation in a state arrest when he physically helped control Ms. Hoekstra, took control of her possessions, and participated in the means by which PCSO confined her.

The totality of the circumstances, including the source of the offense, the agency controlling the detention, the nature of Ranger Zohovetz's actions, and his close physical and operational cooperation with Deputy Boyer, would permit a reasonable jury to find that Ranger Zohovetz acted as a willful joint participant and *de facto* agent of PCSO. The same evidence creates triable issues concerning whether his conduct fell outside the assigned federal role on which he relies and whether he participated in Ms. Hoekstra's false imprisonment and resulting emotional distress. The Motion should be DENIED.

## II. STATEMENT OF RELEVANT AND UNDISPUTED FACTS

As articulated in Plaintiff's contemporaneous Response to the Pershing County Defendants' Motion for Summary Judgment (see ECF Nos. 67 and 78), the crucial facts are simple and visually before the Court: On August 31, 2022, Plaintiff was working as a volunteer registered nurse with Burning Man's Emergency Services Department and Crisis Intervention Team. ECF No. 68 at 4:2-4. Ms. Hoekstra was inside a tent counseling a female participant seeking emotional support after an uncomfortable encounter. *Id.*

Upon first presenting herself to Ms. Hoekstra as a Pershing County Sheriff's Office ("PCSO") Deputy (she was in "plain clothes") [ECF No. 68-1 at 17:56], Defendant DONNA

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

ROBINSON ("Ms. Robinson") instructed Ms. Hoekstra to leave the private tent (*Id.* at 18:13) where she was providing counseling to a third-party who had expressly stated she did not wish to speak to law enforcement. Ms. Hoekstra immediately complied with Ms. Robinson's instructions to exit the tent (*Id.* at 18:23) while requesting the involvement of Ms. Hoekstra's supervisor (*Id.* at 18:32), further articulating that the alleged victim had asked Ms. Hoekstra to speak on her behalf. Ms. Hoekstra politely cajoled Ms. Robinson to move away from the tent so they could discuss the victim's needs without further distressing her ("All I'm asking to do is step out of earshot of the person that's traumatized…;" *Id.* at 19:06). During her <u>entire</u> conversation with Ms. Hoekstra, Ms. Robinson stood by the door of the alleged victim's tent, <u>between</u> Ms. Hoekstra and the tent. Ms. Hoekstra never made physical contact with Ms. Robinson nor attempted to restrain her from entering the tent or speaking with the alleged victim. *See Id.*

Defendant DANIEL E. BOYER ("Deputy. Boyer") confirmed that he did not ever observe Ms. Hoekstra obstruct Ms. Robinson's access to the tent. (ECF No. 78-1, "Boyer Dep."). Ms. Hoekstra was never instructed to stay by the tent or near Ms. Robinson, yet, as she started to walk away from Ms. Robinson to speak with her supervisor, Deputy Boyer intervened, summoned by Ms. Robinson and following his prior conversation with her, in which Deputy Boyer asked her, "Which one needs to go to jail? I'll put one of them in cuffs. I don't care." ECF No. 68-1 at 12:24. As Ms. Hoekstra walked towards her supervisor, Deputy Boyer contacted Ms. Hoekstra and said "Ma'am, no, no, no, it's too late. Turn around and place your hands behind your back. Place your hands behind your back… I will drop you on the ground and tase you… " *Id.* at 19:20.

Ms. Robinson concedes that she only spoke with Ms. Hoekstra briefly (ECF No. 78-2, "Robinson Dep."), yet, despite this very brief interaction, she determined to arrest Ms. Hoekstra strictly and simply for requesting that Ms. Robinson move away from the tent to continue the conversation. *Id.* at 96:7-10. Ms. Robinson further admitted that, before Deputy Boyer handcuffed Ms. Hoekstra, Ms. Robinson had not specifically told him that Plaintiff was obstructing her. *Id.* at 101:18–102:23; Boyer Dep. 111:12–21. Ms. Robinson nevertheless summoned Boyer and used a hand-over-wrist gesture directing him to restrain Plaintiff. *Id.* at 101:18–102:2. Ms. Robinson then physically grabbed Ms. Hoekstra's left arm to prevent her from moving it and to assist

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

L² LAW LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

Deputy Boyer in applying the handcuffs. *Id.* at 65:7–21; *see also* ECF No. 68-1 at 19:22. Most notably in defeating this premise of "interference" or "obstruction" is that, in this brief interchange, the victim to whom Ms. Robinson was ostensibly obstructed from contacting had emerged from the tent as was standing immediately behind Ms. Robinson. ECF No. 68-1 at 19:32. In fact, Ms. Robinson first spoke with the alleged victim almost exactly <u>two minutes</u> after first speaking with Ms. Hoekstra. *Id.* at 19:44 In all of the above action, not once did Ms. Robinson make any overture towards obstructing Ms. Robinson's actions or ever actually do so. Even so, and without probable cause for doing so, Ms. Robinson arrested Ms. Hoekstra.

In effecting that arrest, Ms. Robinson restrained Ms. Hoekstra while Deputy Boyer handcuffed her, then walked her away to his vehicle. *See* ECF No. 68-2. Deputy Boyer instructed Ms. Hoekstra to walk to his vehicle while he maintained "control" over her. *Id.* at 19:46-20:20. During the march to Deputy Boyer's vehicle, Ranger Zohovetz joined and participated in Ms. Hoekstra's arrest, first taking control of Ms. Hoekstra's left arm, then further instructing her to proceed to the vehicle. *Id.* at 20:33. Upon arriving at the vehicle, Deputy Boyer advised Ms. Hoekstra that the events were being recorded and would be in her "arrest report." *Id.* at 20:58. Ms. Hoekstra responded that she thought she was "detained, not arrested," to which Deputy Boyer responded, "Ah, we'll see." *Id.* at 21:00.

Immediately thereafter, Ranger Zohovetz continued to speak to Ms. Hoekstra for some time "educating" her regarding the arrest and control. *Id.* at 21:29-22:00.

> Ranger Zohovetz: "It's a detention, right?"
> Ms. Hoekstra: "Well, he [Boyer] said I was arrested."
> Ranger Zohovetz: "Well, there you are."

*See also* ECF No. 23-2 and ECF No. 38 detailing Ranger Zohovetz' actions, words, and active participation in Ms. Hoekstra's arrest:

- "She's in handcuffs, she's not coming out of them."
- "My partner [Deputy Boyer] can put you with your hands in front of you."
- "Because you have a pouch and objects that are readily accessible with your hands in the front, then we will just remove this [pouch] from you."
- Ranger Zohovetz checked and decided the handcuffs were too loose.
- When Deputy Boyer physically removes Ms. Hoekstra's left hand from cuffs, Ranger Zohovetz instructs her to keep left hand on truck; same with right hand.

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

- Ranger Zohovetz demonstrates to Ms. Hoekstra how to place her hands to be cuffed by Deputy Boyer.
- Ranger Zohovetz affirmatively states to Ms. Hoekstra that she has "committed a violation of [state] law."
- Ranger Zohovetz informs Ms. Hoekstra that she may or will be transported to Pershing County Sheriff's Office.
- To Burning Man officials: "We got her to a point where she was handcuffed behind the back"
- To Burning Man officials: "We've now moved the handcuffs to the front."
- Deputy Boyer later states that, "Paul came in and gave me a hand," after which Ranger Zohovetz again confirmed that he checked the cuffs and determined they were too loose.
- Later, Ranger Zohovetz derisively stated that, "Once the Oscar act was over… [to Ms. Hoekstra] If you want to chill out, we'll cuff you up front."

A portion of these events were recorded by a bystander with whom Ms. Hoekstra spoke, further to which she requested a copy of the video recording. ECF No. 68-2 at 22:10-23:05. Deputy Boyer additionally requested a copy of the recording, affirming that he would need a copy "for the prosecution." *Id.* at 23:05. Ms. Hoekstra repeatedly indicated that she was in pain, requesting the handcuffs be loosened. *Id.* at 23:20. Deputy Boyer and Ranger Zohovetz each examined the handcuffs, with Ranger Zohovetz ultimately removing Ms. Hoekstra's personal belongings and Deputy Boyer affixing the handcuffs in front of Ms. Hoekstra pursuant to Ranger Zohovetz' instruction and direction. *Id.* at 23:20-26:06. After about ten more minutes, following instruction by Ms. Robinson to release her, Ms. Hoekstra was released from handcuffs and escorted by Deputy Boyer to speak with a PCSO sergeant. *Id.* at 34:30. Ms. Hoekstra's personal property was returned to her by the sergeant off camera some time thereafter. Ms. Hoekstra was never prosecuted for any criminal offense or violation of Nev. Rev. Stat. ("NRS") § 197.190.

### A. The Plan assigned the state law function to PCSO.

BLM and PCSO operated at Burning Man under an integrated command structure. Under that structure, the agency with primary jurisdiction over an incident served as the lead agency, while the other agency provided necessary support. The Plan assigned enforcement of Nevada statutes and county ordinances to PCSO and assigned BLM responsibility for federal laws, federal

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

LAW TO THE HIGHER POWER

regulations, event closure orders, and permit stipulations.

The Plan further stated that "[a]ny state arrest will be conducted by the Pershing County Sheriff's Office" and contemplated that BLM could be asked to assist with transportation to a jail. Nothing in the Plan assigns BLM rangers responsibility for physically controlling a person arrested for a state offense, participating in the application or adjustment of restraints, removing the person's belongings, or compelling identifying information on PCSO's behalf.

**B. Ms. Hoekstra was arrested for an alleged state law offense.**

PCSO personnel initiated the arrest. Ranger Zohovetz acknowledges that Ms. Robinson decided to detain Ms. Hoekstra, Deputy Boyer placed her in handcuffs and removed her from the enclosure, and Ms. Robinson decided when she would be released. No federal offense supplied the asserted basis for that detention. The stated basis was alleged obstruction of PCSO's investigation, a matter Ranger Zohovetz's Motion characterizes as a violation of Nevada law.

The arrest therefore started as and remained a PCSO-controlled state law operation. Deputy Boyer testified that Ms. Hoekstra's care was his responsibility and that Ranger Zohovetz "would be assisting" him. ECF No. 78-1 at 138:5-8. Ranger Zohovetz did not merely remain nearby as cover. According to Deputy Boyer, Ranger Zohovetz saw him escorting Ms. Hoekstra and "immediately jumped in to assist." ECF No. 78-1 at 138:12-15.

**C. Ranger Zohovetz actively participated in the state arrest.**

As Deputy Boyer escorted the handcuffed Ms. Hoekstra from the enclosure, Ranger Zohovetz walked alongside them, placed his hand on Ms. Hoekstra's left arm, and accompanied her to the PCSO vehicles. ECF No. 23-2; ECF No. 68-2. Ranger Zohovetz took Ms. Hoekstra by her arm, directed her toward confinement near the PCSO truck, and actively participated in her confinement, arrest, and handcuffing. *Id.*

Once at the PCSO vehicle, Ranger Zohovetz participated in checking and repositioning the handcuffs, removed Ms. Hoekstra's utility belt and belongings, and instructed her that she was legally required to provide identifying information. *Id.* He also directed a bystander who was recording the detention to move away. *Id.* Ranger Zohovetz's own declaration places him at the vehicles during the handcuff check, removal of Ms. Hoekstra's belt, repositioning of the

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAW LAWRENCE LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

handcuffs, and identification demand.

These were not momentary or incidental acts. Ranger Zohovetz's involvement continued for approximately thirteen minutes of the arrest. *Id.* His actions directly assisted Deputy Boyer in controlling Ms. Hoekstra, maintaining the restraints, managing her possessions, obtaining information from her, and controlling the immediate scene. *Id.*

## III. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("FRCP") 56(a). A material fact "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). The summary judgment "standard mirrors the standard for a directed verdict… which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250 (emphasis added).

### A. Arrest

The Fourth Amendment applies whenever an officer restrains a person's freedom to walk away. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968). A person is seized when, considering all the circumstances, police conduct would communicate to a reasonable person that she was not free to ignore the police and continue with her business. *Kaupp v. Texas*, 538 U.S. 626, 629, 123 S. Ct. 1843, 1845 (2003) Although not every seizure constitutes an arrest, an arrest occurs when, under the totality of the circumstances, a reasonable person would conclude that she was not free to leave after brief questioning. *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990).

A seizure occurs when police use physical force or a show of authority to restrict a person's liberty such that a reasonable person would not feel free to disregard the police and go about her business. *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009). Whether that seizure constitutes an arrest depends on the totality of the circumstances, including the restriction of

L² LAW LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

movement and the force or authority employed. *Del Vizo*, 918 F.2d at 825 (9th Cir. 1990). Handcuffing is a substantial factor and may provide the clearest indication that the person is no longer free to leave. *United States v. Bravo*, 295 F.3d 1002, 1010 (9th Cir. 2002). The use of handcuffs and other especially intrusive methods ordinarily requires circumstances suggesting danger, flight, weapons, or a violent crime. *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996).

**B. Obstruction**

NRS § 197.190 prohibits willfully hindering, delaying, or obstructing an officer; it does not criminalize a request to discuss a different approach. The First Amendment protects verbal criticism and challenges directed at police, including the freedom to oppose police action verbally without thereby risking arrest. *Houston v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 2509 (1987). The Ninth Circuit similarly recognizes that words alone cannot establish obstruction unless they fall outside constitutional protection. *Gulliford v. Pierce Cty.*, 136 F.3d 1345, 1352 (9th Cir. 1998).

**C. Federal v. State Activity**

Whether conduct in a joint federal-state operation is attributable to the state depends on the totality of the circumstances. The relevant inquiry examines whether the challenged conduct was sufficiently linked to the state, rather than applying a categorical rule based solely on an officer's formal employer. *Tuyet Thai v. Cty. of L.A.*, 127 F.4th 1254, 1259 (9th Cir. 2025).

## IV. ARGUMENT

**A. A reasonable jury could find that Ranger Zohovetz acted under color of state law.**

The touchstone for this determination is whether a sufficiently close nexus exists between the state and the challenged actions of the federal officer so that those actions by the federal officer may fairly be treated as actions of the state. *Id.* A federal officer may act under color of state law when the officer acts in concert with state officials to deprive a person of protected rights. *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995). It is enough that the person was a willful

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW L² LAWRENCE
LAW TO THE HIGHER POWER

participant in joint activity with the state or its agents. *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 186 (1980); *United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157 (1966).

That standard is satisfied, or, at minimum, genuinely disputed here. The challenged action was, without doubt, a state-law arrest initiated and controlled by PCSO. Ms. Robinson made the detention and release decisions; Deputy Boyer handcuffed Ms. Hoekstra and assumed responsibility for her; and Ranger Zohovetz willfully and voluntarily "jumped in" to assist Deputy Boyer in carrying out that arrest. Ranger Zohovetz physically joined the escort, helped control Ms. Hoekstra, participated in management of her restraints, removed her belt and possessions, communicated the state officers' identification demand, and attempted to control the surrounding scene. All of this well surpasses the limited role a BLM may claim falls under federal imprimatur as described in the Plan. The limitation of BLM or federal authority under the Plan for an unequivocal state arrest was to assistance with transportation. Ms. Hoekstra was never even transported, so there can be no doubt that Ranger Zohovetz' actions establish a clear venture into PCSO and state action.

This same evidence of Ranger Zohovetz' involvement materially exceeds the limited interagency exchange found insufficient in cases involving federal personnel who merely requested, received, or shared information with state officials. Mere information sharing, without evidence that federal personnel instigated or participated in the state investigation, does not establish joint action. *Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983). Ranger Zohovetz did not merely share information. He physically and operationally assisted PCSO in maintaining the challenged arrest of Ms. Hoekstra.

Nor is this case analogous to an arrest initiated and effected solely by federal agents, with local officers acting at the federal agents' direction. In that circumstance, the Ninth Circuit treated the joint conduct as federal because the federal officers initiated and directed the arrest. *Billings*, 57 F.3d at 801 (9th Cir. 1995). The reverse is true here: PCSO initiated, controlled, and ended the arrest, while Ranger Zohovetz willfully and actively assisted Deputy Boyer in carrying it out.

Ranger Zohovetz' reliance on the absence of formal deputization also misses the point. Acting under color of state law does not require formal status as a state officer; willful

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAW LAWRENCE
LAW TO THE HIGHER POWER

participation in joint action with state officials is sufficient. *Dennis*, 449 U.S. 24 (1980); *Price*, 383 U.S. 787 (1966). The absence of a PCSO badge, paycheck, or formal oath therefore does not resolve the character of Ranger Zohovetz's conduct. It is enough that the person was a willful participant in joint activity with the state or its agents.

**B. The totality-of-the-circumstances test does not indicate federal action as a matter of law.**

Ranger Zohovetz relies heavily on the federal source of his employment and general authority. But the totality-of-the-circumstances inquiry focuses on the challenged activity, including the source of the operation's authority and the immediate control exercised over the conduct at issue. *Tuyet Thai*, 127 F.4th at 1260 (9th Cir. 2025). This recent Ninth Circuit decision on which Ranger Zohovetz relies involved a federally created program addressing fraud in a federal benefits system. A federal agent controlled all program operations and possessed final day-to-day decision-making authority. *Id.* Those circumstances supported treating the challenged conduct as federal, yet the circumstances here are materially different.

Ms. Hoekstra was not detained as part of a federal program, for violation of federal law, or under the immediate control of a federal supervisor. She was detained for alleged interference with a PCSO investigation under Nevada law. PCSO personnel decided to arrest her, maintained responsibility for her, and decided when to release her. Deputy Boyer's testimony that Ms. Hoekstra was his responsibility and Ranger Zohovetz was assisting him permits the inference that, as to the challenged detention, the operational relationship ran from the state officer to the federal ranger, not the other way around.

The Plan reinforces that inference. PCSO possessed primary jurisdiction over the alleged state offense and was the lead agency for the incident. The Plan expressly assigned state arrests to PCSO, with only a singular narrow allowance for BLM involvement, which allowance was never present here. Thus, even if Ranger Zohovetz's presence at Burning Man originated in federal employment, a jury could find that his specific actions toward Ms. Hoekstra were undertaken in support of, and as an active participant in, PCSO's exercise of state authority.

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAW LAWRENCE
LAW TO THE HIGHER POWER

### C. The Plan and Ranger Zohovetz's position description do not resolve the scope-of-employment question.

Ranger Zohovetz argues that generalized duties to cooperate with local agencies and provide backup conclusively placed every action he took within his federal employment. That argument improperly collapses the distinction between remaining available as safety cover and actively participating in a state arrest (beyond transportation assistance).

The Plan assigned BLM enforcement of federal laws and assigned PCSO enforcement of Nevada law. It further stated that PCSO would conduct any state arrest and identified transportation as a form of BLM assistance. A reasonable jury could find that physically controlling Ms. Hoekstra, participating in the handling of her restraints, removing her personal effects, conveying identifying-information demands, and managing witnesses to the state detention exceeded the limited supporting role described in those provisions, which are the only present evidentiary guide for a federal role in a state arrest.

Ranger Zohovetz's broader position description does not compel a different result. His prior motion described the position as maintaining liaison with other agencies, cooperating in investigations, providing backup, exchanging information, and coordinating activities of mutual interest. Whether his hands-on participation in this particular state arrest constituted federal "backup" or the direct execution of PCSO's state-law function is a factual issue. Ranger Zohovetz cannot convert that disputed characterization into an undisputed fact merely by labeling everything he did "assistance."

Nevada law likewise treats the assigned task, the independence of the venture, and reasonable foreseeability as distinct considerations when addressing an employee's intentional conduct. Nev. Rev. Stat. ("NRS") § 41.745. The evidence concerning the Plan's division of responsibilities and the character of Ranger Zohovetz's acts creates a factual dispute over whether those acts were undertaken in the course of his assigned federal task, as very narrowly defined.

Ranger Zohovetz' declaration that he acted only as a BLM ranger and never as an agent of PCSO does not conclusively answer that objective inquiry. The jury is entitled to consider what Ranger Zohovetz actually did, what entity's arrest he assisted, what law all involved officers were

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

enforcing, who exercised responsibility and control over Ms. Hoekstra, and whether Ranger Zohovetz' actions remained within the limited federal support role or instead made him a direct participant in PCSO's state-law operation.

**D. Ranger Zohovetz's physical and operational assistance supports individual liability for the arrest.**

Ranger Zohovetz argues that he cannot be deemed liable because he did not make the initial decision to arrest Ms. Hoekstra and did not personally apply the original handcuffs. The Ninth Circuit has rejected such a narrow conception of participation. Officers who assisted in restraining occupants were participants in the detention even though another officer used the force necessary to apply the handcuffs. *Liston v. Cty. of Riverside*, 120 F.3d 965 (9th Cir. 1997). An officer participates meaningfully when the officer assists in carrying out the actions giving rise to the alleged violation; the officer need not personally perform every component of the challenged conduct. *Keane v. McMullen*, 898 F. Supp. 2d 1157, 1169 (N.D. Cal. 2012). An officer who handcuffs a person and thereby facilitates another officer's later unlawful restraint may be treated as an integral participant where the close physical and temporal connection permits an inference that the officer intended to facilitate the conduct. *Peck v. Montoya*, 51 F.4th 877, 890 (9th Cir. 2022).

Here, Ranger Zohovetz's participation was direct and individualized. He placed his hand on Ms. Hoekstra's arm while Deputy Boyer escorted her, accompanied them to the confinement area, participated in checking and repositioning the handcuffs, removed her belt and possessions, and instructed her concerning the information demanded by the officers. Those actions occurred during and in furtherance of the same and singular continuous state-law arrest. Whether Ranger Zohovetz initiated the arrest is, therefore, not dispositive. The evidence permits a jury to find that he knowingly and materially assisted in maintaining it. His participation also distinguishes this case from one based merely on an officer's membership in a group or presence at a scene. The body-worn camera footage disclosed herein, combined with Ms. Hoekstra's testimony identifies concrete acts that Ranger Zohovetz personally performed. Individual liability must rest on the

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW L² LAWRENCE LAWRENCE
LAW TO THE HIGHER POWER

officer's own conduct rather than undifferentiated group membership. *Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1247 (E.D. Wash. 2013). Ms. Hoekstra's evidence satisfies that requirement.

**E. Genuine disputes also preclude summary judgment on the false imprisonment and emotional distress claims.**

Ranger Zohovetz's argument against false imprisonment again depends on the premise that only the officer who initiated the detention or first applied the handcuffs can participate in confinement. The evidence supports a different conclusion. Ranger Zohovetz physically joined the escort, helped maintain and manage the restraints, removed items from Ms. Hoekstra's person, and communicated demands made while she remained confined. A jury could find that these acts assisted in restraining her liberty and maintaining the boundaries of PCSO's detention.

The evidence also does not require acceptance of Ranger Zohovetz's characterization that his intervention only made Ms. Hoekstra more comfortable. The record evidence identifies his participation in pulling Ms. Hoekstra toward the PCSO vehicle, examining the handcuffs before they were retightened, removing her belt and belongings, attempting to interfere with a bystander's recording, and threatening additional charges concerning identifying information. The parties dispute the purpose, effect, and character of those acts. Those disputes cannot be resolved by accepting Ranger Zohovetz's account over Ms. Hoekstra's evidence.

The emotional distress claim similarly cannot be reduced to whether Ranger Zohovetz initiated the encounter. His conduct must be considered as part of the continuous detention in which he actively participated. Ranger Zohovetz also previously acknowledged making an "Oscar act" comment concerning Ms. Hoekstra during the incident. A jury assessing the nature of his participation and state of mind may consider his physical conduct, his involvement with the restraints and Ms. Hoekstra's belongings, his statements, and the context in which those actions occurred.

At minimum, the disputed evidence concerning Ranger Zohovetz's role, authority, intent, and contribution to the confinement prevents judgment as a matter of law on the alternative merits

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
LAW RENZIE LAWRENCE L²
LAW TO THE HIGHER POWER

arguments. His Motion asks the Court to draw factual inferences in his favor and to treat his own description of his role as conclusive. Neither the law nor the evidence permit that result.

## V. CONCLUSION

The record does not establish that Ranger Zohovetz acted exclusively under color of federal law or remained within the scope of a limited federal backup function. Rather, it shows active, hands-on participation in a state law arrest initiated, controlled, and concluded by PCSO. Under the totality of the circumstances, a reasonable jury could find that Ranger Zohovetz acted as a willful joint participant and *de facto* agent of PCSO under color of state law, exceeded the federal role described in the Plan, and materially participated in Ms. Hoekstra's confinement and resulting injuries.

For the foregoing reasons, Plaintiff Hannah Hale Hoekstra respectfully requests that the Court deny Ranger Zohovetz' Motion for Summary Judgment in its entirety.

DATED this 25th day of November 2026.

**LAWRENCE & LAWRENCE LAW, PLLC**

______________________________
Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®
L² LAW LAWRENCE
LAW TO THE HIGHER POWER

LAWRENCE & LAWRENCE
All brothers fight, but we fight for you.®

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **PLAINTIFF'S RESPONSE TO FEDERAL DEFENDANT PAUL ZOHOVETZ'S MOTION FOR SUMMARY JUDGMENT [ECF No. 70]** was made on this 25th day of November 2026, by electronic mail and/or submission to the electronic filing and service system (CM/ECF) of the United States District Court, District of Nevada, which will provide copies to all parties and counsel of record, including the following:

THORNDAL ARMSTRONG, PC
Katherine F. Parks, Esq.
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
(775) 786-2882 (phone)
(775) 786-8004 (fax)
KFP@thorndal.com
*Attorneys for Pershing County, Donna Robinson, and Daniel E. Boyer*

TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH,
First Assistant United States Attorney District of Nevada
Nevada Bar Number 8264
NATHAN M. CLAUS
Assistant United States Attorney
Nevada Bar No. 15889
501 S. Las Vegas Blvd., Ste. 1100
Las Vegas, Nevada 89101
(702) 388-6336
Nathan.Claus@usdoj.gov
*Attorneys for Federal Defendant*

DATED this 25th day of November 2026.

**LAWRENCE & LAWRENCE LAW, PLLC**

Nathan E. Lawrence, NBN 15060
Joseph P. Lawrence, NBN 16726
9480 S. Eastern Ave., Ste. 213
Las Vegas, Nevada 89123
Telephone: 702-534-6556
Facsimile: 702-602-5168
nathan@law2esq.com
joseph@law2esq.com
*Attorneys for Plaintiff Hannah Hale Hoekstra*

LAW TO THE HIGHER POWER